Official Records of the U.S. Bankruptcy Court

District of Nevada – Reno

Case #: 14–BK–50333–BTB

# EXHIBIT 1

Excerpts from Transcript of Hearing

8-22-2014

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

|  |  |  |
|---|---|---|
| IN RE: | . | Case No.  14-50333-btb |
|  | . |  |
| ANTHONY THOMAS and | . | Chapter 11 |
| WENDI THOMAS, | . |  |
|  | . |  |
| Debtors. | . |  |
| . . . . . . . . . . . . | . |  |
|  | . |  |
| KENMARK VENTURES, LLC, | . | Adv. No.  14-05022-btb |
|  | . |  |
| Plaintiff, | . |  |
|  | . |  |
| v. | . |  |
|  | . | 300 Booth Street |
| ANTHONY THOMAS and | . | Reno, NV  89509 |
| WENDI THOMAS, | . |  |
|  | . | Friday, August 22, 1014 |
| Defendants. | . | 2:19 p.m. |
| . . . . . . . . . . . . | . |  |

TRANSCRIPT OF MOTION TO WITHDRAW AS ATTORNEY OF RECORD WITH
CERTIFICATE OF SERVICE FILED BY ALAN R. SMITH ON BEHALF OF
ANTHONY THOMAS, WENDI THOMAS [13];
MOTION TO WITHDRAW AS ATTORNEY OF RECORD WITH CERTIFICATE OF
RECORD FILED BY  ALAN R. SMITH ON BEHALF OF
ANTHONY THOMAS, WENDI THOMAS [169];
MOTION TO APPOINT TRUSTEE, MOTION TO APPOINT CHAPTER 11 TRUSTEE
FILED BY JOSEPH G. WENT ON BEHALF OF
BEACH LIVING TRUST, JOHN BEACH, AS TRUSTEE [164]
**BEFORE THE HONORABLE BRUCE T. BEESLEY**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES CONTINUED.

Audio Operator:          Court ECRO Personnel

Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46038
                         (855) 873-2223
                         www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1       MR. LUKAS:  Good afternoon, Your Honor.  Tim Lukas
2   for the Beach Living Trust and movant for appointment of a
3   Chapter 11 trustee.
4       MR. COSSITT:  Bill Cossitt, Office of the United
5   States Trustee.
6       THE COURT:  Mr. and Mrs. Thomas?
7       MR. SILVER:  Wayne Silver for Kenmark Ventures
8   appearing telephonically.  Thank you, Your Honor.
9       THE COURT:  Mr. and Mrs. Thomas, you're no longer
10  represented by counsel.  Please get out of those seats and let
11  them sit there.  You guys have been allowed to withdraw.
12      MR. SMITH:  Your Honor, there's one thing I want to
13  put on the record.  I mean, I -- I know this places the clients
14  in an uncomfortable position, and we were prepared to argue on
15  the issue of the appointment of a trustee.  And I don't want
16  them prejudiced by -- I didn't know how this Court would --
17  which it would consider first, but I don't want this more
18  prejudiced by our withdrawal before the hearing.  So --
19      THE COURT:  I don't think --
20      MR. SMITH:  -- we're prepared to argue that motion,
21  if you want.
22      THE COURT:  You moved to withdraw.  I think you have
23  every ground to withdraw.  I think your motion was proper.  It
24  was properly noticed to your clients.  I don't think they are
25  prejudiced by that withdrawal.

-14-

1      MR. SMITH:  Okay.

2      THE COURT:  You indicated that you had irreconcilable

3  differences in the way this should be approached.  I think it's

4  probably more dangerous for you to represent their interest at

5  this time given those divergent interests.

6      MR. SMITH:  Okay.  I understand.

7      THE COURT:  So your motion to withdraw is granted.

8      MR. SMITH:  Okay.  Thank you, Your Honor.

9      THE COURT:  Mr. and Mrs. Thomas, please come forward.

10  Please come forward to the podium and state your names.

11      MR. THOMAS:  Tony Thomas.

12      MS. THOMAS:  Wendi Thomas.

13      THE COURT:  Thank you.  You guys can have a seat now.

14      Mr. Thomas, who is -- Mr. -- go ahead and have a

15  seat.

16      Mr. Lukas, go ahead.

17      MR. LUKAS:  I'm sorry, Your Honor.  I missed what you

18  said.

19      THE COURT:  I just had the Thomases introduce

20  themself, and since it's your motion to dismiss, I'm asking --

21  or to appoint a trustee or dismiss, I asked you to go ahead.

22      MR. LUKAS:  Yes, Your Honor.  There are -- Mr. Thomas

23  is present.  He has provided a declaration.  As we pointed out

24  in our reply, most of the declaration can be stricken because

25  it's based totally on -- it's all hearsay, Mr. Clarke said.

-15-

1   record, Your Honor, we won't publicly disclose the number.  All

2   you have to do is ask us on any of this stuff.  If we had been

3   provided a copy, it would have been so much easier.

4           MR. THOMAS:  And I'd like to say one other thing,

5   Your Honor.  I've been working in Battle Mountain, and I had to

6   do that from the hotel, and they didn't have very good

7   facilities to send that out.  So I did the best I could with

8   the documents that I had.  They didn't have a scanner and all

9   that.  (Indiscernible).

10          THE COURT:  Mr. Cossitt --

11          Anything further from you?

12          MR. THOMAS:  Unless you have any questions for me.

13          THE COURT:  No, thank you.

14          MR. THOMAS:  Could I get two weeks to get counsel?

15          THE COURT:  I'm not deciding at this moment.

16          MR. THOMAS:  Okay.

17          MR. COSSITT:  Your Honor, the facts as represented --

18  or as testified to convince me that this isn't a legitimate

19  offer, couldn't be -- you don't spend anywhere near this amount

20  of money buying something out of a bankruptcy estate without

21  clearing it with the bankruptcy estate first.  Saying that you

22  won't deal with the trustee is a certain sign that it's not a

23  legitimate buyer.  That's just not the way it's done.  It's

24  certainly not the way it's done internationally and not the way

25  it's done for this amount of money.  None of that rings at all

-16-

1      THE COURT:  Nonetheless, I'm going to appoint a

2  trustee in this case.  I'm going to convert this to a

3  Chapter 7.  And the reason I'm converting it to a Chapter 7 is

4  I think you're being scammed.  I've not been involved in a lot

5  of international transactions, but I have been involved in a

6  few over the years, both in practice and in court.  And that's

7  what this letter is, is a scam.

8      MR. THOMAS:  Can I ask --

9      THE COURT:  No, you're done.

10     MR. THOMAS:  -- that you give me two weeks for -- to

11  just let them --

12     THE COURT:  No, I'm not giving you two weeks.  This

13  letter is a scam.  A legitimate buyer will deal with the

14  trustee.  This is not a legitimate buyer.  This is not -- you

15  did no due diligence on this company.  If you had done some due

16  diligence other than listening to Mr. Clarke, I might do that,

17  but you did no due diligence.

18     MR. THOMAS:  I had four other buyers.

19     THE COURT:  Sir, sit down, be quiet.

20     I'm ordering that this case is converted, that all --

21  that both the cases actually are converted to Chapter 7's.  I

22  would suggest, but I cannot order, that the Office of the

23  U.S. Trustee appoint a single trustee for both cases.

24     Thank you very much.  We'll be in recess.

25     (Proceedings concluded at 2:56 p.m.)

-17-

# EXHIBIT 2

Excerpts from Transcript of Hearing
2-25-2015 - AM Session

# EXHIBIT 2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

|  |  |  |
|---|---|---|
| IN RE: | . | Case No.   14-50333-BTB |
|  | . |  |
|  | . | Chapter 7 |
| ANTHONY THOMAS and | . |  |
| WENDI THOMAS, | . | 300 Booth Street |
|  | . | Reno, NV  89509 |
| Debtors. | . |  |
|  | . | Wednesday, February 25, 2015 |
| . . . . . . . . . . . . . | . | 10:05 a.m. |

PARTIAL TRANSCRIPT (MORNING SESSION ONLY)
MOTION APPROVE SETTLEMENT FILED BY JEFFREY L. HARTMAN
ON BEHALF OF JERI COPPA-KUNDSON [241]
**BEFORE THE HONORABLE BRUCE T. BEESLEY**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

For the Debtor:          ANTHONY THOMAS, Pro Se
                         7725 Peavine Peak Court
                         Reno, NV  89523


For Settling Parties:    Greenfield Draa & Harrington, LLP
                         By:  MAUREEN A. HARRINGTON, ESQ.
                         55 South Market Street, Suite 1500
                         San Jose, CA 95113
                         (408) 995-5600


For William McGrane:     Robison Sharp Sullivan & Brust Law
                         By:  STEFANIE T. SHARP, ESQ.
                         71 Washington Street
                         Reno, NV 89503
                         (775) 329-3151

APPEARANCES CONTINUED.


Audio Operator:          Stacie C. Burney, ECR


Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46038
                         (855) 873-2223
                         www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

Anthony Thomas - Direct                                    16

1  the federal courts in Nevada, not --

2          MS. HARRINGTON:  Your Honor, I have been appearing

3  here as a creditor representative.  I am not admitted in the

4  Nevada courts.  I am admitted in the State of California.  I am

5  admitted to the Northern District Bankruptcy Court, the Eastern

6  District Bankruptcy Court, and the Central District Bankruptcy

7  Court in California, so --

8          THE COURT:  For the purposes of this hearing, I will

9  waive your pro hac, the need for a pro hac.  Go ahead.

10          MS. HARRINGTON:  Thank you, Your Honor.

11                      DIRECT EXAMINATION

12  BY MS. HARRINGTON:

13  Q    Mr. Thomas, as of today, how much money do you have in

14  your bank account?

15  A    I don't know the exact amount to it because I haven't

16  checked bank account.  My checks are deposited directly into my

17  account from work.

18  Q    You made a representation in court earlier today that you

19  have $7,000 in your bank account.  What was the basis for

20  making that representation?

21  A    From the amount of hours that I work at NV Energy.

22  Q    So sitting here today, you don't actually know whether or

23  not you have $7,000 in your bank account, do you?

24  A    I believe that there's more than 7,000, and that's what I

25  represented.

-20-

Anthony Thomas - Direct                                    17

1  Q    Sitting here today, do you know for sure how much money is

2  in your bank account?

3  A    No.  But I know it's in excess of what I represented.

4  Q    As of May 1st, do you have a rent payment due?

5  A    What's that?

6  Q    As of -- excuse me.  As of March 1st, will you have a rent

7  payment due?

8  A    Yes.

9  Q    Will that rent have to be paid from that same account?

10  A    Yes.

11  Q    What is the amount of that rent?

12  A    $1,950 or something like that.

13  Q    Okay.  So if you were to pay the trustee $7,000 today, you

14  would have inadequate funds in that account to pay your rent on

15  March 1st.  Is that true?

16  A    No.

17  Q    How is that not true, sir?

18  A    Because I get paid every two weeks.

19  Q    What salary are you expecting to be paid on -- excuse me.

20  You're expecting your next salary to be paid on February 28th?

21  A    I don't know the exact pay date, but it should be before

22  then, yes.

23  Q    So you're -- well, I'm sorry.  You say you're paid every

24  two weeks, but you don't know when that comes?

25  A    I get paid every two weeks, so I'd have to look at when my

ACCESS TRANSCRIPTS, LLC            1-855-USE-ACCESS (873-2223)

Anthony Thomas - Direct                          18

1  last payment was, when the checks, they get direct deposited in
2  my account from my company.
3  Q    So you don't know when you're going to receive your next
4  paycheck?
5  A    I don't know the exact date, no.  I know that I'll --
6  Q    Do you know what day --
7  A    -- receive it before the end of the month, and I know that
8  there's in excess of $7,000 in the account.  I just can't tell
9  you the exact amount because I haven't looked at the balance.
10  If you'd like, I can go to Wells Fargo and pull the deposit
11  slip or find out what the account amount is.
12           THE COURT:  Can you go to Wells Fargo online?
13           THE WITNESS:  I can't, but there's a Wells Fargo
14  right down the street, and I would be happy to pull a balance
15  of what's in the account.
16           THE COURT:  You can go ahead and finish your
17  questioning.  It's almost 11:30.  I may continue this until
18  1:30 so he can pull the balance of his account and bring it so
19  you can see it.
20           MS. HARRINGTON:  That would be fine, Your Honor.
21           THE COURT:  Okay.  Do you have any further questions?
22           MS. HARRINGTON:  Not at this time, Your Honor.  I'd
23  defer it until we see the balance.  Thank you.
24           THE COURT:  Okay.  We're going to take a recess.
25  We'll be in recess until 1:30.  We don't have other court until

-22-

# EXHIBIT 3

Excerpts from Transcript of Hearing

2-25-2015- PM Session

# EXHIBIT 3

-23-

Afternoon

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

IN RE:                              . Case No. 14-50333-BTB
                                    .
ANTHONY THOMAS and                  . Chapter 7
WENDI THOMAS,                       .
                                    . 300 Booth Street
                                    . Reno, NV 89509
                  Debtors.          .
                                    . Wednesday, February 25, 2015
. . . . . . . . . . . . , . . . . . . 10:05 p.m.

1:25 PM

PARTIAL TRANSCRIPT OF HEARING (AFTERNOON SESSION)
MOTION TO APPROVE SETTLEMENT FILED BY
JEFFREY L. HARTMAN ON BEHALF OF JERI COPPA-KNUDSON [241]
**BEFORE THE HONORABLE BRUCE T. BEESLEY**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

For Debtors:              ANTHONY THOMAS, Pro Se
                          7725 Peavine Peak Court
                          Reno, NV 89523

For Greenfield Draa
  & Harrington:           Greenfield Draa & Harrington LLP
                          By:  MAUREEN HARRINGTON, ESQ.
                          55 S. Market Street, Suite 1500
                          San Jose, CA 95113
                          (408) 995-5600

For Chapter 7 Trustee:    Hartman & Hartman
                          By:  JEFFREY L. HARTMAN, ESQ.
                          510 West Plumb Lane, Suite B
                          Reno, NV 89509
                          (775) 324-2800

ALSO PRESENT:             MICHAEL LEHNERS, ESQ.
                          429 Marsh Avenue
                          Reno, NV 89509
                          (775) 786-1695

Audio Operator:           Stacie C. Burney, ECR

Transcription Company:    Access Transcripts, LLC
                          10110 Youngwood Lane
                          Fishers, IN 46038
                          (855) 873-2223
                          www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

-24-

2

I N D E X
2/25/15

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|-----------|--------|-------|----------|---------|
| Anthony Thomas | -- | 3 | -- | -- |

-25-

Thomas - Cross                                           3

1       (Requested portion commences at 1:35 p.m.)

2              THE COURT:  Counsel, go ahead with your cross

3  examination.

4              MS. HARRINGTON:  Thank you, Your Honor.

5                     CROSS-EXAMINATION

6  BY MS. HARRINGTON:

7  Q    Over the break, Mr. Thomas, did you check the balance on

8  your account at Wells Fargo?

9  A    Yes, I did.

10 Q    First of all, who are the owners of that account?

11 A    My wife and myself.

12 Q    Are there any other names on the account such as your

13 parents or anyone else?

14 A    No.

15 Q    What is the balance on the account, sir?

16             THE WITNESS:  I object to that line of questioning --

17             THE COURT:  Answer the question.

18             THE WITNESS:  -- because it gives an --

19             THE COURT:  Answer the question.  That's a reasonable

20 question.  Answer the question.

21             THE WITNESS:  I understand, but there was more than

22 what I said was in there, Your Honor.

23             THE COURT:  That's fine.

24             THE WITNESS:  But it gives an unfair advantage in the

25 bidding to let her know how much is in my account and --

-26-

Thomas - Cross                                4

1          THE COURT:  Answer the question.  Would you like your

2  motion to be dismissed with prejudice?  Answer the question.

3          THE WITNESS:  I'd like to say I object.  I will

4  answer the question, but I object.

5          THE COURT:  Your objection is overruled.  Answer the

6  question.

7          THE WITNESS:  Okay.  It gives me an unfair advantage

8  in this bidding war.

9          THE COURT:  Sir --

10          THE WITNESS:  Twelve thousand --

11          THE COURT:  -- this is not a discussion with you.

12  Answer the question.

13          THE WITNESS:  I'm answering the question.

14          THE COURT:  Go ahead.

15          THE WITNESS:  $12,719.50 --

16          THE COURT:  Okay.

17          THE WITNESS:  -- or 45 cents, excuse me.

18          THE COURT:  Do you have any further questions,

19  Counsel?

20          MS. HARRINGTON:  Yes, Your Honor.

21  BY MS. HARRINGTON:

22  Q    Did you transfer any money into that account today,

23  Mr. Thomas?

24  A    No.

25  Q    When was the last deposit into that account?

-27-

Thomas - Cross                                    5

1  A     I don't know.  I didn't go to get that information.

2  Q     Okay.  And that is the account from which you have to pay

3  all of your household expenses?

4  A     It's an account that I have.  I have other accounts at

5  Wells Fargo.

6  Q     Is that the account from which you pay your household

7  expenses, sir, including your rent and other household

8  expenses?

9  A     I believe so.

10          MS. HARRINGTON:  Thank you, Your Honor.  I have

11  nothing further.

12          THE COURT:  Okay.  You may step down.

13          All right.  I interrupted you to get the information

14  on how much money you had, and you wanted to oppose something.

15  Go ahead.

16          MR. THOMAS:  Well, I wanted to oppose the amount that

17  I gave her because it gives me an unfair advantage in the

18  bidding against her.

19          THE COURT:  Why?

20          MR. THOMAS:  Because now she knows how high I can go

21  in the bidding.

22          THE COURT:  And she knows how high she can go on the

23  bidding.

24          MR. THOMAS:  Well, before she didn't have that

25  knowledge of how much I had in my account, and now you made me

-28-

6

1  disclose.  You know, my disclosure was that I had the amount of

2  money that I was bidding.  It's my money and it should be my

3  ability to bid whatever amounts that I have in my accounts.

4            THE COURT:  Okay.  That's --

5            MR. THOMAS:  And the basis was this, is she called me

6  a liar and I wasn't lying.

7            THE COURT:  I overruled your objection.

8            MR. THOMAS:  Yes.

9            THE COURT:  We're done with that.

10           MR. THOMAS:  Okay.  And --

11           THE COURT:  What else -- what other problems do you

12 have?

13           MR. THOMAS:  The other things I'd like to address is

14 they gave -- I'd like to get a continuance because they just

15 submitted a billing that shows that they billed twice in the

16 month of January, and their second --

17           THE COURT:  Okay.  What else?

18           MR. THOMAS:  -- and their second billing that they

19 billed was for 72,000, the exact same amount that they said

20 that I had in the account two days prior to Mr. McGrane's email

21 that they need to get rid of Mr. Thomas as a client.

22           THE COURT:  What else?

23           MR. THOMAS:  I would also like to address that the

24 trustee, Jeri, had told me that she abandoned the claims and

25 let me go forward with spending several thousand dollars in

# EXHIBIT 4

Excerpts from Transcript of Hearing

1-27-2016

# EXHIBIT 4

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

|  |  |  |
|---|---|---|
| IN RE: | . | Case No.  14-50333-BTB |
|  | . |  |
|  | . | Chapter 7 |
| ANTHONY THOMAS and | . |  |
| WENDI THOMAS, | . | 300 Booth Street |
|  | . | Reno, NV  89509 |
| Debtors. | . |  |
|  | . | Wednesday, January 27, 2016 |
| . . . . . . . . . . . . . . | . | 2:05 p.m. |

TRANSCRIPT OF TRUSTEE'S MOTION TO SELL (LIQUIDATE INTEREST IN
LITIGATION) FILED BY JEFFREY L. HARTMAN
ON BEHALF OF JERI COPPA-KNUDSON [302]
**BEFORE THE HONORABLE BRUCE T. BEESLEY**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

For the Debtor:            ANTHONY THOMAS (Pro Per)
                           7725 Peavine Peak Court
                           Reno, NV  78523

For the Trustee:           Hartman & Hartman
                           By:  JEFFREY L. HARTMAN, ESQ.
                           510 West Plumb Lane, Suite B
                           Reno, NV 89509
                           (775) 324-2800

For FM Holdings, Inc.,     Balaban & Spielberger LLP
Kit Morrison,              By:  ANDREW SPIELBERGER, ESQ.
Todd Armstrong and         11999 San Vincente Blvd, Suite 345
Jerry Ferrara:             Los Angeles, CA 90049
                           (424) 832-7677

For Creditor Smith LC:     Smith LC
  (Telephonically)         By:  MARK T. KEARNEY, ESQ.
                           3161 Michelson Drive, Suite 925
                           Irvine, CA  92612
                           (949) 416-5000

Audio Operator:            David Lindersmith, ECR

Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46038
                           (855) 873-2223
                           www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

~31~

2

1    (Proceedings commence at 2:05 p.m.)

2         THE COURT:  First thing we have on the -- I'm sorry,

3    on the afternoon calendar is Anthony Thomas and Wendi Thomas,

4    Case Number 14-50333.  Appearances, please.

5         MR. HARTMAN:  Good afternoon, Your Honor.  Jeff

6    Hartman on behalf of the trustee.

7         MR. SPIELBERGER:  Good afternoon, Your Honor.  I'm

8    Andrew Spielberger.  I represent FM Holdings, Inc., Kit

9    Morrison, Todd Armstrong and Jerry Ferrara and --

10        THE COURT:  Okay.  Mr. Thomas?

11        MR. THOMAS:  Good afternoon, Your Honor.  I'm here on

12   behalf of myself and pro per.

13        THE COURT:  And is there someone on the phone?

14        MR. KEARNEY:  Yes, Your Honor.  Good afternoon.  Mark

15   Kearney with Smith LC.

16        THE COURT:  Okay.  So go ahead.

17        MR. HARTMAN:  Well, Your Honor, this is the trustee's

18   request to liquidate what I've termed an "interest in

19   litigation" with Mr. Spielberger's client.  And he can give you

20   a more detailed description of what's actually going on in the

21   litigation in Washington, D.C. with the Country of Brazil, but

22   for our purposes, I had filed a reply brief, attached to which

23   was one of the original determinations by the superior court in

24   California regarding Mr. Thomas's claim to title to the Bahia

25   Emerald.

-32-

3

1          THE COURT:  And when did you file that?

2          MR. HARTMAN:  The 21st, and it was filed a couple of

3     days late because it was in response to the Smith LC lien --

4          THE COURT:  Okay.

5          MR. HARTMAN:  -- of proceeds document that was filed

6     Docket Entry 307 on the 19th.  That came in less than 14 days

7     before today's hearing, and that's why the reply that I filed

8     was a couple days late.  So it would be Docket Entry 308, which

9     was my reply.

10         THE COURT:  Okay.  And I'm looking -- I'm trying to

11    look at that.  Hang on.  And this is the tentative decision in

12    the California Superior Court case?

13         MR. HARTMAN:  Right.  And ultimately, it became a

14    final decision in that matter.  Well, I misspoke.  If -- what

15    the reply recites, and it's convoluted, is that there was an

16    initial trial with respect to Mr. Thomas's claim to title.

17    There was a determination by the judge.

18         THE COURT:  Who then died or got promoted.

19         MR. HARTMAN:  No, he died and got promoted, that's

20    right.

21         THE COURT:  To the U.S. District Court, I think.

22         MR. HARTMAN:  And so under the rules that were

23    applicable --

24         THE COURT:  They had to retry it.

25         MR. HARTMAN:  -- that matter had to be retried.  And

-33-

4

1  so the second decision was also against Mr. Thomas with respect

2  to his claim to title to the Bahia Emerald.   And Mr.

3  Spielberger was involved in that process from the beginning, so

4  he can answer any specific questions that you have.   But this

5  particular motion today has to do with the proposal that the

6  trustee has presented from Mr. Spielberger to --

7           THE COURT:   Which is a half a percent interest in any

8  recovery.

9           MR. HARTMAN:   In any recovery, which means that he

10  has to be successful in whatever matters that he's involved

11  with in Washington, D.C. with the Country of Brazil.   And so

12  there's been an objection by Mr. Thomas that also came in late,

13  and from my, you know, my independent determination, it looks

14  as though it was a reply -- or an objection drafted by a law

15  firm, but I don't know that for certain.   And then, I think

16  there were a number of papers filed yesterday by Mr. Thomas

17  with respect to this matter, as well.   So from my -- from the

18  trustee's perspective, all that information is just somewhat

19  collateral noise.   The real question is whether or not the

20  trustee has the appropriate standing the business judgment to

21  enter into the agreement with Mr. Spielberger's client so that

22  if he's successful, then there's a benefit to the bankruptcy

23  estate.

24           THE COURT:   And when I originally read through this

25  before I got Mr. Thomas's stuff this morning, it was my opinion

ACCESS TRANSCRIPTS, LLC        1-855-USE-ACCESS (873-2223)

1  that, yes, it was an appropriate decision for the trustee to

2  make.  There's no money in this estate to prosecute the claims.

3  There is a potential up -- recovery.  Mr. Thomas's objection

4  prior to that was essentially you're not getting enough value

5  for this, and then there was a bunch of stuff filed that I got

6  this morning, but I've been in trial until 1 o' clock today,

7  and I was reading through this and I left it on my desk, so I'm

8  going to take a short recess -- or not even a recess, I'm just

9  going to walk into my office and get it off my desk so

10  Mr. Thomas can explain it to me.

11          MR. HARTMAN:  Sure.

12          THE COURT:  Thank you.

13          MR. HARTMAN:  Thank you.

14          THE CLERK:  All rise.

15      (Recess taken at 2:10 p.m.)

16      (Proceedings resumed at 2:11 p.m.)

17          THE COURT:  Please be seated.

18          Mr. Thomas, go ahead.

19          MR. THOMAS:  Yes, Your Honor.  Thank you.  What I was

20  addressing there in my having you take judicial notice is that

21  Mr. Catlett filed bankruptcy in 2004, and I was one of the

22  largest -- I was one of the creditors on his bankruptcy.  And

23  in his bankruptcy, he never disclosed the ownership of the

24  emerald, and we gave the courts in California this notice and

25  said that it was judicial estoppel because he never claimed the

-35-

1  emerald back then, but now in 2009, he's trying to claim that

2  he has ownership and the Morrison Group is trying to say that

3  they have clear title to an emerald that they never claimed.

4  And this is one of the main issues that will be on appeal that

5  we've been addressing, and there is several.  The judge also

6  noted --

7              THE COURT:  Lower your voice.  Calm down.  I'm

8  listening.

9              MR. THOMAS:  I'm sorry.  And the judge also noted

10  that I was Wayne Catlett's partner in this Bahia Emerald.

11  Wayne Catlett never even showed up for trial.  He was

12  subpoenaed.  He was a party.  We tried to take a non -- we

13  tried to take a judgment against him for failure to appear, and

14  it was not granted.  And he was a party in the trial.

15              The judge also cited Judge Kronstadt's --

16              THE COURT:  So where are you in this stuff that you

17  gave me?

18              MR. THOMAS:  I'm in the judgment that the -- that

19  they're talking about that the Judge Johnson --

20              THE COURT:  Just wait.

21              MR. THOMAS:  -- and his decision.

22              THE COURT:  That's after the bankruptcy stuff?

23              MR. THOMAS:  Yes.

24              THE COURT:  Okay.

25              MR. THOMAS:  Yes.

1          THE COURT:  Just wait.

2          MR. THOMAS:  I'm sorry, Your Honor.

3          THE COURT:  Okay.  So I've got, following the

4   bankruptcy, something entitled "Case Commence Deficiency

5   Notice, Mr. Wayne Catlett."  Is that what I'm looking at?

6          MR. THOMAS:  Yes, that's his bankruptcy.

7          THE COURT:  Oh.

8          MR. THOMAS:  That's Mr. Catlett's --

9          THE COURT:  Oh, okay.

10         MR. THOMAS:  -- bankruptcy.  He --

11         THE COURT:  Never mind, I'm not far enough.  So the

12  next one is -- no, that's bankruptcy, also.

13         MR. THOMAS:  Then, the second issue is that I --

14         THE COURT:  No, no, just wait.  I'm trying to figure

15  out -- did you give me the --

16         MR. THOMAS:  Creditor --

17         THE COURT:  -- did you give me the filings from the

18  state court?

19         MR. THOMAS:  Yes.

20         THE COURT:  All right.

21         MR. HARTMAN:  Your Honor, if it's the May 2015

22  determination that he's referring to, which I believe it is,

23  it's Exhibit A -- excuse me, Exhibit 1 to my initial motion,

24  which was Docket Entry 302.

25         THE COURT:  Okay.  So trustee's motion is 302?

-37-

1    MR. HARTMAN:  Yes.

2    THE COURT:  Okay.  Let me look at that.  Sorry to be

3  fumbling around with the papers.  Exhibit what?

4    MR. HARTMAN:  Exhibit 1.

5    THE COURT:  All right.

6    MR. HARTMAN:  Or Exhibit A, I'm sorry.

7    THE COURT:  Well, my thing has it as A-1, so --

8    MR. HARTMAN:  Okay.

9    THE COURT:  All right.  This is <u>Ken Conetto and Eric</u>

10  <u>Kitchen v. Kit Morrison</u>.  Is that what we're looking at?

11    MR. THOMAS:  Yes.

12    THE COURT:  Okay.

13    MR. THOMAS:  Yes, and I was an intervener in the

14  case.

15    THE COURT:  And you were what?

16    MR. THOMAS:  I was an intervener.  I --

17    THE COURT:  Okay.  So what part of this tentative do

18  you want me to look at?

19    MR. THOMAS:  Okay.  In there, it said that I was

20  Wayne Catlett's partner, and -- in the Bahia Emerald, and this

21  is Page 5, Line 20.

22    THE COURT:  Just a second.

23    THE CLERK:  Your Honor, would you like a paper copy?

24    THE COURT:  Yes, please.  Does this have the exhibits

25  on it?

-38-

1    You're referring to the exhibit, aren't you?

2    MR. THOMAS:  No, I'm referring to the page number.

3    THE COURT:  In the trustee's motion?

4    MR. THOMAS:  Yes.  And --

5    THE COURT:  Okay, okay, okay.

6    MR. THOMAS:  And at first, we could go to the -- the

7  first reason I think that it'll be appealed is in his decision,

8  he talks about the prior Judge Kronstadt's case, and it was

9  stricken from the record.  And that's an appealable issue on

10  itself.  He refers to the prior case that was stricken from the

11  record completely in his judgment.

12    THE COURT:  Okay.  Just back up for a second here.

13    MR. THOMAS:  Okay.

14    THE COURT:  What the trustee is trying to do is sell

15  a potential interest in a claim that they have, which would

16  give them half of 1 percent of any recovery.

17    MR. THOMAS:  Yes.

18    THE COURT:  That's what the trustee is supposed to

19  do.  The trustee is supposed to liquidate the estate for the

20  benefit of the creditors.  Do you have a better offer than

21  that?

22    MR. THOMAS:  Yes.  I --

23    THE COURT:  What's your offer?

24    MR. THOMAS:  My offer is five percent.  It's ten

25  times more, and I put it in writing, ten times more than

-39-

1  Mr. Morrison's, and I think that I have --

2            THE COURT:  And you have similar claims, correct?

3            MR. THOMAS:  Yes.

4            THE COURT:  But you are personally in bankruptcy in a

5  Chapter 7.

6            MR. THOMAS:  But -- yes, but I have 100 percent

7  ownership if I win on the appeal, which would go to --

8            THE COURT:  But that belongs to the trustee, not to

9  you.

10            MR. THOMAS:  Yes, that is correct, but that would

11  help my creditors and I'm paying all the costs myself.  I'm not

12  asking the trustee to pay any of the costs for the appeal or

13  for the trial.  I've been paying them all myself, and I asked

14  the trustee prior to stipulate to abandoning the claims to me

15  last year, and I thought that my attorney, Michael Lehners,

16  filed a motion to abandon the claims to me, which the trustee

17  said she was going to do.  But then, I found out that that

18  motion was not filed and it was only a stipulation that was

19  sent to the trustee, which she rejected.

20            THE COURT:  Well, the trustee does not have to

21  abandon it to you.

22            MR. THOMAS:  I know, but I -- what's best for me is

23  what's best for the creditors, and the most amount of money

24  that we can get for the Bahia Emerald case.  They're offering

25  zero dollars.

-40-

1        THE COURT:  And you're offering zero dollars, too.

2        MR. THOMAS:  But if I win the appeal, which I believe

3  I will win the appeal because they don't have clear title.

4  Mr. Catlett never claimed the emerald in his bankruptcy, and he

5  gave them title to --

6        THE COURT:  Don't point at people.

7        MR. THOMAS:  I'm sorry.  He gave --

8        THE COURT:  Don't point at people.

9        MR. THOMAS:  I'm sorry.  They received title from

10  Wayne Catlett.  It wasn't a valid title because I was a

11  creditor on his bankruptcy, and judicial estoppel --

12        THE COURT:  And do you have a ruling to that effect?

13        MR. THOMAS:  Yes.

14        THE COURT:  From whom?

15        MR. THOMAS:  A ruling from --

16        THE COURT:  That you own the property.

17        MR. THOMAS:  No, I do not have a ruling on that.

18        THE COURT:  Okay.  Do you have an order from Judge

19  Riblet saying that that's not -- that his bank -- that he was a

20  -- that was the chapter -- that was the judge who heard his

21  bankruptcy?  Is there a ruling on this from him [sic] -- from

22  her?

23        MR. THOMAS:  That he didn't put down the emerald as

24  an asset on his bankruptcy?

25        THE COURT:  Or that somehow this belongs to you?

-41-

1        MR. THOMAS:  I believe that there was a number of
2   errors in the judge's decision, and this is just one while --
3   why it will be overturned.  And if he doesn't have a clear
4   title --
5        THE COURT:  Don't point.
6        MR. THOMAS:  -- I'm the only person left, Your Honor,
7   that -- in the case.  I did buy the emerald.  Mr. Catlett and
8   Mr. Kitchen --
9        THE COURT:  Isn't this the same emerald you told me
10  had been lost in Hurricane Katrina?
11        MR. THOMAS:  This is the same emerald that was stolen
12  from me in 2001 and from the Brazilians.  And I have 112
13  recordings, police recordings, where Ken Conetto admits that
14  the Brazilians stole the emerald from me.  New evidence.
15        THE COURT:  Sit down.
16        MR. THOMAS:  Okay.
17        THE COURT:  Have a seat.
18        MR. THOMAS:  Okay.
19        THE COURT:  I'm going to let the trustee sell it.  I
20  think the trustee has a better view of reality than you do.
21        MR. THOMAS:  Your Honor, it's -- they're getting zero
22  dollars, and that's not good for my estate.
23        THE COURT:  And you're offering zero dollars, too.
24  In order to give anything, you have to win several appeals.  I
25  think that they -- that his choice is better.  You are very,

-42-

1  very personally involved with these emeralds.  You are very,

2  very emotional about the emeralds, which I can understand.

3  That makes sense.  You've devoted a great deal of your life to

4  trying to liquidate these and recover these, but you've not

5  been successful in doing that and you've not been successful in

6  litigation.  So I think the trustee has the better position in

7  this.  I may be wrong, but if I'm wrong, I'm wrong.

8          MR. THOMAS:  Can we have a hearing on this so that I

9  can present my evidence to --

10          THE COURT:  No, we cannot.  I'm not going to hold a

11  hearing on this.  I think the trustee gets to make a business

12  judgment.  I trust the trustee's business judgment.  The

13  trustee is aware of your offer.  The trustee didn't accept your

14  offer.  The trustee is invested with the right to make this

15  decision, and that's what I'm going to do.  You may sit down.

16          MR. THOMAS:  Can I --

17          THE COURT:  You may sit down.

18          Please prepare an order, Mr. Hartman.  Please have

19  Mr. Thomas sign off.

20          Mr. Thomas, you can sign off --

21          MR. THOMAS:  I object.  I object, Your Honor, to this

22  moving forward.  Under --

23          THE COURT:  Your objection is overruled.

24          MR. THOMAS:  -- under 363 --

25          THE COURT:  Your objection is overruled.

—43—

1    MR. THOMAS:  -- it's --

2    THE COURT:  You may sit down.  I will have you

3    removed if you persist in this.  Please sit down.

4    MR. THOMAS:  Your Honor, I'm entitled --

5    THE COURT:  You will be --

6    MR. THOMAS:  -- to a fair hearing.  I lost my home

7    over this.  These guys stole an emerald from my home, and they

8    were in possession of it.

9    THE COURT:  Please call security.

10   THE CLERK:  Yes, sir.

11   THE COURT:  Please have them stay for the rest of

12   this hearing.

13   Please sit down.

14   Please upload an order.  Mr. Thomas is waiving his

15   signature.

16   MR. HARTMAN:  I'll do so, Your Honor.

17   THE COURT:  Thank you.

18   MR. HARTMAN:  Thank you.

19   MR. KEARNEY:  Your Honor, if I may, this is Mark

20   Kearney on the phone.  We filed not necessarily an opposition,

21   but more of a statement of our position as far as we've got a

22   security interest in the recovery -- any recovery on the

23   emerald in connection with our representation of Mr. Thomas in

24   the second trial, month-long trial.  We have asked that the

25   Court recognize that lien and order that that lien be paid if

-44-

1  and when any proceeds are obtained in connection with the

2  emerald.

3          THE COURT:  If and when there are proceeds obtained,

4  I will hear your motion.  I am not determining whether you have

5  a security interest.  I'm not determining whether it was stolen

6  from Brazil.  I'm determining whether the L.A. Police

7  Department, who has custody of it, are the rightful owners of

8  it.  I'm not determining any of those things at this time.

9  Whatever claim the estate has that they are getting rid of for

10  half a percent interest in any recovery in this case is what

11  I'm doing.  I'm not determining any of the collateral things

12  because I think it's a waste of time at this moment.  It's --

13  we're a long way down the road before any of this money ever

14  comes in if, in fact, it comes in.  But that's what I'm doing.

15          MR. HARTMAN:  Your Honor, if I may, in the reply that

16  I filed, I addressed this, and I just suggested that the status

17  quo be maintained with respect to the lien claim.  Whatever it

18  is, it is, and we'll deal with it if there's money to fight

19  over.

20          THE COURT:  That -- and that's exactly --

21          MR. HARTMAN:  And --

22          THE COURT:  -- what I'm saying.

23          MR. HARTMAN:  And I'll include that in the order.

24          THE COURT:  Okay.  Thank you, Counsel.

25          MR. HARTMAN:  Thank you.

-45-



1          MR. KEARNEY:  Thank you.

2      (Concluded at 2:23 p.m.)

3                              *  *  *  *  *

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

# C E R T I F I C A T I O N

1

2

3        I, Alicia Jarrett, court-approved transcriber, hereby

4   certify that the foregoing is a correct transcript from the

5   official electronic sound recording of the proceedings in the

6   above-entitled matter.

7

8

9

10   _Alicia J. Jarrett_

11   ALICIA JARRETT, AAERT NO. 428    DATE:  March 10, 2016

12   ACCESS TRANSCRIPTS, LLC

13

14

15        I, Lisa Luciano, court-approved transcriber, hereby

16   certify that the foregoing is a correct transcript from the

17   official electronic sound recording of the proceedings in the

18   above-entitled matter.

19

20

21   _Lisa Luciano_

22   LISA LUCIANO, AAERT NO. 327    DATE:  March 10, 2016

23   ACCESS TRANSCRIPTS, LLC

24

25

ACCESS TRANSCRIPTS, LLC        1-855-USE-ACCESS (873-2223)

**EXHIBIT 5**

Excerpts from Transcript of Hearing
3-9-2016

**EXHIBIT 5**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

|  |  |  |
|---|---|---|
| IN RE: | . | Case No. 14-50333-btb |
| ANTHONY THOMAS and WENDI THOMAS, | . . | Chapter 7 |
| Debtor. | . | |
| . . . . . . . . . . . . . | . | |
| JOHN BEACH, | . | Adv. No. 14-05067 |
| Plaintiff, | . | |
| v. | . | |
| ANTHONY THOMAS and WENDI THOMAS, | . | 300 Booth Street Reno, NV 89509 |
| Defendants, | . | Wednesday, March 9, 2016 2:04 p.m. |
| . . . . . . . . . . . . | . | |

PARTIAL TRANSCRIPT OF HEARING RE: MOTION FOR SUMMARY
JUDGMENT FILED BY JOSEPH G. WENT ON BEHALF OF JOHN BEACH [34];
PRETRIAL HEARING RE: FIRST AMENDED COMPLAINT FOR DETERMINATION
OF NON-DISCHARGEABILITY OF DEBT AND DENIAL OF DISCHARGE
FILED BY JOSEPH G. WENT ON BEHALF OF JOHN BEACH
AGAINST ALL DEFENDANTS [27]
**BEFORE THE HONORABLE BRUCE T. BEESLEY**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | Holland & Hart LLP By:  JOSEPH G. WENT, ESQ. 9555 Hillwood Drive, 2nd Floor Las Vegas, NV 89134 (702) 669-4600 |
| For Debtor/Defendant: | ANTHONY THOMAS, Pro Se 7725 Peavine Peak Court Reno, NV 89523 |
| Audio Operator: | Stacie C. Burney, ECR |
| Transcription Company: | Access Transcripts, LLC 10110 Youngwood Lane Fishers, IN 46038 (855) 873-2223 www.accesstranscripts.com |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1    MR. THOMAS:   -- Mr. Lehners.

2    THE COURT:   Yeah, I saw that.

3    MR. THOMAS:   Yes.

4    THE COURT:   And I know that he withdrew.

5    While we're waiting, may I ask why you did not file

6    an opposition?

7    MR. THOMAS:   Yes, Your Honor.   I wanted to make a

8    statement on the record, and I believe because the Kenmark --

9    THE COURT:   Please stand up.

10   MR. THOMAS:   Yes, Your Honor.   Thank you.

11   THE COURT:   I'll let you make your statement on the

12   record, but why didn't you file an opposition?

13   MR. THOMAS:   Because, Your Honor, I was going to ask

14   that you recuse yourself because of the bias from the Kenmark

15   case.   And that in this case I am not the -- they have showed

16   conclusively that I am not the party of interest or the party

17   that owed the money to John Beach.

18   THE COURT:   Just have a seat.   You can make your

19   statement after they present their case.

20   MR. THOMAS:   Okay.

21   THE COURT:   You didn't file a motion for recusal, did

22   you?   Did you file a motion for recusal in this case?

23   MR. THOMAS:   I am not sure, Your Honor.

24   THE COURT:   I don't believe you did.

25   MR. THOMAS:   I don't believe I did.

1  was not worth the 200 million that they claim in the bankruptcy

2  case.

3      We know that you act knowingly if somebody acts

4  deliberately and consciously.  I think here all these facts

5  that have been discussed here today that the Court can conclude

6  and infer that the defendants knew that the Thomas Emerald did

7  not have the value alleged in the schedules and statements.

8      Based on that, Your Honor, we would ask the Court to

9  grant the relief requested in the motion.

10      THE COURT:  Okay.  Thank you.

11      Mr. Thomas, you are in default on this motion, which

12  means I can enter the motion without your input.  Do you wish

13  to say something?

14      MR. THOMAS:  Yes, I would, Your Honor.

15      THE COURT:  Please go ahead.

16      MR. THOMAS:  I would like to address all of these

17  issues and --

18      THE COURT:  No.  You don't get to do that.  You

19  didn't respond.

20      MR. THOMAS:  Okay.  Your Honor, the reason I didn't

21  respond is because of financial and because I work 12 days out

22  of town and I am home for two.  And when I was served with

23  these things, I asked them repeatedly to email me notices and

24  that stuff so that I could respond.  And you, the Court, told

25  them to send emails to me so that I could respond.

# EXHIBIT 6

Excerpts from Transcript of Hearing

8-10-2018

EXHIBIT 6

-52-

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

|  |  |  |
|---|---|---|
| IN RE: | . | Case No.   14-50333-BTB |
|  | . |  |
|  | . | Chapter 7 |
| ANTHONY THOMAS and | . |  |
| WENDI THOMAS, | . | 300 Booth Street |
|  | . | Reno, NV  89509 |
| Debtors. | . |  |
|  | . | Friday, August 10, 2018 |
| . . . . . . . . . . . . . . | . | 10:03 a.m. |

TRANSCRIPT OF MOTION TO WITHDRAW AS ATTORNEY OF
RECORD AND FOR CLARIFICATION OF STATUS AS COUNSEL, ETC.,
FILED BY LAURY MILES MACAULEY ON BEHALF OF
MACAULEY LAW GROUP, P.C. [358]
**BEFORE THE HONORABLE BRUCE T. BEESLEY**
**UNITED STATES BANKRUPTCY COURT JUDGE**


APPEARANCES:

For the Debtor:              ANTHONY THOMAS, Pro Se
                             7725 Peavine Peak Court
                             Reno, NV  89523

For Macauley Law             Macauley Law Group, P.C.
Group, P.C.                  By:  LAURY MILES MACAULEY, ESQ.
                             5470 Kietzke Lane, Suite 300
                             Reno, NV  89511-2099
                             (775) 323-1510

For the Chapter 7            Hartman & Hartman
Trustee:                     By:  JEFFREY L. HARTMAN, ESQ.
                             510 West Plumb Lane, Suite B
                             Reno, NV 89509
                             (775) 324-2800



Audio Operator:              David Lindersmith, ECR


Transcription Company:       Access Transcripts, LLC
                             10110 Youngwood Lane
                             Fishers, IN 46038
                             (855) 873-2223
                             www.accesstranscripts.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1   community of attorneys and they all talk to each other, and

2   it's not easy to get an attorney here.  So I would like to have

3   somebody come from the outside that I can get proper

4   representation in this court because I don't believe that I

5   have got proper representation so far.  Every one of my

6   attorneys knew that I was dyslexic.  Every one of my attorneys,

7   I disclosed.

8           THE COURT:  Your problem isn't dyslexia, sir.  Your

9   problem is dishonesty.

10          MR. THOMAS:  I don't believe that's true, Your Honor.

11  I disclosed the property.

12          THE COURT:  Well, I do, and I'm the one who counts.

13  So you have 30 days.  We'll have a status hearing in 30 days.

14  If you have a counsel at that point, you can proceed.  If you

15  don't have counsel at that point, you can tell me what efforts

16  you have made.  You can tell me who you've contacted.  You can

17  tell me, to your best understanding, why they have not agreed

18  to undertake your case.  And I may or may not give you

19  additional time.

20          What do we have in 30 days?

21          THE CLERK:  Your Honor, the closest I can give you is

22  September the 13th at 10 a.m.  It's a Thursday.

23          THE COURT:  We'll see you then.

24          MR. THOMAS:  Thank you, Your Honor.

25          THE COURT:  Mr. Hartman?

-54-

# EXHIBIT 7

Excerpts from Transcript of Hearing

9-13-2018

# EXHIBIT 7

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

|  |  |  |
|---|---|---|
| IN RE: | . | Case No. 14-50333-BTB |
|  | . | Chapter 7 |
| ANTHONY THOMAS AND | . |  |
| WENDI THOMAS, | . | 300 Las Vegas Blvd. South |
|  | . | Las Vegas, NV 89101 |
| Debtors. | . |  |
|  | . | Thursday, September 13, 2018 |
| . . . . . . . . . . . . . . . | . | 1:40 p.m. |

TRANSCRIPT OF STATUS HEARING FOLLOWING HEARING RE: DOC NO. 358
MOTION TO WITHDRAW AS ATTORNEY OF RECORD AND FOR CLARIFICATION
OF STATUS OF COUNSEL, ETC. FILED BY LAUREY MILES MACAULEY
ON BEHALF OF MACAULEY LAW GROUP, P.C.;
MOTION FOR TURNOVER FILED BY JEFFREY L. HARTMAN
ON BEHALF OF JERI COPPA-KNUDSON [353]
**BEFORE THE HONORABLE BRUCE T. BEESLEY**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

For the Debtors:          ANTHONY THOMAS, Pro Se
                          7725 Peavine Peak Court
                          Reno, NV 89523

For the Chapter 7         Hartman & Hartman
Trustee:                  By: JEFFREY L. HARTMAN, ESQ.
                          510 West Plumb Lane, Suite B
                          Reno, NV 89509
                          (775) 324-2800


Audio Operator:           Illuminada Starzyk, ECR


Transcription Company:    Access Transcripts, LLC
                          10110 Youngwood Lane
                          Fishers, IN 46038
                          (855) 873-2223
                          www.accesstranscripts.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

-56-

2

I N D E X
9/13/18

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Anthony Thomas | 39 - by The Court | | | |

EXHIBITS:                                                    PAGE

FOR THE TRUSTEE:

1 - Email dated 9/7/18                                        22

2 - Decision by State Bar of California                      22

3 - Printout of State Bar of California results              22

-57-

32

1          THE COURT:  You are dishonest.

2          MR. THOMAS:  No, it's not.  I'm not being dishonest,

3  Your Honor.

4          THE COURT:  Well, what about the fraud judgment that

5  was entered against you for several million dollars?

6          MR. THOMAS:  What fraud judgment?  The Kenmark case

7  where you didn't let me put in any evidence to show --

8          THE COURT:  No, no.

9          MR. THOMAS:  -- that they were an investor?

10         THE COURT:  In state court.

11         MR. THOMAS:  You blocked evidence --

12         THE COURT:  In state -- in state --

13         MR. THOMAS:  -- over and over.

14         THE COURT:  -- in state court, the fraud judgment

15  that was entered against you.

16         MR. THOMAS:  That judgment is in the process of being

17  turned over because the attorneys were convicted of fraud.

18  We're filing a case in California for that right now.  They --

19         THE COURT:  And you are currently the subject of a

20  fraud judgment entered against you.  Is that correct?

21         MR. THOMAS:  It was -- yeah, because of illegal acts

22  from my attorney.  They never disclosed that there was fraud in

23  the judgment to me.  It was said under Counts 4 and 5.  They

24  never told me that -- nobody in the courtroom ever said that

25  there was fraud, and my attorney told me --

-58-

1          THE COURT:  Except the judge.

2          MR. THOMAS:  No, we did not.

3          THE COURT:  Then why was there a judgment entered

4  that said fraud?

5          MR. THOMAS:  It's not in the record at all that there

6  was fraud.

7          THE COURT:  Why --

8          MR. THOMAS:  They --

9          THE COURT:  Stop.  Why would the judge enter a

10  judgment that said you had committed fraud?

11          MR. THOMAS:  The judge didn't enter a -- on the

12  record, the judge said all parties are agreeing to no

13  wrongdoing.  And Tersini's attorneys said that there was -- all

14  parties are agreeing to no wrongdoing.  And they slipped in

15  under -- because they -- the attorneys colluded to put four --

16  Counts 4 and 5 in there and never said what they were.  The

17  judge didn't even know what they were.

18          And so when it was read onto the record, they never

19  let me see a copy of the settlement agreement.  I never got to

20  see it.  I never got to sign it.  And my attorney told me that

21  I wasn't liable at all, that Mr. Gardner was taking 100 percent

22  of the responsibility.  His --

23          THE COURT:  However, there was a judgment entered

24  against -- listen to me.  There was a judgment entered against

25  you that said you had committed fraud.  Was there not?

-59-

34

1        MR. THOMAS:   There was a -- the fraud was committed
2   on me, Your Honor.
3        THE COURT:   Answer my question.
4        MR. THOMAS:   And I'm going to answer your question.
5        THE COURT:   Was -- answer my question.   Was there a
6   judgment entered against you that you had committed fraud?
7        MR. THOMAS:   Only by you, Your Honor.
8        THE COURT:   No, that's not true.   There was a
9   California state judgment that was entered against you.
10       MR. THOMAS:   There was -- there was a California
11  state judgment, but they never revealed the fraud to the judge
12  or myself.
13       THE COURT:   I didn't ask you that.   I asked you if
14  there was a judgment entered against you that said you had
15  committed fraud in a California state court.
16       MR. THOMAS:   Yes.   And that judgment was only because
17  you lifted the stay through the bankruptcy.   You lifted the
18  stay so they could go in and get a fraud judgment against me.
19  There was no fraud judgment before.
20       THE COURT:   I lifted the stay so they could go
21  forward with litigation.
22       MR. THOMAS:   And get a fraud judgment against me.
23       THE COURT:   I had no idea what they were going to do.
24       MR. THOMAS:   Well, I did.   I knew exactly what they
25  were going to do and that's why I asked you not to lift the

-60-

1 stay because I was not aware of the fraud because I was lied to

2 by my counsel and they committed fraud on the Court.  They

3 didn't tell the judge that there was fraud in there.  The judge

4 said on the record, all parties are agreeing to no wrongdoing.

5 Mr. Silver, Mr. Kenmark's attorney, said the exact same thing.

6 All parties --

7         THE COURT:  Well, let me ask you this.

8         MR. THOMAS:  -- are agreeing to no wrongdoing.

9         THE COURT:  Have you appealed?

10         MR. THOMAS:  Huh?

11         THE COURT:  Have you appealed?  Did you appeal the

12 California state judgment?

13         MR. THOMAS:  I am filing a case to have the whole

14 thing turned over.  The attorneys that represented me --

15         THE COURT:  Answer --

16         MR. THOMAS:  -- have been convicted of fraud.

17         THE COURT:  Answer my question first.  Have you

18 appealed the California state judgment?

19         MR. THOMAS:  I'm in the process of doing that right

20 now, okay.  We're having it turned over --

21         THE COURT:  Stop.

22         MR. THOMAS:  -- on the basis of fraud.

23         THE COURT:  Stop.  Stop.

24         MR. THOMAS:  I'm filing a motion with the Court.

25         THE COURT:  And have you gotten a stay of the

-61-

1  judgment pending your efforts to get it overturned?

2          MR. THOMAS:  Not yet, but we will.

3          THE COURT:  Okay.  So --

4          MR. THOMAS:  We're in the -- I'm in that process

5  right now, Your Honor.

6          THE COURT:  All right.  So you have a fraud judgment

7  against you that is current?

8          MR. THOMAS:  Yes.

9          THE COURT:  That's one of the reason I think you are

10  dishonest.

11          MR. THOMAS:  Because I was defrauded by my attorneys

12  and --

13          THE COURT:  That's not what the judgment says.  The

14  judgment says you committed fraud.

15          MR. THOMAS:  You can read the transcript.  The judge

16  said that all parties are agreeing to no wrongdoing.

17          THE COURT:  What I care about is what the judgment

18  says.

19          MR. THOMAS:  The judge didn't know what the judgment

20  said.  He wasn't even there.  He didn't sign off on the

21  judgment.

22          THE COURT:  I think that's highly unlikely.

23          MR. THOMAS:  No.  He didn't.  Judge Nichols was gone

24  when they went in and got the judgment.  They got it from

25  another judge.

1      THE COURT:  You nonetheless have an active judgment

2  finding you committed fraud.  That's one of the reasons I don't

3  think you're credible and I don't think you're honest.

4      MR. THOMAS:  Well, then you shouldn't be my judge

5  because if you can't be independent, then you shouldn't be the

6  judge.  You should recuse yourself right now.

7      THE COURT:  I should not because --

8      MR. THOMAS:  You should be because you're biased

9  against me.

10     THE COURT:  No, I'm not.  The only way I know about

11 this to know that you have committed fraud is by virtue of what

12 has happened in this case.  I am allowed to make findings and

13 have impressions based on what has happened in this case.

14     MR. THOMAS:  Your Honor, you blocked evidence in the

15 Tracini case throughout that showed that he was an investor.

16 There never was a loan.

17     THE COURT:  And have you --

18     MR. THOMAS:  And there was never funds --

19     THE COURT:  And have you appealed that judgment?

20     MR. THOMAS:  Yes, I have, Your Honor.

21     THE COURT:  And where is it?

22     MR. THOMAS:  Your case is in the Ninth Circuit Court

23 right now.

24     THE COURT:  That's fine.  And they may overturn me.

25 I don't know.

-63-

38

1      MR. THOMAS:  I believe they will.

2      THE COURT:  They could.

3      MR. THOMAS:  I believe they will.

4      THE COURT:  They could.  I don't know.

5      MR. THOMAS:  And I believe the case in Santa Clara

6  County is going to be overturned, too, Your Honor, and I think

7  I will be out of the bankruptcy because I didn't own anybody

8  any money.

9      THE COURT:  Okay.  Well --

10      MR. THOMAS:  And the fraud was committed on me.  And

11  you have taken it out on me since day one, me and my family.

12  And you've been biased.  You blocked all the evidence that I

13  tried to get into the court case showing that -- there never

14  was a loan.  There never was a loan.  There was no funds that

15  ever came to me, ever.

16      THE COURT:  Okay.  Well, I think you should address

17  Mr. Hartman's turnover motion.

18      MR. THOMAS:  Okay.  I'm here to address it right now,

19  and I want to address all the points where he lied.  And the

20  law is in my favor because --

21      THE COURT:  Please stop.  Stop.  Please step forward

22  and be sworn.  What document are you looking at, sir?

23      MR. THOMAS:  I'm looking at the declaration of

24  Jeffrey Hartman.

25      THE COURT:  And what document is that in?



ACCESS TRANSCRIPTS, LLC      1-855-USE-ACCESS (873-2223)

A. Thomas - Court Examination                    49

1        THE COURT:  Yes, please.

2        MR. HARTMAN:  Okay.  The question I think Mr. Thomas

3   is asking to testify to is whether or not the statements in my

4   declaration are accurate.

5        THE COURT:  And I don't have your declaration in

6   front of me.  Declaration of Jeffrey Hartman?  Yes.

7        MR. HARTMAN:  Right.

8        THE COURT:  Okay.

9        MR. HARTMAN:  On page 2, this is docket entry 404,

10  page 2, paragraph 6 is the one we were talking about.  And it

11  says that in looking at question 10, I interpreted it to mean

12  -- interpreted it to say that in 2008 they transferred the

13  residence to the parents for $200,000.  That's what docket

14  entry 1, page 36 says.  Now he may say that I didn't tell my

15  attorneys to say that, but he signed the schedules and

16  statements.

17        THE WITNESS:  I didn't sign it.

18        MR. HARTMAN:  Well --

19  BY THE COURT:

20  Q    Mr. Thomas, listen, your schedules and statements say that

21  it's misleading, but there where talks about the value of the

22  residence in Portola, there's $200,000 in that space.  Do you

23  see that?

24  A    I do see that, but there's also $25,000 in that space.

25  Q    Right.

-65-

A. Thomas - Court Examination                    50

1  A     And I made it clear on the record with the trustee.

2  Q     And this is a document that you authorized by your

3  signature to be done.  So this is confusing.  This is a

4  confusing thing.

5  A     That's why I cleared it up in the 341 meeting with the

6  trustee.  So she -- her saying she didn't know.  There's

7  specific questions about that in the 341 meeting, and I

8  presented those -- those questions as evidence.  And we can go

9  through every single one of those.

10          THE COURT:  No, we're done here.  This is not -- what

11  we're going to do is we're going to address Mr. Hartman's

12  motion for turnover, and you can address that.

13  BY THE COURT:

14  Q     The trustee has the right to turn over property that's not

15  exempt.  The house in Portola is not exempt.

16  A     Under the law, I believe you're wrong, Your Honor, and

17  you're not letting me --

18  Q     Could you stop, sir?

19  A     -- present the law.

20  Q     Would you --

21  A     You're --

22  Q     Would you not interrupt me, please?  The trustee has filed

23  a motion to turn over.  The property is not listed in -- the

24  property is still listed in your name.

25  A     But the turnover motion is not --

-66-

1  Q     Listen to me.

2  A     They already -- they admit in this motion themself that

3  there's an adversary complain with my parents, that there's a

4  dispute over the property.  And a turnover motion is not the

5  proper procedure for if there's a dispute over the property.

6  And I -- and I --

7  Q     You may step down --

8  A     And I put law in about that.

9  Q     -- and then sit down and be quiet.

10        (Witness excused)

11             THE COURT:  Your motion is granted.

12             MR. HARTMAN:  Thank you, Your Honor.

13             THE COURT:  Please upload an order.  I will sign it.

14  You do not need to run it by Mr. Thomas, and I will sign it.

15             Mr. Thomas?

16             MR. THOMAS:  Your Honor, I think you should recuse

17  yourself --

18             THE COURT:  Mr. Thomas?

19             MR. THOMAS:  -- because you do not go by the law.  I

20  put lots of law into this case and you just walked right over

21  it.  There's plenty of law that I put in that says --

22             THE COURT:  Then you should --

23             MR. THOMAS:  -- if there's a dispute --

24             THE COURT:  Then you should appeal.

25             MR. THOMAS:  If there's a dispute over --

-67-



1        THE COURT:  Then you should appeal.

2        MR. THOMAS:  -- a property --

3        THE COURT:  Then you should appeal.

4        MR. THOMAS:  I will appeal it.

5        THE COURT:  It is not the trustee's fault that your

6  mother did not record the deed.

7        MR. THOMAS:  Your Honor, you're wrong on the law.

8  Your job is to rule on the law, and you are wrong on the law.

9  If there's a dispute over the property, then they can't get it

10  from a turnover motion.  And I submitted all of that law, but

11  you won't look at it.

12        THE COURT:  I disagree with you.

13        MR. THOMAS:  No.  And the statute of limitations is

14  up because they only have six years to even go back and get it.

15  And I put that in, but you won't look at that law.  And then

16  they cite law under Chase Manhattan that's not even relevant to

17  the turnover motion.

18        THE COURT:  Would you --

19        MR. THOMAS:  It's --

20        THE COURT:  Would you please sit down, sir?

21        MR. THOMAS:  Can I cite that law and put it on the

22  record so that I can perfect my appeal?

23        THE COURT:  Please.  And what are you looking at

24  here?

25        MR. THOMAS:  I'm looking at the Chase case that they

-68-



1  cited.  It's not even relevant.  It's -- and in their brief,

2  they admit that there's a dispute over the law, and if there's

3  a dispute over the law, I provided you with law, tons of it, a

4  whole volume here that says that you cannot have a turnover

5  motion if there's a dispute over the property.  But you won't

6  look at the law.

7           THE COURT:  Show me where you're at.

8           MR. THOMAS:  Show you where it's at?

9           THE COURT:  In your filing of October 16th.

10          MR. THOMAS:  It's in my filings that I filed today.

11          THE COURT:  Well --

12          MR. THOMAS:  And it's also in my --

13          THE COURT:  -- how was I supposed to have read your

14  filings that you just filed?

15          MR. THOMAS:  Your Honor, I think you should read the

16  filings that I just filed because --

17          THE COURT:  Well, for one --

18          MR. THOMAS:  -- the whole -- this whole thing shows

19  that they can't do what they're doing and you can't do what

20  you're doing.  You're not going by the law.  The law says that

21  if there's a dispute --

22          THE COURT:  Stop.  Stop yelling at me.  Stop yelling.

23  Speak in a calm voice.  Don't be raising things up and --

24          MR. THOMAS:  I'm sorry, Your Honor.

25          THE COURT:  -- gesticulating.

-69-

1        MR. THOMAS:  You get me worked up because I feel

2   every time I come in this court, you just -- you are so biased.

3   You won't look at the law and you won't look at anything that I

4   file and go by the rule of law.  I live in the United States.

5        THE COURT:  As do I.

6        MR. THOMAS:  There's a Constitution, and you're

7   supposed to abide by it.

8        THE COURT:  As I do.  So --

9        MR. THOMAS:  I don't believe so.

10       THE COURT:  -- you filed this 21 minutes before the

11  hearing.

12       MR. THOMAS:  Yes, I did.

13       THE COURT:  And I didn't realize you'd filed it until

14  they put it up on the bench, so I did not have a chance to read

15  through your I'd say about 80 pages, so.

16       MR. THOMAS:  I think you should read it.

17       THE COURT:  Would you direct me to what you're

18  looking at?

19       MR. THOMAS:  Yes, I will.  I'll start off and I'll

20  even read it for you.

21       THE COURT:  No, you will not.  You will direct me to

22  what you're looking atm and I will read it.

23       MR. THOMAS:  Okay.  The first page.

24       THE COURT:  "I make this declaration in support"?

25       MR. THOMAS:  Yep.



1          "The turnover motion and to correct the errors in the

2          turnover motion.  Although I stated the trustee

3          replies of the opposition of the motion to turnover

4          of real property, Hartman's declaration makes it

5          clear that Thomas did not conceal the existence of

6          the Portola property" --

7          THE COURT:  So stop.  Stop.  Whether -- there's no

8  allegation at this point that you concealed it.  That's not an

9  issue in this case.

10         MR. THOMAS:  Okay.  Then let's --

11         THE COURT:  You did not conceal it.  It was on your

12  statements and schedules.  You did not conceal the transfer.

13         MR. THOMAS:  Okay.

14         THE COURT:  That's not part of this case.

15         MR. THOMAS:  Okay.  If you go to page 7 --

16         THE COURT:  Hold on.

17         MR. THOMAS:  -- I state --

18         THE COURT:  Hold on.  Stop.  On page 7, you list a

19  bunch of cases.

20         MR. THOMAS:  Yes.  And all these cases have to do

21  with the turnover motion if there's a dispute.  And if you look

22  at Mr. --

23         THE COURT:  So what is the dispute?

24         MR. THOMAS:  Mr. Hartman and --

25         THE COURT:  What is the dispute?



-71-

1        MR. THOMAS:  -- Knudson say that there's a dispute.

2   They put it in their brief, in the trial brief.

3        THE COURT:  Stop.  Answer my question.  What is the

4   dispute?

5        MR. THOMAS:  That my parents own the property and

6   they don't have a right to have it turned over because this

7   isn't a proper procedure for a turnover motion if there's a

8   dispute over the property.  My parents are claiming that they

9   own the property, and he's claiming that --

10       THE COURT:  Well, how about 544(a)(3) that says the

11  trustee has a hypothetical right as a bona fide purchaser of

12  value without notice to recover property?  Please turn your

13  phone off, sir.

14       MR. THOMAS:  I'm turning it off right now.

15       THE COURT:  So in this circumstance, there was not

16  deed that's filed in California that shows your parents own the

17  property.  And, therefore, under 544(a)(3), the trustee can

18  turn it over to her, so.

19       MR. THOMAS:  Your Honor, they can't because the deed

20  was conveyed, and I cited plenty of law in my brief saying --

21       THE COURT:  You've cited plenty of California law,

22  and that's absolutely correct.  But we're dealing with

23  bankruptcy law here.

24       MR. THOMAS:  I understand that, but the property is

25  in California, and California law --

-72-

1        THE COURT:  Doesn't trump federal law.

2        MR. THOMAS:  Well, and I put a bunch of cases in

3 there if you would read them all about --

4        THE COURT:  You gave them to me 21 minutes before the

5 hearing started.

6        MR. THOMAS:  No, I -- no, I put them in the judicial

7 notice that I'd like you to take when I filed my judicial

8 notice motion that I want you to take judicial notice of the

9 law so that you don't just rule any way you want.

10        THE COURT:  Here's what I'll do.  I will read the

11 cases you have cited.  I will continue this for a week.  You

12 will be back here in a week at 1:30 in the afternoon, and I

13 will make my decision.

14        MR. THOMAS:  Your Honor, I still want to go --

15        THE COURT:  Stop.

16        MR. THOMAS:  I want to make sure that we have a clear

17 record that I put a bunch of cases in there that says that this

18 is not the proper procedure for a turnover motion if there's a

19 dispute.  And the case that they cited, the Chase case, doesn't

20 have anything to do with it.  This should be turned over in my

21 favor today because the Chase case that they cited is a lot of

22 bona fide purchaser.  There's no bona fide purchaser.  My

23 parents have had that deed since 2008 and it was conveyed

24 properly back then.  Just -- and the law says they don't have

25 to -- they didn't have to register it for it to be their

-73-

58

1  property.

2          THE COURT:  Well, that would be perfectly correct if

3  you were in state court in California, but that's not where you

4  are.  You are in federal court in bankruptcy court where the

5  trustee has certain rights to set aside transfers.

6          MR. THOMAS:  I think in 1856 or something like

7  that --

8          THE COURT:  1856 --

9          MR. THOMAS:  --  I'm not sure exactly on the law.

10          THE COURT:  1856 was before the enactment of the

11  Bankruptcy Code.

12          MR. THOMAS:  Well, I understand that, but Nevada took

13  over the English law and so did California.  And in English

14  law, based on English law that I put in my brief that if a deed

15  is conveyed and it's conveyed with the intent, which it was,

16  and it was given to them for full value, then they have legal

17  title to that property.  It doesn't have to be reported and the

18  law --

19          THE COURT:  Except that the trustee has avoiding

20  powers that apply.

21          MR. THOMAS:  Not if there's a dispute.  You can't

22  give him the property in a turnover motion if there's a dispute

23  over the property, and there is a dispute.

24          THE COURT:  I do not think you are correct.

25          MR. THOMAS:  Well --

-74-

1        THE COURT:  But I will hear you next week.

2        MR. HARTMAN:  Well, Your Honor?

3        THE COURT:  Sit down.

4        MR. THOMAS:  This whole --

5        THE COURT:  Sit down.  Sit down.  You sit down.

6   Mr. Thomas, sit down.

7        MR. THOMAS:  You're not going to let me make a clear

8   record.  Is that what you're going to do, Your Honor?

9        THE COURT:  You have made a record.  You've made a

10  paper record.  I'm not going to let you yell at me anymore.

11  Sit down.

12       Mr. Hartman, please respond briefly.

13       MR. HARTMAN:  Two things, Your Honor.  One, earlier,

14  you struck that opposition that was filed or the reply that was

15  filed today because it's not within the rules.  He already

16  filed an opposition last week.

17       THE COURT:  I will still read it.

18       MR. HARTMAN:  And, second, it may not be obvious, but

19  basically Mr. Thomas is attempting to represent the rights of

20  his parents.

21       THE COURT:  Correct.

22       MR. HARTMAN:  Nobody has bothered to present the

23  Court with this deed that supposedly was transferred in 2008.

24  If there's going to be a record completed and Mr. Thomas is

25  going to insist on that position, then he should be ordered to

-75-

60

1  present a copy of that deed which should demonstrate that it

2  was signed in 2008 and transferred to his parents.  If he can't

3  do that, he has no case and his parents have no case.

4        THE COURT:  Mr. Thomas.

5        MR. THOMAS:  Your Honor --

6        THE COURT:  Please step to the podium.  I'm going to

7  ask you a question.

8        MR. THOMAS:  Ask me a question, Your Honor.  Go

9  ahead.

10        THE COURT:  Did you prepare a deed?  Did you --

11        MR. THOMAS:  Yes.  They have a signed deed.

12        THE COURT:  Did -- I didn't ask you that.  Did you

13  prepare a deed?

14        MR. THOMAS:  Yes.

15        THE COURT:  And did you give it to your parents?

16        MR. THOMAS:  Yes.

17        THE COURT:  And do they have it?

18        MR. THOMAS:  Yes.

19        THE COURT:  And why haven't you produced it?

20        MR. THOMAS:  Because I don't have the deed.  My

21  parents have the deed.

22        THE COURT:  Did you think it might make sense to ask

23  your parents?

24        MR. THOMAS:  It's -- the property is not mine, Your

25  Honor.

-76-



61

1        THE COURT:  I didn't ask you that.  Well --

2        MR. THOMAS:  And you had me do all this without an

3   attorney in 30 days.  I asked you if I could get an attorney to

4   represent me and you crammed this thing down my throat in less

5   than 30 days to represent myself.  And I asked you.  He slips

6   in right at the end.  This is an unfair practice, Your Honor.

7   My constitutional rights have been taken away.  You let him

8   have this hearing today without me getting an attorney --

9        THE COURT:  Stop.

10       MR. THOMAS:  -- and I had to spend --

11       THE COURT:  Stop.  Stop.

12       MR. THOMAS:  -- all this time to prepare this.

13       THE COURT:  You are not entitled to an attorney as a

14   matter of constitutional right in a bankruptcy hearing as an

15   individual.  You are not.

16       MR. THOMAS:  I have a disability, Your Honor, and

17   I'll have the --

18       THE COURT:  You have not proved that you have a

19   disability to the Court because you've not given any medical

20   evidence.  And I do not believe that dyslexia from what I can

21   understand is a disability that will allow you to behave as you

22   wish in court.

23       MR. THOMAS:  I'm not saying that, Your Honor.  I gave

24   you plenty of law on that that I'd like you to take judicial

25   notice on.  And I'd like you to take judicial notice on

-77-

1  everything that I filed and answer yes or no to everything that

2  I put on file on what your opinion is on it so if you rule

3  against me, I can appeal it.

4        THE COURT:  You don't get to have my opinion.  I will

5  make findings after I have read all this new stuff that you

6  give.  You are not to file anything other than the deed, if you

7  get it.  If you don't get the deed, you can't file anything.

8        MR. THOMAS:  I will file the deed.

9        THE COURT:  What?

10        MR. THOMAS:  I will file the deed.  That's not a

11  problem.

12        THE COURT:  That would be fine.

13        MR. THOMAS:  I have to ask my parents for the deed,

14  but I will get the deed.

15        THE COURT:  Okay.

16        MR. THOMAS:  I'll get a -- I will get a copy of the

17  deed because the law says they have to be in -- they have to be

18  in control of the deed at all times and they have been.  So I

19  will get you a copy of the deed that my parents hold.

20        MR. HARTMAN:  Well, then I would ask that it be the

21  original, Your Honor.

22        MR. THOMAS:  I'm not --

23        THE COURT:  It has to be the original.

24        MR. THOMAS:  I'm not going to give the original

25  because the law says that they have to hold the deed at all

63

1  times.  And I'm not going to break their -- you want my parents

2  to have the deed, then you subpoena them and bring them in here

3  and they'll give you the deed.  I'll give you a copy of the

4  deed.

5           THE COURT:  Would you please do an order to show

6  cause directing his parents to appear in court next Sunday or

7  next Thursday?

8           THE CLERK:  And Your Honor?

9           THE COURT:  What?

10          THE CLERK:  I apologize.  You'll be in Las Vegas --

11          THE COURT:  Oh, that's right.  I can't do that.

12  Yeah.

13          THE CLERK:  -- on Thursday for a meeting.  We can do

14  Friday at 1:30.

15          THE COURT:  Friday at 1:30.

16          THE CLERK:  Friday, the 21st of September.

17          THE COURT:  So I am entering an order ordering your

18  parents to appear with the original deed, parent or parents.

19  It doesn't have to be both of them.  You choose.

20          MR. THOMAS:  Yeah, my father is 89 years old.  My

21  mother is 80, so --

22          THE COURT:  You're the one who's causing the problem.

23          MR. THOMAS:  I'm not causing the problem, Your Honor.

24  I stated the facts on the case, and they were given the deed

25  back in 2008.

-79-

1            THE COURT:  Right.  And --

2            MR. THOMAS:  There's no problem.

3            THE COURT:  -- and you can either get the original

4  deed from them and bring it to court and display it --

5            MR. THOMAS:  Well, I'll have their attorney --

6            THE COURT:  That would be absolutely fine.

7            MR. THOMAS:  -- whatever they have to do and my

8  brother may because my parents are 80 and 89.  I don't think

9  it's fair.  My dad can't come up here because of his heart

10  condition, and --

11            THE COURT:  You're the one who's insisting that you

12  won't bring the original deed.

13            MR. THOMAS:  I will get you the deed, Your Honor.  If

14  you want me to present the deed, I will get the deed.

15            THE COURT:  That's all I want you to do.

16            MR. THOMAS:  But I want to give you a copy of the

17  deed, not the original deed because under the law, they have to

18  hold the deed at all times.

19            THE COURT:  I want you to bring to court the original

20  deed.

21            MR. THOMAS:  Well, I'll have to talk to their

22  attorney about that --

23            THE COURT:  That would do fine.

24            MR. THOMAS:  -- because I don't know if I -- if

25  they'll let me have it.  I don't -- I can't make my parents



1 give me the original deed.

2      THE COURT:  Then that's your problem, not mine.

3      MR. THOMAS:  Your Honor, once again, you're

4 prejudicing me and I think you should recuse yourself.

5      THE COURT:  I'm not going to recuse myself.  You will

6 certainly appeal whatever happens here.  You can raise whatever

7 you think it is I've done that's inappropriate.

8      MR. THOMAS:  Okay.  So my understanding is, Your

9 Honor, the document that I filed today, you will have on the

10 record and all that law you will rule on that law?

11      THE COURT:  What I said was I would read through the

12 stuff you filed today.  I will go back and compare it with the

13 stuff you filed earlier this week.  That's what I'm saying.

14      MR. THOMAS:  Okay.  I appreciate that, Your Honor,

15 because I think --

16      THE COURT:  Thank you.

17      MR. THOMAS:  -- if you read the law, you will see

18 that we were in the right and that the trustee and Mr. Hartman

19 are in the wrong and that they illegally took possession of my

20 parents home.

21      THE COURT:  I do have a question about your parents'

22 home.  You have testified previously that the home was just a

23 shell and that there was nothing in it but bare walls.  Is that

24 correct?

25      MR. THOMAS:  Yeah.  It's a shell.



1          THE COURT:  And --

2          MR. THOMAS:  Nobody ever lived in that house.

3          THE COURT:  Stop.  But your mother in her letter

4   indicated that the trustee had gone in and taken out cupboards

5   and some other things.  You didn't mention any cupboards, and

6   how would your mother know that?

7          MR. THOMAS:  My parents bought cabinets and that

8   stuff that are still in there.  They're not in the -- they're

9   on the floor.  They're not hanging on the wall.  Nobody's ever

10  lived in there.  There's no bathrooms in it.  There's no

11  running water.

12         THE COURT:  And where would your mother get the

13  information that cabinets were taken?

14         MR. THOMAS:  Because from the -- they didn't say that

15  they were taken.  They were moved, and they painted the inside

16  of the house.  That's their home.

17         THE COURT:  No, no, no.

18         MR. THOMAS:  They had --

19         THE COURT:  Your mother has asserted in her letter, I

20  believe --

21         MR. THOMAS:  No.  She says that they -- that she

22  wants an inventory of the cabinets that are in the house to

23  make sure that they're still there.  That's what she asked for

24  and for other personal items that they have in their home.

25  Somebody went in that house and painted that house.  They

-82-

1  didn't have the right.  That house wasn't turned over to

2  anybody.  This Court didn't turn it over.  They changed the

3  locks on her home and then they went inside the home.  And she

4  wants to know what they took out of the house.

5          THE COURT:  Then she can bring that.

6          MR. THOMAS:  She --

7          THE COURT:  It's not --

8          MR. THOMAS:  She asked Mr. Hartman to --

9          THE COURT:  No, no.  She has to bring it by way of a

10  pleading if she wants to get it properly, and that's not for

11  you.

12          MR. THOMAS:  I understand.  My mom's probably going

13  to sue the trustee and Hartman for what they did.  So that's

14  fine.  And for their misstatements to the Court, so.

15          THE COURT:  Okay.

16          MR. HARTMAN:  What is the hearing date and time, Your

17  Honor?

18          MR. THOMAS:  Your Honor, could I get a couple of

19  weeks so --

20          THE COURT:  Stop.  Let's find out what dates we have

21  available.

22          THE CLERK:  Your Honor, the original you said one

23  week would be --

24          THE COURT:  Yeah, but that won't work.

25          THE CLERK:  Okay.  Let's go a little farther out.

-83-

68

1          MR. THOMAS:  Could I make one request, Your Honor?

2          THE COURT:  Not right now you can't, but hang on.

3          THE CLERK:  Your Honor, we can bump it out two weeks

4  to Thursday, September the 27th at 2:00 p.m.

5          THE COURT:  Mr. Thomas, does that work for you?

6          MR. THOMAS:  Your Honor, because this is a financial

7  burden on me and every day I take off, it's taxing on me and my

8  family.

9          THE COURT:  I understand.

10          MR. THOMAS:  Okay.  And so, I would like the hearing

11  to be at the same time as the turnover motion which is supposed

12  to be on, what, October something.  So I don't -- and I will

13  bring those documents and I will ask my parents' attorney and

14  them if I can bring the original deed --

15          THE COURT:  That would be great.

16          MR. THOMAS:  -- to court.

17          MR. HARTMAN:  Your Honor?

18          THE CLERK:  The turnover motion's scheduled for

19  today, Your Honor, at this point --

20          MR. HARTMAN:  The --

21          THE COURT:  Yeah, today was --

22          MR. THOMAS:  No, I mean, excuse me, the motion that I

23  requested for judicial notice.

24          THE CLERK:  Oh, uh-huh.

25          MR. THOMAS:  So that you can rule on all the judicial



1  notice and all the stuff that I filed today.

2         THE COURT:  I'm not telling you that I'm going to

3  rule on the judicial notice.  I will read everything.  You

4  don't just get to ask me to make rulings on what's judicial or

5  not.  I make rulings based on facts and law, and I will do that

6  in this case.  I'm not going to give you a law review on

7  judicial notice or what you think.  I'm going to read the stuff

8  and I will consider it at the time of the hearing.  Do you

9  understand?

10        MR. THOMAS:  Yes.  That's what I would like you to

11  do, Your Honor.  I would like you to --

12        THE COURT:  Okay.  Stop.

13        MR. THOMAS:  -- rule on the facts and the law.

14        THE CLERK:  Your Honor, the date he was given for

15  that pleading for that motion was October the 16th at 2:00 p.m.

16        MR. THOMAS:  What --

17        THE CLERK:  I can block the rest of the afternoon if

18  you'd like.

19        THE COURT:  Okay.

20        MR. THOMAS:  What day is the 16th?

21        THE CLERK:  October the 16th is a Tuesday.

22        MR. THOMAS:  Could we do this on a Friday because for

23  me to take off during the middle of the week --

24        THE COURT:  That's -- let's see what we have on that

25  Friday.

-85-

1        THE CLERK:  Let's see what we have.  Unfortunately,

2  Your Honor, Friday is already full.

3        THE COURT:  What's on it?

4        THE CLERK:  We have the Galloway plan and disclosure

5  statement.  And in the morning, we have Baner v. Charles with a

6  motion for summary judgment at Las Vegas --

7        MR. HARTMAN:  Your Honor, may I be heard?

8        THE CLERK:  -- to which you intended to travel to Las

9  Vegas.

10       THE COURT:  Yes, sir.  Mr. Hartman.

11       MR. HARTMAN:  The purpose of the continuance was to

12  give you an opportunity to read the papers and for them to

13  present the original of the deed.  Putting it out into the

14  middle of October is unreasonable.

15       THE COURT:  I'm -- I don't think we'd go out much

16  further than that.  What do we have -- next Friday doesn't work

17  for you.  Is that correct?

18       MR. THOMAS:  No, Your Honor.

19       THE COURT:  The Friday after that, I don't think it

20  works for me either.  The Friday after that?

21       MR. THOMAS:  Your Honor, I'm working on all these

22  fires right now, so it's, you know, I got a really tough

23  schedule.  So if we could do it on the same day so that I don't

24  have to come back and you could do the rulings all at one time

25  and not -- I don't want to take more time in the court and more

-86-

74

1                        **C E R T I F I C A T I O N**

2

3          I, Dipti Patel, court-approved transcriber, hereby

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8

9    _/s/ Dipti Patel_

10   DIPTI PATEL, AAERT NO. 997     DATE:   September 27, 2018

11   ACCESS TRANSCRIPTS, LLC

12

13                       **C E R T I F I C A T I O N**

14

15         I, Alicia Jarrett, court-approved transcriber, hereby

16   certify that the foregoing is a correct transcript from the

17   official electronic sound recording of the proceedings in the

18   above-entitled matter.

19

20

21

22   _Alicia J. Jarrett_

23   ALICIA JARRETT, AAERT NO. 428     DATE:   October 1, 2018

24   ACCESS TRANSCRIPTS, LLC

25

-87-

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)