EXHIBIT 8

Excerpts from Transcript of Hearing
11-2-2018

EXHIBIT 8

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

|  |  |  |
|---|---|---|
| IN RE: | . | Case No. 14-50333-BTB |
|  | . |  |
|  | . | Chapter 7 |
| ANTHONY THOMAS AND | . |  |
| WENDI THOMAS, | . | 300 Booth Street |
|  | . | Reno, NV  89506 |
| Debtors. | . |  |
|  | . | Friday, November 2, 2018 |
| . . . . . . . . . . . . . | . | 3:14 p.m. |

TRANSCRIPT OF DECLARATION OF ANTHONY THOMAS IN SUPPORT OF
MOTION FOR JUDICIAL NOTICE OF LAW & FACTS (FRE RULE 201) FILED
BY ANTHONY THOMAS [395];
STATUS HEARING:  MOTION FOR TURNOVER FILED BY
JEFFREY L. HARTMAN ON BEHALF OF JERI COPPA-KNUDSON [353]
**BEFORE THE HONORABLE BRUCE T. BEESLEY**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

| | |
|---|---|
| For the Debtors: | ANTHONY THOMAS, Pro Se<br>7725 Peavine Peak Court<br>Reno, NV 89523 |
| For the Chapter 7<br>Trustee: | Hartman & Hartman<br>By: JEFFREY L. HARTMAN, ESQ.<br>510 West Plumb Lane, Suite B<br>Reno, NV 89509<br>(775) 324-2800 |
| Chapter 7 Trustee: | JERI COPPA, ESQ.<br>3495 Lakeside Drive<br>Reno, NV  89509<br>(775) 329-1528 |
| For Kenmark Ventures:<br>(Telephonically) | AMY N. TIRRE, ESQ.<br>3715 Lakeside Drive, Suite A<br>Reno, NV  89509<br>(775) 828-0909 |
| Audio Operator: | Illuminada Starzyk, ECR |
| Transcription Company: | Access Transcripts, LLC<br>10110 Youngwood Lane<br>Fishers, IN 46038<br>(855) 873-2223<br>www.accesstranscripts.com |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

1   (Proceedings commence at 3:14 p.m.)

2        THE COURT:  Good afternoon.  Pardon me, good

3   afternoon.  Please be seated.  This is the case of Anthony

4   Thomas and Wendi Thomas, case number 14-5033.  Appearances in

5   Court, please.

6        MR. HARTMAN:  Good afternoon, Your Honor.  Jeff

7   Hartman on behalf of the trustee.

8        MS. COPPA:  Good afternoon, Your Honor.  Jeri Coppa,

9   trustee.

10       THE COURT:  Mr. Thomas?

11       MR. THOMAS:  Good afternoon, Your Honor.  I first

12  would like to apologize to the Court and Mr. Hartman for being

13  late today.

14       THE COURT:  I understand there was bad traffic coming

15  out of San Francisco.  That happens, no problem.

16       MR. THOMAS:  Yeah.  So I want to apologize for the

17  inconvenience to the Court and to Mr. Hartman for that.

18       THE COURT:  Thank you, but I'm pretty sure we'll

19  survive.

20       MR. THOMAS:  Okay.  Thank you.

21       THE COURT:  Thanks.  Have a seat.

22       MR. THOMAS:  Okay.

23       THE COURT:  And on the phone, please?

24       MS. TIRRE:  (Telephonically)  Good afternoon, Your

25  Honor.  Amy Tirre on -- excuse me, on behalf of Kenmark

-90-

1  Ventures.  I'm just listening.

2            THE COURT:  Okay.  Thank you.  So this is a motion

3  to --

4            MS. TIRRE:  Thank you.

5            THE COURT:  This is a motion to turn over property.

6  Go ahead, Mr. Hartman.

7            MR. HARTMAN:  Well, Your Honor, at the last hearing,

8  if you'll recall, there was the contention by the debtor that

9  he had transferred the property in Portola to his parents in

10 2008.

11            THE COURT:  Right.

12            MR. HARTMAN:  And the sum and substance of the

13 hearing was that the Court entered an order, number one,

14 continuing the hearing, and then directing Mr. Thomas's parents

15 to bring the original deed to Court, and also directing Mr.

16 Thomas not to file any further papers.

17            THE COURT:  That's correct.

18            MR. HARTMAN:  And my understanding of at least one of

19 the papers filed by Mr. Thomas in the form of a declaration is

20 that he was told by Mr. Lehners that his parents should not

21 bring the deed into the State of Nevada.  There was a copy of a

22 purported deed attached to one of the papers filed by

23 Mr. Thomas, but I have no way of knowing whether it's an

24 authenticated deed that was, in fact, executed properly and

25 delivered in 2008.

1    So the Court also, at Mr. Thomas's request, continued

2   the hearing from an earlier date, I think it was in October,

3   until today because of Mr. Thomas's schedule, and here we are.

4   And there was something filed, apparently, within the last 15

5   minutes or so and I haven't had an opportunity to look at it

6   and see what it purports to be.

7        THE COURT:  Well, I was only handed it -- other than

8   that, it says it's a declaration of Anthony Thomas and it has

9   some attachments to it.  That's all I know.

10       MR. HARTMAN:  So what -- obviously the Court will

11  want to hear from Mr. Thomas, but what I'm going to propose is

12  that we kick this out again and I'm going to set a Rule 2004

13  examination for one or both of the parents, and I'll go down to

14  the vicinity of where they live and we'll have a 2004

15  examination on the record in the court reporter's office.  And

16  I'll examine what it is that they have and then make a

17  determination as to whether or not I want to engage a

18  handwriting expert to determine the authenticity or not.

19       THE COURT:  Okay.  Thank you.  Mr. Thomas?  So did

20  you bring the original with you?

21       MR. THOMAS:  No, I did not, Your Honor.

22       THE COURT: And why is that?

23       MR. THOMAS:  Because my parents and their attorney

24  wouldn't let me bring it.  And at the advice of Mr. Lehners I

25  only gave the copy because Mr. Hartman only requested a copy in

5

1   a letter that he sent to me.

2            THE COURT:  Well, there was also a statement in court

3   that you were to bring the original.

4            MR. THOMAS:  I know, but I can't force my parents to

5   give me something that's not mine, and --

6            THE COURT:  Well, we can.

7            MR. THOMAS:  -- and I don't have any grounds.

8            THE COURT:  We can.  We can subpoena it.

9            MR. THOMAS:  Well, I understand that and the Court

10  has that right to do that, but my parents were not involved in

11  any of the litigation and nobody, you know, nobody has served

12  my parents or any of that, so -- and I don't have the authority

13  to get the document from them.  You're asking me to do

14  something that I don't --

15           THE COURT:  No.

16           MR. THOMAS:  -- have the right --

17           THE COURT:  Not any more.

18           MR. THOMAS:  Right.  So --

19           THE COURT:  It'll be subpoenaed.

20           MR. THOMAS:  So that's okay.

21           THE COURT:  Okay.

22           MR. THOMAS:  Your Honor, that's okay.  But I also

23  want to state that Mr. Hartman never requested the deed.  At

24  all times they -- and the trustee, they requested lots of

25  documents to me at the 341 meeting when this was all disclosed

-93-

6

1 and the house was disclosed and that my parents had the deed

2 over three years ago.  And they requested all kinds of

3 documents from me, bank account documents and everything else,

4 but they didn't -- they never requested the deed.

5          And they never requested the deed until after they

6 took possession of my parents' house.  And they had full

7 knowledge that my parents disclosed -- they had full knowledge

8 that parents had the deed back then.  They could have requested

9 it back then and they never did.  So I don't think it's fair

10 now for them to go back -- it's -- the burden is on them, Your

11 Honor, and they didn't meet that burden.  They didn't --

12          THE COURT:  How did they not meet that burden?

13          MR. THOMAS:  Because they never requested the deed

14 until after they took possession of their house and they had

15 the right to request the deed --

16          THE COURT:  And is there a rule that says they have

17 to request the deed at a certain time?

18          MR. THOMAS:  There should be a statute --

19          THE COURT:  Is there?  Is there a statute that says

20 they have to request the deed by a certain time?

21          MR. THOMAS:  I believe there is, and I --

22          THE COURT:  So tell me what --

23          MR. THOMAS:  And I --

24          THE COURT:  Tell me what it is.

25          MR. THOMAS:  And I stated that in my --

-94-



1      THE COURT:  Tell me what it is.

2      MR. THOMAS:  -- in my motion.

3      THE COURT:  Tell me what it is.

4      MR. THOMAS:  Okay.  If you can give me just a few

5 minute to go through --

6      THE COURT:  Sure, I can.  No problem.

7      MR. THOMAS:  -- the docket and see -- you know,

8 through my docket and see which -- where that document is,

9 okay.

10      THE COURT:  Well, take a look.

11      MR. THOMAS:  I'm not an attorney, Your Honor.

12      THE COURT:  Take a look.

13      MR. THOMAS:  Okay.

14   (Pause)

15      MR. THOMAS:  I think it's addressed here in R3 of the

16 judicial notice where I asked to check the boxes under the --

17      THE COURT:  Well, I didn't bring those in.  Could you

18 please ask -- I'm sorry, I didn't see that.  Could you please

19 bring those in?

20      MS. COPPA:  Mr. Thomas, is that docket -- excuse me,

21 is that docket number 423?

22      MR. THOMAS:  I think it's 411.

23      MS. COPPA:  411, okay.

24      MR. THOMAS:  Submitted on 9/28.

25      THE COURT:  So while -- just while we're waiting --

1          MS. COPPA:  Okay.  Thank you.

2          THE COURT:  Just for your future education, giving me

3   a bunch of papers and asking me to take judicial notice of them

4   is not an appropriate way to try and prove your case.  I did

5   read what you sent to me.  I'm not sending back your report

6   card.  I considered what was in them, but you just don't take

7   judicial notice of various cases and stuff.  You read the

8   cases, see if they apply to the case and consider them in that

9   fashion.

10          So what's your -- I don't know what you were trying

11  to do, but the little report card you sent with me and all the

12  documents you sent with me, it's just not the appropriate way

13  to do it.  I mean, you can cite cases and I'll look them up or

14  you can -- if you want to be nice you can give me copies of

15  them and I'll look them up, but doing what -- doing it the way

16  you did was not good.  So what page is this?  What docket

17  number is this?

18          MR. THOMAS:  This is docket number 411.

19          THE COURT:  Okay.

20          MR. THOMAS:  And I cited a lot of cases.

21          THE COURT:  So I want to know which one says --

22          MR. THOMAS:  On Page 4 it would be R3.3 and R3.2, the

23  Jackson case.

24          THE COURT:  Hold on.  Okay.  So this -- I'll read

25  this.  It says:

-96-

9

1    "These presumptions are applicable even if the deed

2    is not recorded until after the death of the grantor

3    who, in the meantime, exercises act of control over

4    the property by collecting rent, paying insurance in

5    his own name, give some case cites."

6    And then R3.4 says, "Possession of the deed by the

7    grantee also creates prima facie evidence of valid delivery."

8    So my question was, is there a particular time by

9    which Mr. Hartman has to ask for the deed?

10    MR. THOMAS:  Well, I -- there was a statute in there

11    that I've cited some of the law, and I'm looking in here in the

12    question box, it said that, you know, a reasonable time for

13    chattel, you know, to -- and I think three and a half years --

14    THE COURT:  Well, chattel is not real property.  Real

15    property is not chattel.

16    MR. THOMAS:  Well, I mean, a reasonable time to ask

17    for the deed should have been three years ago when it was

18    disclosed.

19    THE COURT:  And what case says that?

20    MR. THOMAS:  I have some cases.  Let me get through

21    this because I have a lot that I sent to you.  And, Your Honor,

22    the reason that I did the checkbox is --

23    THE COURT:  I don't care.

24    MR. THOMAS:  Okay.

25    (Pause)

-97-

1    MR. THOMAS:  How about Page 21 on Docket 411 R18.

2    THE COURT:  Hold on.  Page 21 you said?

3    MR. THOMAS:  Uh-huh.  Point 4.

4    THE COURT:  R18.4:

5        "Trustee's turnover power can be improperly invoked,

6        especially when it is used as a Trojan horse for

7        bringing garden variety contract claims when the

8        property is not already property of the state or

9        where the turnover statute is used to recover assets

10       with disputed title when the estate's claim is

11       overship [sic] is" -- I think it means claim of

12       ownership -- "is legitimately debatable."

13   So how does that mean he has a limited period of time

14   to request the deed?

15   MR. THOMAS:  Well, I'm just going by what Hartman

16   told me that there was -- if it was over six years from the

17   time you filed bankruptcy they can't go back.  And he gave me

18   some law on that and I'm trying to find that law.

19   THE COURT:  Who gave you that?

20   MR. THOMAS:  Mr. Lehners.

21   THE COURT:  Well --

22   MR. THOMAS:  And so I'm trying to find that

23   particular law.  But, Your Honor, in their reply brief the only

24   two issues that they brought up in the reply brief was that I'm

25   dyslexic and that I didn't produce the deed, which I did

1   produce the deed --

2           THE COURT:  But not till after they filed their final

3   response.

4           MR. THOMAS:  Yeah, but they filed early.  They filed

5   a day early and I filed, you know --

6           THE COURT:  Okay.  You've now produced a deed.

7           MR. THOMAS:  Yes.

8           THE COURT:  You produced a photocopy of a deed.

9           MR. THOMAS:  And you said --

10          THE COURT:  Stop.  You produced a photocopy of a

11  deed.  You have not produced the original deed.  Is that

12  correct?

13          MR. THOMAS:  That is a photocopy of the original

14  deed.  Yes, I did not give the original deed, but I gave you a

15  photocopy of the original deed.

16          THE COURT:  Right.

17          MR. THOMAS:  Okay.

18          THE COURT:  And I -- my recollection is I told you to

19  bring the deed, but -- the real deed, not the photocopy of the

20  deed.

21          MR. THOMAS:  I understand that, Your Honor, but you

22  directed me to do something that I don't have the right to do.

23          THE COURT:  Okay.  That --

24          MR. THOMAS:  I don't have the power to do that, and

25  you know that.

1        THE COURT:  I understand -- well, if I asked my

2   parents they probably would do it, but I don't know.  But the

3   Court has the power to have your parents produce the deed.  Mr.

4   Hartman will apply for -- will file papers, will get an order

5   for them to produce the deed and they will have to produce the

6   deed.  He will then go to the area in California where they

7   live, he will depose them and he said he would probably have,

8   if he has concerns, a document examiner look at them.  He's

9   entitled to do that.

10       Mr. THOMAS:  Your Honor, in their reply brief they

11  never requested any of that and he's just requesting it now.

12  He didn't request any of that in his reply brief.  That's not

13  proper form.  He didn't request that my parents --

14       THE COURT:  Neither is giving me 600 pages of stuff

15  when I told you not to give me anything.

16       MR. THOMAS:  No, you didn't, Your Honor.  You said if

17  you produce the deed, which I did according to their letter, I

18  gave a copy.  They didn't ask for the original deed in their

19  letter.  They asked for a copy.

20       THE COURT:  You -- I told you not to file any more

21  pleadings.

22       MR. THOMAS:  Unless --

23       THE COURT:  Stop.

24       MR. THOMAS:  -- I produce the deed.  That was your

25  exact words.

-100-

1    THE COURT:  And you did not produce --

2    MR. THOMAS:  Go back to the transcript.

3    THE COURT:  And you did not produce the deed.

4    MR. THOMAS:  I did produce --

5    THE COURT:  You produced a copy of the deed.

6    MR. THOMAS:  Okay.

7    THE COURT:  Okay.  We're done here today.  So have a

8    seat.

9    MR. THOMAS:  Okay.  I would like --

10   THE COURT:  Have a seat.

11   MR. THOMAS:  I would like to --

12   THE COURT:  Have a seat or I will have security

13   remove you.

14   MR. THOMAS:  Your Honor, you should --

15   THE COURT:  Please call security.

16   MR. THOMAS:  You should recuse yourself right now,

17   Your Honor.  You are so biased to me.

18   THE COURT:  No, I'm not.

19   MR. THOMAS:  Yes, you are.  I filed this motion today

20   showing that you're biased.  On the docket, on your own docket,

21   Your Honor, if you --

22   THE COURT:  We will be in recess till the CSOs get

23   here.

24   MR. THOMAS:  Please call me back.

25   (Recess taken at 3:32 p.m.)

14

1    (Proceedings resumed at 3:44 p.m.)

2           THE CLERK:  We're back on the record.

3           THE COURT:  Okay.  Please come back to the podium,

4    sir.  So there was a question about whether or not you were

5    supposed to file anything, and I'll give you a copy of this

6    afterwards.  This is Page 62 of 74 of the hearing held 10/2/18.

7    It says you are not to file anything other than the deed if you

8    get it.  If you don't get the deed, you can't file anything.

9           MR. THOMAS:  That's right.  That's what you said.

10          THE COURT:  And you did not get the deed.  Stop.  You

11   said, I will file the deed.  You did not do that.  We need to

12   have the actual deed.  So here's a copy of this if you want.

13          MR. THOMAS:  Your Honor, I also found the question

14   you asked before for laches was on 11.9 of my judicial notice,

15   the Norton case, Page 9.

16          THE COURT:  I don't have the Norton case in front of

17   me.

18          MR. THOMAS:  What's that?

19          THE COURT:  I do not have the Norton case in front of

20   me.

21          MR. THOMAS:  I -- for the request for judicial

22   notice --

23          THE COURT:  You gave me something like 600 pages of

24   stuff.  I do not have the case you cite -- you're referring to

25   in front of me.

-102-

1        MR. THOMAS:  Okay.  I'll get it for you right here in

2   my binder.  Just give me one second and I'll pull it up for

3   you.

4        (Pause)

5        MR. THOMAS:  Okay.  Okay.  It's the 2012 <u>Norton</u> case

6   request for the Court to take judicial notice of the following

7   points of law regarding turnover motion under 542 and 543 of

8   the Bankruptcy Code.  The turnover motion actions under 542,

9   543 generally cannot be used, however, to determine assistance

10  whose title is in dispute.  The Court take judicial notice of

11  the Norton case.

12       THE COURT:  Do you have a copy of the <u>Norton</u> case

13  there?

14       MR. THOMAS:  And I can give you a copy right here.

15       THE COURT:  Yeah, give me the copy.

16       MR. THOMAS:  Okay.

17       THE COURT:  Your contention is that you can't use a

18  turnover case if there's a dispute.  I understand that.

19       MR. THOMAS:  And there's also laches because of the

20  time.  And I put that in a judicial notice.  That's why I was

21  asking, Your Honor, if you could check the boxes so that --

22       THE COURT:  I'm not --

23       MR. THOMAS:  -- I know that you --

24       THE COURT:  No, I'm not checking the boxes.

25       MR. THOMAS:  Well, how do I know that you're ruling

1  on the law, because in many cases before you didn't rule on the

2  law?  You made your own determination, in my opinion, of what

3  the law was and that's why I put the boxes in there so that I

4  know what your rulings are.

5        THE COURT:  So listen carefully.  I'm not going to

6  check the boxes.  I'm not going to do a report card for you.

7  What we're going to do is this.  Mr. Hartman is going to, as I

8  understand it, subpoena your parents and do whatever is

9  appropriate to try and get the original deed from them and to

10  question them about it and to discuss or to -- if he thinks

11  it's appropriate get a handwriting or somebody who's an expert

12  in those kinds of things and look at it.

13        MR. THOMAS:  Okay.

14        THE COURT:  That's what he's going to do.

15        MR. THOMAS:  That's okay, Your Honor.  And I just

16  want to say that I object on the record because Mr. Hartman --

17  this Court keeps trying Mr. Hartman's case for him.

18  Mr. Hartman never put that in his reply brief.

19        THE COURT:  Mr. Hartman said that when we were here

20  in Court this morning --

21        MR. THOMAS:  That's right.

22        THE COURT:  -- or this afternoon.

23        MR. THOMAS:  But he didn't put it in his reply brief

24  to my brief.  He only -- the only two things that he said was

25  that Mr. Thomas is not dyslexic, which I filed a bunch of

1  documents on that today.

2          THE COURT:  What you filed, as I recall, was you

3  filed -- I mean, I did some research on dyslexia.  About 20

4  percent of the population in this country suffer from some

5  level of dyslexia.  I don't doubt for a moment, from what you

6  told me, that you have a serious issue with dyslexia.

7          I don't think, however, that your dyslexia has any

8  impact on this particular motion.  This is a motion to turn

9  over property that is currently held in your name and would not

10 be exempt property.  The contention is -- I mean, your parents

11 -- you apparently gave the deeds of trust to your -- or the

12 deed to your parents.

13         MR. THOMAS:  That's correct.

14         THE COURT:  Under California law, if it doesn't get

15 filed, it's void, but there are certainly some exceptions to

16 that.  I am not arguing with you, sir, I'm just telling you

17 what I've read.

18         MR. THOMAS:  I know.

19         THE COURT:  So Mr. Hartman is going to take --

20         MR. THOMAS:  But --

21         THE COURT:  -- some discovery.  Stop talking.

22 Mr. Hartman is going to take some discovery.  When he has done

23 that we'll go forward with this matter.

24         MR. THOMAS:  I understand, Your Honor, but I think

25 that this Court keeps overreaching its bounds.  If you look at

1  the Whitney case, they don't have the right.  They don't have

2  that right.  And through the laches, through the time that

3  they've already barred the time is expired.  That house was

4  given to my parents in 2008, six years prior to me filing for

5  bankruptcy.

6          And then three years after they had notice, three and

7  a half years after they had notice of the deed and that my

8  parents had the deed they never made a request, not one, not

9  until after they took possession of my parents' home.

10          THE COURT:  It's not your --

11          MR. THOMAS:  And changed the locks without a court

12  order, without court approval.  They broke into my parents'

13  house, they changed the locks and they put it -- they got

14  insurance on it without a court approval.  So --

15          THE COURT:  The house is in your name.  You were a

16  debtor in a bankruptcy case.  The trustee has the authority to

17  do those things.

18          MR. THOMAS:  Your Honor, I turned in over 600 pages

19  of legal law that says --

20          THE COURT:  Most of which --

21          MR. THOMAS:  -- no, that you cannot do what you're

22  doing.

23          THE COURT:  Okay.

24          MR. THOMAS:  And I've asked you to check the boxes

25  because you can --

-106-

1          THE COURT:  I am not checking --

2          MR. THOMAS:  I know, because you continue to overstep

3     your bounds.  There's a Supreme Court case right here, Whitney,

4     that says they can't, they can't touch my parents' house.  The

5     deed was conveyed a long time ago and through late laches their

6     time is expired.  So --

7          THE COURT:  In California a deed that is not

8     recovered -- not recorded is void.  The house --

9          MR. THOMAS:  It is not void, Your Honor.

10         THE COURT:  The house is --

11         MR. THOMAS:  It is not void.  I gave you plenty of

12    law on California law and this Whitney case speaks right to

13    that.

14         THE COURT:  So --

15         MR. THOMAS:  And if you read the Whitney case --

16         THE COURT:  You have --

17         MR. THOMAS:  -- it's a Supreme Court case and if you

18    want me to read it and put it on the record --

19         THE COURT:  No, I don't want you to read it.

20         MR. THOMAS:  -- we could do that right now.

21         THE COURT:  I don't want you to read it.  You can

22    file a motion that incorporates it and explain it there, but I

23    am not going through the several hundred pages of documents you

24    gave me and reviewing them and checking whether I agree with

25    you or not.  That's not how this works.

-107-

1    MR. THOMAS:  Your Honor, you are a federal judge.

2    THE COURT:  That's true.

3    MR. THOMAS:  And I have constitutional rights.

4    THE COURT:  Yes, you do.

5    MR. THOMAS:  I filed motions on the law and I'm

6  asking you to rule on that law.  I'm not asking you to do

7  anything other than rule on the law, and you're refusing to

8  rule on the law.

9    THE COURT:  Well, you've not --

10    MR. THOMAS:  So I don't -- so I think you should

11  recuse yourself.

12    THE COURT:  You've expressed that opinion a number of

13  times.

14    MR. THOMAS:  Yes, and I filed a document where on the

15  record you stated how biased you were to me and you put on the

16  record when you had the document in your docket file already

17  that shows that the statements that you made were false.  And

18  that's why I filed this motion today because you put on the

19  record that I -- that I admitted to fraud and agreed to fraud

20  in a settlement in California, which wasn't true at all.  And I

21  -- that's why I filed this motion, Your Honor, and you had --

22    THE COURT:  So please --

23    MR. THOMAS:  -- it on your docket already.

24    THE COURT:  Please explain to me why it was that you

25  had a several million dollar judgment entered against you in

-108-

1 | California.

2 |            MR. THOMAS:  I explained it in this brief and I'll
3 | explain it to you again, and I will explain it to you.  My
4 | attorney was notified by the State Bar on the eve of my trial
5 | on October 3rd that he was supposed to appear in front of the
6 | State Bar, okay?  And he wrote them an email, and that's -- let
7 | me give you the docket number so you can --

8 |            THE COURT:  No, you can just tell me.

9 |            MR. THOMAS:  He wrote them an email, the document is
10 | in here.  He wrote them an email at about 5:40 in the morning
11 | saying, Your Honor, I have a trial today and I didn't know that
12 | you noticed me.  Let me -- let's go right to the document so I
13 | don't get this wrong.  Okay.  It's in what I filed today.

14 |            THE COURT:  I have not looked at what you filed
15 | today.

16 |            MR. THOMAS:  Okay.  This is an email sent from
17 | Mr. Morrisey (phonetic) on October 3rd and it says --

18 |            THE COURT:  So let me stop you there.

19 |            MR. THOMAS:  Huh?

20 |            THE COURT:  Let me stop you there.  That letter is
21 | hearsay, unless you have Mr. Morrisey here to authenticate it.

22 |            MR. THOMAS:  It came from the State Bar record that
23 | was stamped filed.

24 |            THE COURT:  Or you have somebody from the State Bar
25 | here to authenticate it.

-109-

1          MR. THOMAS:  This letter was written to the State Bar

2     and it was stamped.  I got a stamped file from the State Bar

3     and I got a response from the State Bar, okay?  So with

4     judicial notice, with the stamp certifying this is a certified

5     letter from the Bar.

6          And this letter state that -- it says, Your Honor,

7     Presiding Judge of the State Bar Court, I was advised late last

8     night that there was a hearing today regarding disciplinary

9     charges that I have been brought against -- that have been

10    brought against me.

11         While I was not -- while I have not had the

12    opportunity and investigate exactly why I have received notice

13    of this matter or any hearing, I do know that it relate -- it's

14    related to my wife, who apparently has been suffering from

15    mental illness issues, and not the State Bar Court.

16         I am starting a trial today in Santa Clara Superior

17    Court and have spent every moment since I was reinstated on

18    Friday, which he never told me he was suspended in the first

19    place.  He had been suspended for two of the five months that

20    he represented me.  My attorney didn't tell me, no other

21    attorneys told me.  So I was not aware that my attorney was

22    suspended, okay?

23         On Friday preparing for trial -- this trial was

24    continued for August -- from August 1st and it was continued

25    from August 1st because he was suspended from August 1st all

1  the way till September 30th and never notified me, never told

2  me, okay -- 2001.  Today, due to the suspension I served

3  following my guides from the LAP and ADP program, I do not have

4  any option but to fully represent my client and try this case.

5          The case currently has a two-week timeline by all

6  parties.  I am requesting that any hearing scheduled for today

7  be continued so to allow a formal application and possible

8  hearing of counsel on my behalf.  Okay?  He sent this letter to

9  the Bar, this fax.  The Bar's response on the 4th was,

10 certified ruling, there was a court hearing on the 3rd and that

11 is Exhibit Number 3.

12          THE COURT:  Do you have that, please?

13          THE CLERK:  Yes, sir.

14          THE COURT:  Hold on.

15          MR. THOMAS:  They faxed it --

16          THE COURT:  Stop.

17          MR. THOMAS:  Huh?

18          THE COURT:  I'm waiting for the exhibit.

19          MR. THOMAS:  Okay.

20          THE COURT:  Okay.  It says:

21          "Respondent failed to appear at the pretrial

22          conference and has failed to appear at every single

23          court-related event.  Respondent's default will be

24          entered if he fails to appear at trial.  Trial will

25          start at 10:00 a.m. on October 11, 2011."

1      MR. THOMAS:  Yes.  Your Honor, Michael Morrisey knew

2  at that time that he could no longer represent me, and he had a

3  duty, and so did all the other attorneys, because Patricia

4  Douglas, also an attorney, and Mr. Scanlan all knew that

5  Mr. Morrisey wrote this letter to the Bar on the 3rd.  And they

6  also knew what the Bar's response was on the 4th, and they all

7  had a duty to tell Judge Nichols that he could no longer

8  represent me and not put anything on the record.  And --

9      THE COURT:  And did you tell him that?

10      MR. THOMAS:  Did who -- did I tell him that, what?

11      THE COURT:  The judge.

12      MR. THOMAS:  I didn't know, Your Honor.  I just got

13  these documents from the Bar a month ago.

14      THE COURT:  Okay.

15      MR. THOMAS:  Okay?  This is the first that I've ever

16  had any knowledge of this, and that's why I told you when I

17  came in here we're going to be filing a case in Santa Clara for

18  fraud upon the court because everything that those attorneys

19  did --

20      THE COURT:  Just listen.  Are you talking about the

21  attorneys on the other side?

22      MR. THOMAS:  The attorneys on the other side --

23      THE COURT:  And what --

24      MR. THOMAS:  -- and my attorney, they --

25      THE COURT:  And what obligation did the attorneys on

– |1| –

1  the other side --

2          MR. THOMAS:  They --

3          THE COURT:  -- have to you?

4          MR. THOMAS:  They colluded to --

5          THE COURT:  How do you know that?

6          MR. THOMAS:  -- to commit fraud on the court.

7          THE COURT:  How so?

8          MR. THOMAS:  Because they all knew and under 286 they

9  had a duty to tell me that my attorney was suspended, and they

10 knew that he was suspended, because they filed complaints to

11 the State Bar of record, which I found.

12         THE COURT:  So my understanding now is that you had a

13 judgment rendered against you, correct?

14         MR. THOMAS:  What's that?

15         THE COURT:  You had a judgment rendered against you,

16 correct?

17         MR. THOMAS:  I had a judgment rendered against me,

18 and if you go through the transcript --

19         THE COURT:  Just stop, just stop.

20         MR. THOMAS:  -- which is part of this --

21         THE COURT:  Just stop.  You had a judgment entered

22 against you for $4.5 million, something like that?

23         MR. THOMAS:  Yes, but it was under --

24         THE COURT:  Stop.

25         MR. THOMAS:  It was under fraud because they never

1  told me that -- they left me in the hallway when they did the

2  settlement, Your Honor.  I was not aware what the settlement

3  was.  And when -- and they never let me see a copy of the

4  settlement, and the judge says that in the transcript.  If you

5  read the transcript --

6          THE COURT:  Just stop for a second.  Have you filed

7  to set this aside?

8          MR. THOMAS:  I'm working on it, Your Honor.  I've

9  spent months putting documents together and I will file with --

10  probably within the next two weeks.

11          THE COURT:  Okay.

12          MR. THOMAS:  So --

13          THE COURT:  But as of right now --

14          MR. THOMAS:  As of right now I have not filed --

15          THE COURT:  And as of --

16          MR. THOMAS:  -- because I'm still putting

17  everything --

18          THE COURT:  And as of right now you have a fraud

19  judgment against you.

20          MR. THOMAS:  Yes, but that fraud judgment was based

21  on the -- on fraud on the court.

22          THE COURT:  Well --

23          MR. THOMAS:  If you read the transcript, Your Honor,

24  which I've presented to you today, they never told the judge

25  about the fraud.  They never --

1          THE COURT:  Stop, stop.

2          MR. THOMAS:  The judge says on the record --

3          THE COURT:  Stop, stop.

4          MR. THOMAS:  -- that all parties are agreeing --

5          THE COURT:  Stop.

6          MR. THOMAS:  -- to no wrongdoing.

7          THE COURT:  Stop.  This has nothing to do with your

8  case.

9          MR. THOMAS:  Yes, it does.  It has everything to do

10  with the bias that you said that you have about me.  You said

11  you --

12          THE COURT:  I said you have a fraud conviction

13  against you, I am not particularly fond of people with fraud

14  convictions.

15          MR. THOMAS:  That's correct.  And that --

16          THE COURT:  And if your fraud conviction or finding

17  is overturned I will apologize to you, but we'll wait to see if

18  that happens.  But for the moment, this is what we've got going

19  for us.

20          MR. THOMAS:  I understand, Your Honor, but if you

21  even looked at the facts on its face -- and that's what I want

22  you to look at right now because you have had --

23          THE COURT:  I am not --

24          MR. THOMAS:  -- a bias against me.

25          THE COURT:  I am not going back --

-114-

1    MR. THOMAS:  It's in this document, you don't have to

2  go back.

3    THE COURT: Stop.

4    MR. THOMAS:  It's in the court record.

5    THE COURT:  Stop, stop.  I am not the Superior Court

6  in California.  I am a bankruptcy judge in Reno, Nevada; you

7  are a debtor in Reno, Nevada; and the issue we are dealing with

8  is a piece of property in Portola, which is in your name.

9    MR. THOMAS:  I understand that, Your Honor.

10    THE COURT:  And that's what we're going to deal with.

11    MR. THOMAS:  I understand that, Your Honor, but you

12  gave me a life sentence with a judgment for $5 million on a

13  loan that I never received, based on Tracini (phonetic) and

14  their attorneys committing fraud on your court.  And you

15  restricted me from putting in evidence showing that they were

16  an investor.  Every time I tried to get in evidence you said it

17  doesn't matter whether they're investor or loan.  And every

18  time my attorneys tried to raise that issue you shut them down.

19    THE COURT:  Well, just appeal.  Appeal, overturn me.

20    MR. THOMAS:  Your Honor, I can't appeal you because

21  you blocked the record from me putting in evidence that they

22  were an investor, and if it didn't come into the court then I

23  can't appeal those issues.  There never was a loan.  There

24  never was a loan.  I never received a dime from Mr. Tracini.

25    THE COURT:  So where --

ACCESS TRANSCRIPTS, LLC            1-855-USE-ACCESS (873-2223)

29

1          MR. THOMAS:  And you -- and that's why I think you

2  should recuse yourself because you blocked evidence

3  intentionally so that I had a judgment against me for the rest

4  of my life for a loan that I never received and for funds that

5  I never received.  There was no evidence of a fax, a text

6  message, or anything to me on a loan.  And the only document

7  that they had was a forged document that they forged on my

8  parent's anniversary, which you know is October 25th.

9          THE COURT:  Actually, I don't.

10          MR. THOMAS:  Yes, you do because I said -- I asked

11  this Court that I didn't want this hearing scheduled for

12  October 25th because that's my parents' 60th anniversary.  They

13  forged those documents on my parents' anniversary and I was in

14  the same restaurant that I was in for my parents' anniversary

15  this last time in San Francisco at Kokkari restaurant with our

16  family.

17          I was not in their office at that time.  They forged

18  a document and I got a handwriting expert to show that those

19  documents were forged.  You let this bankruptcy court use funds

20  from my handwriting expert to buy the claim where they stole --

21  where my attorneys took $150,000 out of my trust account, and

22  you let them buy their claim out of bankruptcy in this court.

23          THE COURT:  So --

24          MR. THOMAS:  And with these trustees' approval.

25          THE COURT:  So what this -- what we are here about is

-116-

30

1   whether or not --

2           MR. THOMAS:  You are biased to me.

3           THE COURT:  What we're here about is whether or not

4   the trustee can force the turnover of the property in Portola

5   to her to liquidate.

6           MR. THOMAS:  And, Your Honor, if you would rule on

7   the law and if you would rule on everything that I put forward,

8   I don't think they can.  I think they are dead in the water,

9   and Mr. Hartman already conceded in his brief.  The only issues

10  he said were that Mr. Thomas was dyslexic and that they didn't

11  give a deed.  I gave you a copy of the deed, you know, and

12  that's all they requested was a copy of the deed.  They didn't

13  request the original.

14          You tried to try their case for them and tell them

15  what -- you know, I want the original deed.  They never

16  requested the original deed.  You -- and you brought up

17  different points in their case that Mr. Hartman never even

18  brought up at the hearings.

19          THE COURT:  I am entitled as the judge to ask

20  questions.  I am entitled to call witnesses --

21          MR. THOMAS:  You're entitled to ask questions, but

22  you're not entitled to try their case for them and put in facts

23  that he doesn't put in.

24          THE COURT:  I --

25          MR. THOMAS:  And that's why I think you're biased.

-117-

1  And you know that I have a disability, and you have handcuffed
2  me time and time again knowing that I am dyslexic and that I
3  have had a disability.  And Mr. Hartman has on many occasions
4  criticized me and taken advantage of my disability, and so has
5  this Court.

6          And the only reason that I am here today, Your Honor,
7  is because I -- my other attorneys -- and your profession, Your
8  Honor, is supposed to be held to the highest standard of law
9  and all standards, and it is not.  This system has failed
10 miserably, because I shouldn't be here today.  I never owed
11 Tracini one dime, I never got a loan from Mr. Tracini and I was
12 forced into a settlement based on fraud from other attorneys.

13          THE COURT:  Why did you file bankruptcy?

14          MR. THOMAS:  I only had to file for bankruptcy
15 because Mr. Garner skipped the country and I got notified a
16 year later that I was liable for the judgment.  A year and a
17 half later they contacted me.

18          I never knew that settlement.  They told me that I
19 was not liable.  I got a declaration from Mr. Machado admitting
20 that his attorney lied -- his partner lied to me.  And I'm
21 waiting to get a declaration from Mr. Morrisey, who's been
22 already convicted.  He's already got a -- he's got a felony
23 against him that he pled to.  And --

24          THE COURT:  So --

25          MR. THOMAS:  And Mr. Machado --

-118-

1      THE COURT:  We are --

2      MR. THOMAS:  -- has been suspended.

3      THE COURT:  We are done here today.  Mr. Hartman is

4  going to take appropriate steps to subpoena your parents for a

5  deposition or a 2004 exam and to produce the papers.

6      MR. THOMAS:  I understand, Your Honor, but I don't

7  think they even have that right, and I think you should rule on

8  the law.  You know, I'm not afraid of them subpoenaing my

9  parents or the deed or anything.

10      THE COURT:  Nor am I.

11      MR. THOMAS:  It's just another waste of time and

12  money for this Court and inconvenience to my parents when this

13  case should be over right now.  It should be over based on this

14  -- based on the issues that were presented before us and based

15  on what his reply brief was, you know, and --

16      THE COURT:  Okay.  We're done.  We're done.

17      MR. THOMAS:  Okay.

18      THE COURT:  I'm sorry you had a tough trip over here.

19  Mr. Hartman will go forward, and we'll see you after he's had a

20  chance to depose your parents and take a look at the deed that

21  they have.

22      MR. THOMAS:  That's fine, Your Honor.

23      THE COURT:  We'll be in recess.  Thank you.

24      MR. THOMAS:  So when --

25      THE COURT:  I don't know how long it will take.  It

-119-

1  depends on how cooperative your parents can be.  I understand

2  they're elderly, they may have some issues that make it more

3  difficult for them to attend depositions or to attend a lengthy

4  deposition.  I can't tell you how long it will take, but it

5  usually -- I don't know.  Mr. Hartman will set another hearing

6  after he has completed that discovery.

7           MR. THOMAS:  Well, Your Honor, you didn't address the

8  issues of laches, which I have already asked you to address

9  which doesn't give them the right.  And I said under 11.2 and I

10  gave you that --

11           THE COURT:  I will hear --

12           MR. THOMAS:  -- file --

13           THE COURT:  I will hear the --

14           MR. THOMAS:  You didn't address that issue --

15           THE COURT:  I know, because --

16           MR. THOMAS:  -- whether they have the right to do it

17  nor not.

18           THE COURT:  Because you did not produce the deed --

19           MR. THOMAS:  I did.

20           THE COURT:  -- as I directed you to.

21           MR. THOMAS:  No, Your Honor.  There is your bias

22  again.

23           THE COURT:  We are in recess.

24           MR. HARTMAN:  Your Honor, if I may make one comment

25  for --

1        THE COURT:  Yes, please.

2        MR. HARTMAN:  -- the record.  We wouldn't be here if

3  that deed had been recorded when it was transferred --

4        THE COURT:  True, that's true.

5        MR. HARTMAN:  -- to the parents.

6        MR. THOMAS:  Your Honor, they knew about the deed.

7  They knew about it three and a half years ago.  They --

8        MR. HARTMAN:  If it had been recorded.

9        MR. THOMAS:  It doesn't matter.  You knew it wasn't

10  recorded three and a half years ago.

11        THE COURT:  Actually, it does make a difference, sir,

12  because under California law if you don't record a deed it's

13  void.

14        MR. THOMAS:  I don't think so, Your Honor.  Look

15  under the case, under the Whitney case right here, it doesn't

16  say that.

17        THE COURT:  We are done.  We are done here.  I am

18  sorry you had a bad day driving back from San Francisco.  We

19  are done.

20        MR. THOMAS:  You know --

21        THE COURT:  We are in recess.  Please stop talking.

22        MR. THOMAS:  Your Honor, I have had a bad day and

23  I've had a bad time in this Court because of the bias.

24        THE CLERK:  All rise.

25        (Proceedings concluded at 4:09 p.m.)

-|2|-

35

1    **C E R T I F I C A T I O N**

2

3         I, Lisa Luciano, court-approved transcriber, hereby

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter, and to the best of my ability.

7

8

9    _____

10   LISA LUCIANO, AAERT NO. 327      DATE:   December 11, 2018

11   ACCESS TRANSCRIPTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

-122-



# EXHIBIT 9

Excerpts from Transcript of Hearing

12-17-2018

# EXHIBIT 9

-123-

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

|  |  |  |
|---|---|---|
| IN RE:<br><br>ANTHONY THOMAS and<br>WENDI THOMAS,<br><br>    Debtors. | .<br>.<br>.<br>.<br>.<br>.<br>.<br>.<br>.<br>. . . . . . . . . . . . | Case No.   14-50333-btb<br><br>Chapter 7<br><br>300 Booth Street<br>Reno, NV  89509<br><br>Monday, December 17, 2018<br>12:24 p.m. |

TRANSCRIPT OF MOTION TO CONTINUE/RESCHEDULE HEARING
BEFORE THE HONORABLE BRUCE T. BEESLEY
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:    ANTHONY THOMAS, Pro Se
          7725 Peavine Peak Court
          Reno, NV 89523

TELEPHONIC APPEARANCES:

For the Chapter 7   Hartman & Hartman
Trustee:       By: JEFFREY L. HARTMAN, ESQ.
          510 West Plumb Lane, Suite B
          Reno, NV 89509
          (775) 324-2800

Audio Operator:    Illuminada Starzyk, ECR

Transcription Company: Access Transcripts, LLC
          10110 Youngwood Lane
          Fishers, IN 46038
          (855) 873-2223
          www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

-124-

1    (Proceedings commence at 12:24 p.m.)

2         THE COURT:  Good morning.  Please be seated.  This is

3  the case of Anthony Thomas and Wendi Thomas, case number --

4  it's two cases, actually.  It's case number 5033 -- I'm sorry,

5  14-50333 and 14-50331.  Appearances, please, on the phone

6  first.

7         MR. HARTMAN:  Good morning, Your Honor, or afternoon.

8  This is Jeff Hartman, counsel for the trustee.

9         THE COURT:  And appearances in court, please.

10         MR. THOMAS:  Yes.  This is Anthony Thomas.

11         THE COURT:  Could you please come to the podium,

12  Mr. Thomas.

13         MR. THOMAS:  Yes.

14         THE COURT:  We'll get a better recording.

15         MR. THOMAS:  Thank you, Your Honor.

16         THE COURT:  So you -- basically, what's happening is

17  you want some additional time to try and get a better price or

18  get the emerald sold.  Is that correct?

19         MR. THOMAS:  No.  I --

20         THE COURT:  That's not correct?

21         MR. THOMAS:  I want to oppose the motion on several

22  reasons because --

23         THE COURT:  Well, wait, just wait.

24         MR. THOMAS:  But I want more time to oppose the

25  motion so that I --

3

1       THE COURT:  Okay.  You want more time to oppose the

2   motion?

3       MR. THOMAS:  Yes.

4       THE COURT:  So could you describe for me briefly what

5   the reasons for opposing the motion are?

6       MR. THOMAS:  Yes.

7       THE COURT:  Just generally.  Go ahead.

8       MR. THOMAS:  Yes.  I wanted to oppose the motion

9   under -- I believe it's 6001, that the creditors or myself were

10  not notified 21 days ahead of time, as I put in my documents,

11  of the sale of the emerald, and the only person that was

12  notified, according to the documents that Mr. Hartman sent out,

13  was Ken Tersini and Mr. Silver.

14      THE COURT:  Okay.  What else?

15      MR. THOMAS:  And --

16      THE COURT:  We're not -- you're just telling me what

17  these are.  What other reasons are there?

18      MR. THOMAS:  The other reasons are is that Jennifer

19  Jordine (phonetic) is an employee of Mr. Tersini, and she's not

20  a bona fide purchaser.

21      THE COURT:  And how do you say that?  Well, how do

22  you know that?

23      MR. THOMAS:  Because she's buying the emerald through

24  Mr. Tersini.

25      THE COURT:  How does that make her not a bona fide

-126-

4

1  purchaser?

2          MR. THOMAS:  Well, according to the documents that

3  Mr. Hartman -- said she was not a bona fide purchaser.  She

4  wasn't a party and had any knowledge of the emerald.  What she

5  did, Mister -- they bought the emerald through Mr. Tersini.

6          THE COURT:  Okay.  What else?

7          MR. THOMAS:  Okay.  Also, the declaration of

8  Mr. Stremmel, I -- through the evidence -- I'd like to do more

9  evidence to make my discovery to prove that a lot of the

10 statements that he made in his declaration aren't true, like he

11 traveled all over the place and all these people he notified,

12 because I contacted a bunch -- you know, a couple of the people

13 on the list, and they didn't seem to be notified by

14 Mr. Stremmel.  And so I would like him to produce documents --

15         THE COURT:  No, just -- so just hang on.  This

16 emerald is going to be sold, and this emerald is going to be

17 sold in this court.  I -- just listen -- I have no problem with

18 you trying to get people who are interested in purchasing this

19 to purchase it.  I think that's a great idea for you.

20         MR. THOMAS:  Yes.

21         THE COURT:  I think that -- I would hope it would

22 bring in more money for it.  But there will be a sale of this

23 emerald in this courtroom sometime in the future.  So if you

24 object to Mr. Stremmel for whatever reason, you might want to

25 try and have some sort of alternate person because I'm not

-127-

5

1  going to -- this emerald is going to be sold here.

2            MR. THOMAS:   Okay.   Your Honor, I gave Mr. Hartman a

3  contract with Overstock.com almost two years ago, and

4  Overstock.com wasn't going to charge us any fees, as they

5  stated in their documents.   They said that they were going to

6  charge fees because the -- because my trust didn't have any

7  money to pay those fees, that they were not the best person.

8  But I negotiated the deal with the Overstock.com and the CEO,

9  and it was board-approved, and they were not going to charge us

10 any fees to market it and to sell the emerald.   So -- and they

11 do over a billion dollars in sales, and they have worldwide

12 potential.   This is something that they wanted to do.   It was

13 something that they wanted to execute on.   I didn't want to

14 execute at the time because I didn't want the publicity all

15 over the world about me and the emerald.   And that's why I

16 didn't go forward and wanted to do it through a private sale.

17 But they were -- they gave us a contract, and in that contract,

18 you see -- that I provided today -- there were no fees.

19            THE COURT:   Did you give a copy of that to

20 Mr. Hartman?

21            MR. THOMAS:   Mr. Hartman had a copy.   I gave it to

22 him two years ago, and I sent him all the emails which are

23 attached that stated that they were not going to charge fees

24 and that we had board approval and that the --

25            THE COURT:   Okay.   But we're talking about now.   We

-128-

6

1   are going to sell this emerald here within a relatively short

2   period of time.  What do you want to do that will facilitate

3   that?

4             MR. THOMAS:  Your Honor, first, I would like to state

5   one thing.

6             THE COURT:  Go ahead.

7             MR. THOMAS:  I'm trying to go into -- and I've

8   mentioned this on the record many times.  I'm almost there.

9   I'm still waiting to get a declaration from Mr. Morrissey,

10  which I was told I was going to get a couple weeks still to

11  have the motion -- the judgment in San Jose turned over because

12  it was procured by fraud.  And I've found out a lot of things,

13  Your Honor, in between the last few months that has been going

14  on, that Mr. Tersini's been -- was colluding with Mr. Gardner.

15  And I think that you'd be shocked to hear this evidence, but

16  the email that you sent -- that you said that I sent to

17  Mr. Gardner, which I told you was not my account, the Norfield

18  account, and it's what the Supreme Court and the Ninth Circuit

19  Court are balancing their rulings on was -- I told you, Your

20  Honor, that was not an email that was sent from me.  It was

21  sent from Mr. Gardner, and it was -- Mr. Gardner set up a

22  Norfield company in Hong Kong.  And so those documents that you

23  used to get a -- to rule on your judgment against me was

24  documents, as I said, it was not my email.

25            THE COURT:  Did you appeal?

-129-

1    MR. THOMAS:  I did appeal.  We appealed it all the
2  way to the Supreme Court.  I mean, we're there now.  I've got
3  30 days, you know, to finish my ruling there.  And so I don't
4  know if I'm going to go that route because it's expensive.
5  It's about $100,000 --
6    THE COURT:  Yes.
7    MR. THOMAS:  -- to do that, and it's -- and I think
8  that I have a better chance of getting it turned over in San
9  Jose because Mr. Tersini and Mr. Gardner colluded in San Jose
10  and told me that I was not part of the settlement, I didn't
11  need to be a participant.  I was out in the hallway when they
12  settled the case.  And they were the ones that snuck the fraud
13  in the judgment.  I didn't know anything about it.  And so --
14    THE COURT:  Okay.  So just stop.  What --
15    MR. THOMAS:  I just wanted you to be clear so that
16  you know all the different things that these -- Mr. Gardner is
17  the one who sent me to Mr. Tersini's office in August and told
18  me that -- to get the temporary note that said -- for the
19  formation of the LLC.  That document disappeared out of the
20  office of Electronic Plastics, and Mr. Tersini admitted there
21  was a document and he never turned it in.  So I believe that
22  they've been colluding all along to get this emerald from me,
23  so --
24    THE COURT:  Well, this emerald is in the possession
25  of the trustee.

-130-

8

1      MR. THOMAS:  Right.  But if the --

2      THE COURT:  The trustee is going to sell this

3 emerald.

4      MR. THOMAS:  But if the court in San Jose turns it

5 over, I want you to give me a stay, Your Honor, because if that

6 judgment gets turned over, then I'm not in bankruptcy.  The

7 only reason I'm in bankruptcy is they forced me into bankruptcy

8 procured by fraud on the court.

9      THE COURT:  Who is your judge in San Jose?

10      MR. THOMAS:  Judge Nichols was the judge in San Jose,

11 and I've said this several times, Your Honor.  Judge Nichols

12 said that all parties are agreeing to no wrongdoing.

13      THE COURT:  I hear thousands of cases.  I don't

14 remember every word of every case.

15      MR. THOMAS:  Okay.  Judge Nichols said that all

16 parties are agreeing to no wrongdoing on the record, okay.

17      THE COURT:  So when is Judge Nichols supposed to

18 rule?

19      MR. THOMAS:  Judge Nichols is retired, so I have to

20 file it with the new judge, and I'm waiting for the declaration

21 from Michael Morrissey, who was told by the state bar that he

22 was not allowed to try the case.  And if you remember on the

23 record, the email that he sent on --

24      THE COURT:  He's the disbarred lawyer?

25      MR. THOMAS:  Yes.  He's the one who sent the letter

-- |3| --



1    to -- the email to the bar on the 3rd, saying that he was
2    supposed bo be in front of the state bar on that day.  He had
3    just got off the suspension, which he never told me about, and
4    that he would like more time to try the case.  The state bar
5    did a ruling on the 3rd, and on the 4th, they sent him back
6    notification saying, no, you are not going to be able to try
7    this case.  And at that time, he had a duty and all the other
8    attorneys had a duty to tell the judge that he was not allowed
9    to try the case or go forward.  So he abandoned me, and then
10   the next day, they put it on the record, and they told me that
11   I was not -- didn't have any liability for the judgment.  They
12   told me that Michael Gardner was taking 100 percent of the
13   responsibility.
14          They negotiated this, and if you read the record, in
15   Judge Nichols's chambers, Michael Gardner and Mr. Tersini.  I
16   was not there, and I was not present.  And under 664 --
17          THE COURT:  Just stop.  Just stop.
18          MR. THOMAS:  -- I need to be a participant, yes.
19          THE COURT:  Just stop.  We are going to be selling
20   the emerald in this courtroom.  What is it you want to have
21   happen here?
22          MR. THOMAS:  I want time to get subpoenas.
23          THE COURT:  How much time do you want?
24          MR. THOMAS:  Okay.  I have contacted --
25          THE COURT:  How much time do you want?

-132-

1     MR. THOMAS:  I need at least 90 days.

2     THE COURT:  Mr. Hartman.

3     MR. HARTMAN:  Thank you, Your Honor.  I'd like to get

4 back to the focus of what the trustee's here on.

5     THE COURT:  You can have a seat, please.

6     MR. HARTMAN:  And to begin with, Mr. Thomas is

7 attempting to impart -- litigate his issue in letters, and I

8 don't know if you've had a chance to read what he filed today.

9     THE COURT:  I just was handed it a few minutes ago.

10 I have not reviewed it.

11    MR. HARTMAN:  Well, I haven't either, but I can tell

12 you that his approach in the paper is that I refused somehow to

13 consent to or concede to the facts that he put in a letter to

14 me, I don't know, two or three weeks ago.  And I'm not required

15 to respond yes or no to facts that he raises in a letter.

16    THE COURT:  So stop --

17    MR. HARTMAN:  We have --

18    THE COURT:  -- stop right there.

19    Mr. Thomas, you did the same thing with me.  I'm not

20 filling out a report card for you.  Mr. -- opposing counsel

21 does not need to fill out a yes/no answer form for you.  They

22 don't have to do that.  He's not going to do it.  Have a seat.

23    MR. THOMAS:  Your Honor, I thought --

24    THE COURT:  You have a seat.

25    MR. HARTMAN:  If I might continue, Your Honor.

-133-

1        THE COURT:  You may.

2        MR. HARTMAN:  So Mr. Thomas indicated a few moments

3   ago that he believes that notice of hearing on the sale motion

4   was inadequate, and I can tell you that the motion to approve

5   the sale was filed on November 29th as docket entry 430.

6        THE COURT:  Hold on for one second.

7        Could you pull that up for me?

8        THE CLERK:  Yes, sir.

9        THE COURT:  Just give me a moment.

10       MR. HARTMAN:  Sure.

11       THE COURT:  Okay.  So, Mr. Thomas, could you please

12  come forward again?

13       MR. HARTMAN:  If I may finish, Judge --

14       THE COURT:  Well, okay.  Mr. Thomas, just sit down.

15       Go ahead, Mr. Hartman.  I'm sorry.

16       MR. HARTMAN:  So the notice period for a sale hearing

17  is 28 days.

18       THE COURT:  Right.

19       MR. HARTMAN:  And so it was scheduled for January

20  8th, which was substantially more than 28 days.  I filed the

21  certificate of service on December 3rd as docket entry 435, and

22  it clearly shows that notice of the hearing was provided to the

23  entire creditor matrix and Mr. Thomas by email, as he has

24  previously requested.  So there's no basis for him contending

25  that I'd only sent the notice to Mr. Tersini's attorney.

-134-

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

1    If I may continue --

2    THE COURT:  You may.

3    MR. HARTMAN:  So in the normal manner of practice,

4  Mr. Thomas would have had until 14 days before January 8th

5  within which to object to the motion and set forth any basis

6  for doing that.  And as is previewed by his statement, his

7  contention is that he had arranged with Overstock.com to market

8  the emerald without any fees.  Well, the trustee and I have

9  been in communication with Overstock.com, and I have three

10  drafts of Overstock.com proposed sale agreements, each of which

11  requires a -- basically, a marketing expense guarantee set at

12  $250,000, and I'm prepared to file those with the Court at the

13  appropriate time.  But the trustee, in an administratively

14  insolvent estate, was not in a position to enter into a

15  contract in which he essentially guaranteed $250,000 in

16  marketing expenses.  So that's what the trustee has done with

17  respect to that issue.

18    The point, I guess, finally, is Mr. Thomas's

19  contention that the proposed purchaser has some relationship

20  with Mr. Tersini, I don't believe that that fact, in and of

21  itself, disqualifies that person as a purchaser.  In any case,

22  I have no objection on behalf of the trustee to extending the

23  hearing date a week or two, but I'm afraid we're at risk of

24  losing the only buyer that we've had come out of the woodwork

25  in this whole period of time and we are back to square one,

1  based upon whatever Mr. Thomas thinks the emerald is worth as

2  opposed to what the marketplace apparently is determining what

3  it is worth.

4           THE COURT:  And let me ask you a question, kind of a

5  broad question.  Who has been -- who has this been marketed to?

6           MR. HARTMAN:  Well --

7           THE COURT:  It's a terrible sentence, I'm sorry.

8  What marketing was done concerning the sale of the emerald?

9           MR. HARTMAN:  Well, the marketing effort is set forth

10  in Hudson Stremmel's declaration, which was filed at the same

11  time as the motion, and they've done quite a bit of online

12  marketing.  They've been in contact with all of the gem dealers

13  that they could identify in the United States.  The --

14  Mr. Stremmel's declaration is quite extensive as to the efforts

15  they've undertaken to market the property.  And, of course, I

16  would be prepared to bring him to court to testify as to those

17  efforts.

18           THE COURT:  Okay.  All right.  Thank you very much.

19           So, Mr. Thomas, could you please come forward again.

20  Who, other than -- is it Overstock.com?  Who, other than

21  Overstock.com, have you notified that there's going to be this

22  sale?

23           MR. THOMAS:  That I know?

24           THE COURT:  Yeah.

25           MR. THOMAS:  I didn't know that there was going to be

1  this sale.  They didn't notify me.  Mr. Hartman --

2          THE COURT:  I doubt that very much.

3          MR. THOMAS:  Mr. Hartman didn't notify me or any of

4  the other creditors.

5          THE COURT:  Stop.

6          MR. THOMAS:  And --

7          THE COURT:  Stop.

8          MR. THOMAS:  -- under 6 --

9          THE COURT:  Stop.

10          Mr. Hartman, was Mr. Thomas notified that there's

11  going to be a sale?

12          MR. HARTMAN:  There was the -- as set forth in the

13  certificate of service, docket entry 435, he and everyone else

14  who's listed on the matrix was noticed of the hearing to

15  confirm the auction.

16          THE COURT:  Stop.  Mr. Hartman says he did this.

17  It's in the record.  I'm assuming that that's correct.

18          MR. THOMAS:  It's -- Your Honor --

19          THE COURT:  Listen now.  Listen to me.

20          MR. THOMAS:  Your Honor, it's not correct.

21          THE COURT:  Listen to me.

22          MR. THOMAS:  He didn't notify us 21 days ahead under

23  6004.  He's to notify us prior to the sale.  He only notified

24  us after the sale was completed, not before.  He's supposed to

25  -- that's a misrepresentation that Mr. Hartman is making right

-137-

15

1  now.

2          THE COURT:  The sale hasn't been completed.

3          MR. THOMAS:  Yes, but the sale went through.  They

4  notified us that Ms. -- excuse me one second -- Jennifer

5  Jordine purchased it, but they didn't notify anybody that the

6  sale was going on 21 days ahead of time like they're supposed

7  to.   They committed a fraud on the court, Your Honor.

8          THE COURT:  Mr. Hartman --

9          MR. HARTMAN:  May I clarify, Your Honor?

10          THE COURT:  You may.

11          MR. HARTMAN:  I can't remember when -- it's clearly

12  in the docket -- when the trustee filed her application to

13  employ Mr. Stremmel as the auctioneer.

14          THE COURT:  So --

15          MR. HARTMAN:  The --

16          THE COURT:  -- is the purchase by Ms. Jordine final

17  or is it subject to overbid?

18          MR. HARTMAN:  No.  No.  It's subject to overbid, and

19  that -- the motion basically is filed to approve the sale, but

20  like in any other bankruptcy court sale, if somebody shows up

21  at the hearing and offers more and they have cash on the barrel

22  head, anybody can buy it.  But you can't -- the problem is

23  Mr. Thomas doesn't understand you can't do this in a different

24  order because you're not going to know the sale price until the

25  auction's been conducted.  So the procedure I employed was to

-138-

1   ask for approval to conduct the auction, but then come back to

2   court to confirm the sale itself.

3           THE COURT:  I mean, it's a --

4           MR. HARTMAN:  The sale has not been --

5           THE COURT:  -- it's a stalking horse bid.

6           MR. HARTMAN:  The sale has not been confirmed.

7           THE COURT:  Do you hear that, Mr. Thomas?

8           MR. HARTMAN:  Anybody can show up and buy it.

9           MR. THOMAS:  Your Honor --

10          THE COURT:  Listen to me --

11          MR. THOMAS:  Your Honor, they didn't follow the

12  proper procedure to --

13          THE COURT:  So --

14          MR. THOMAS:  They were supposed to notice under Rule

15  6004 --

16          THE COURT:  Mr. Thomas, listen to me.  We're going to

17  have an auction to sell this property.  I will extend it for

18  two weeks, as Mr. Hartman said he would do.  You can have

19  anybody you want here who wants to try and buy this.

20          MR. THOMAS:  Your Honor, you are taking away my

21  constitutional rights, and I think there's a huge fraud that's

22  been committed on this court, and I think it should be reported

23  to the FBI.  I believe --

24          THE COURT:  Well, if you will stop at the Office of

25  the U.S. Trustee's downstairs, they will give you the address

-139-

1  of the FBI.  You are free to report whatever you think is
2  appropriate, but we are having an auction.  I will continue the
3  auction date for two weeks from the date it's set for.  Don't
4  say anything.  If you have people who are interested in
5  purchasing this emerald, you should have them here on that
6  date.
7          MR. THOMAS:  Your Honor, I would request that you
8  give a stay until you let me file my motion in San Jose.
9          THE COURT:  Denied.
10          MR. THOMAS:  You're going to deny my constitutional
11  rights?
12          THE COURT:  I'm telling you I'm not letting you file
13  anything further.  There is an auction set.  It's going to be
14  continued two weeks.  If you have someone you think is
15  interested in purchasing this emerald, you should have them be
16  here with appropriate funds.
17          MR. THOMAS:  Your Honor, I have a constitutional
18  right to file documents.  You cannot tell me that I cannot file
19  documents in this court, and you have before.  I have a
20  constitutional right to file documents, and you haven't even
21  read my brief that I -- you didn't even read what I filed
22  today.  And --
23          THE COURT:  No, I didn't.  I got handed to it about
24  ten minutes ago.  I have not read it.
25          MR. THOMAS:  And there has been numerous frauds

-140-

18

1    committed on your court under your supervision.

2                THE COURT:  Then, you should report this to everyone

3    you think is possibly going to listen to you.

4                MR. THOMAS:  I think I will, Your Honor.  I think

5    it's your duty to report it because they committed the frauds

6    on your court.  Mr. Tersini --

7                THE COURT:  I'm unaware of any frauds that have been

8    committed.

9                MR. THOMAS:  Mr. Tersini claimed that he loaned me

10   money.  He never loaned me a dime, Your Honor.  That was a

11   complete fraud on this court, and there was no evidence of a

12   loan to me.  So that was a fraud.  Mr. Tersini and Mr. Gardner

13   have been committing fraud on the courts in San Jose, and it's

14   perpetrated through this court and now through the trustee and

15   through Mr. Hartman because Mr. Hartman's representations are

16   false.  Mr. Stremmel, I would like to do a hearing for

17   Mr. Stremmel because I believe that everything Mr. Stremmel

18   said in that -- those documents are false, and I think I can

19   have evidence if you let me do -- if you let me --

20               THE COURT:  This will be extended two weeks.  If you

21   want to do a 2004 exam of Mr. Stremmel --

22               MR. THOMAS:  I do.

23               THE COURT:  -- go ahead.

24               MR. THOMAS:  I do.

25               THE COURT:  You can set it up.

-141-

1    MR. THOMAS:  I do, because I have evidence that

2 Mr. Stremmel's declaration was false, and Mr. Hartman knows

3 it's false because there's no way --

4    MR. HARTMAN:  Your Honor --

5    MR. THOMAS:  -- they've done what he said.

6    THE COURT:  Yes, Mr. Hartman?

7    MR. HARTMAN:  This is getting to the point where

8 Mr. Thomas is throwing around these allegations without

9 compliance with any of the rules of evidence or proper

10 procedure.

11    THE COURT:  I'm aware of that.

12    MR. HARTMAN:  He shows up.  He files things at

13 essentially the 11th hour, nobody has time to respond, wants to

14 be heard on a shortening time without any proper procedure,

15 filing an application to do so.  And he is entitled to file his

16 opposition to the motion 14 days before the hearing, and he can

17 set forth his position there.  And if he wants to cross-examine

18 Mr. Stremmel at the hearing as Mr. Stremmel is called to

19 testify, he can do so, but his antics compound extraordinarily

20 all of the cost associated with administering this case.  He's

21 been telling you for quite a long time that he's going to get

22 things appealed and overturned in Santa Clara, and he hasn't

23 shown you anything that would demonstrate he's moving in that

24 direction.  He just expects everybody to take his word for

25 whatever he's saying, and he should be put to the proof.

-142-

1          THE COURT:  I have not -- all I'm saying is I will
2     continue this for two weeks.  If Mr. Thomas would like to
3     depose Mr. Stremmel, he needs to go through the proper
4     paperwork to do that and schedule it and get a reporter.  He
5     can do that.  If he wants to show us what has occurred that is
6     going to stay this because of something that's happening in
7     another court, I'll be happy to look at that, but we are going
8     forward with his auction.  If he has people who he thinks are
9     willing to purchase this or overbid this, he should bring them.
10    So that's where we are.
11          MR. THOMAS:  Your --
12          THE COURT:  You may have a seat, sir.
13          MR. THOMAS:  Your Honor --
14          THE COURT:  You may have a seat, sir.
15          MR. THOMAS:  You're going to take away my
16    constitutional rights to reply to his false statements?
17          THE COURT:  You may have a seat, sir.
18          MR. THOMAS:  Your Honor, I would respectfully ask --
19          THE COURT:  Have a seat.
20          MR. THOMAS:  -- for more time.
21          THE COURT:  Please call security.
22          You may have a seat until security gets here.  You
23    may walk out of the courtroom with them, and we'll see you at
24    the next hearing.
25          MR. THOMAS:  Your Honor --

-143-



1        THE CLERK:  Your Honor, we'll need to set that next

2   hearing.  Just a moment, please.

3        MR. THOMAS:  -- I respect -- I don't have -- I'm

4   dyslexic.  You're taking advantage of a person with a

5   disability, and I need more time, and I have evidence that I

6   would like to present.

7        THE COURT:  I'm aware that you suffer from dyslexia.

8        MR. THOMAS:  Yes, but --

9        THE COURT:  But there -- stop.  But often, dyslexics

10  can get wonderful information if they have somebody read the

11  document to them.  You are a married man.  I would assume your

12  wife can read to you.  You have acquaintances and others who

13  can read documents to you.  I am sorry that you have dyslexia.

14  I know it's a difficult disease.  But it doesn't mean you can't

15  have people assist you in reading the documents.

16       MR. THOMAS:  Your Honor, the reason I'm asking for

17  more time is because I -- it takes 45 days to get the subpoenas

18  from LinkedIn and from Gmail to prove my case, and I'm

19  respectfully asking --

20       THE COURT:  Then, you should have started earlier.

21       MR. THOMAS:  I didn't know because they didn't notify

22  me in time, Your Honor.  And the only time I got the

23  information from Jennifer Jordine that she works for

24  Mr. Tersini is when they -- when Mr. Hartman sent me the

25  documents.

ACCESS TRANSCRIPTS, LLC        1-855-USE-ACCESS (873-2223)

1          THE COURT:  Please sit down.

2          MR. THOMAS:  Your Honor, I need --

3          THE COURT:  Please sit down.

4          MR. THOMAS:  -- I need to make a clear record for my

5  appeal because I'm sure this isn't --

6          THE COURT:  Please --

7          MR. THOMAS:  -- going to go the way --

8          THE COURT:  -- sit down.

9          MR. THOMAS:  -- it's supposed to according to the

10  law.

11          THE COURT:  Please sit down.  When security gets

12  here, we will go off -- we will leave.

13          THE CLERK:  Would you like a continue date, Your

14  Honor?

15          THE COURT:  Yes.

16          THE CLERK:  Okay.  I know that Mr. Thomas has

17  difficulty getting here during the week, so --

18          THE COURT:  Right.

19          THE CLERK:  -- if we were to set this for a Friday,

20  we're actually looking at two-and-a-half weeks.  My first

21  available is Friday, February the 1st.

22          THE COURT:  Mr. Thomas, does -- I know you work

23  during the week.  Is February the 21st -- is that right, or the

24  1st?

25          THE CLERK:  The 1st, February the 1st.

- 145 -

1           THE COURT:  That should be -- that would be a Friday.

2  Does that work into your work schedule?

3           MR. THOMAS:  February 21st?

4           THE CLERK:  No, the 1st.

5           THE COURT:  The 1st.

6           THE CLERK:  February 1.

7           THE COURT:  February 1.

8           MR. THOMAS:  February 1, that's on a Friday.  Your

9  Honor, could I respectfully get another two weeks?

10          THE COURT:  Mr. Hartman?

11          MR. HARTMAN:  Well, Your Honor, I'm reluctant to

12  agree to that, but I will, but --

13          THE COURT:  Thank you.

14          MR. HARTMAN:  -- no further continuances.

15          THE COURT:  No further continuances after that, so

16  that would put you on what day?

17          THE CLERK:  Your Honor, will this take any more than

18  two hours?

19          THE COURT:  Almost certainly.  What do I have on that

20  day?

21          THE CLERK:  Okay.  The -- you're presiding at

22  naturalization.

23          THE COURT:  I'll get somebody else to do it.

24          THE CLERK:  So I -- okay.  So that would be that

25  two-week continuance, so it would put us at Friday, February

-146-

24

1  the 15th.

2          THE COURT:  Friday, February the 15th.

3          THE CLERK:  At 10 a.m.

4          THE COURT:  10 a.m.  Okay.  We are in recess.  You

5  may leave now.

6          Please escort Mr. Thomas out of the courtroom, out of

7  the building.  Thank you.

8          We'll be in --

9      (Proceedings concluded at 12:53 p.m.)

10                      *  *  *  *  *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

-147-



25

1       **C E R T I F I C A T I O N**

2

3           I, Alicia Jarrett, court-approved transcriber, hereby

4   certify that the foregoing is a correct transcript from the

5   official electronic sound recording of the proceedings in the

6   above-entitled matter.

7

8

9

10  _____

11  ALICIA JARRETT, AAERT NO. 428      DATE:   December 21, 2018

12  ACCESS TRANSCRIPTS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

-148-