**LAW OFFICE OF WAYNE A. SILVER**
Wayne A. Silver (108135)
643 Bair Island Road, Suite 403
Redwood City, CA 94063
Phone: (650) 282-5970
Fax:    (650) 282-5980
Email: ws@waynesilverlaw.com

*Defendant in pro se, and attorney for*
*Defendants STREMMEL AUCTIONS LLC,*
*STEVEN STREMMEL, HUDSON STREMMEL,*
*AMY N. TIRRE, KENMARK VENTURES, LLC,*
*KEN TERSINI, MARK TERSINI,*
*and JENNIFER JODOIN*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| ANTHONY G. THOMAS, individually and on behalf of the General Public acting as a Private Attorney General,<br><br>     Plaintiff,<br><br>v.<br><br>BRUCE T. BEESLEY, et al.,<br><br>     Defendants. | Case No.: CV-19-1480 JSW<br><br>**NOTICE OF JOINDER AND JOINDER IN JEFFREY HARTMAN'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**<br><br>Date:   May 24, 2019<br>Time:  9:00 a.m.<br>Court:  Courtroom 5<br><br>Complaint Filed: March 21, 2019<br>Trial Date: None Set |

     **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

     **PLEASE TAKE NOTICE** that Defendants' KENMARK VENTURES, LLC, KEN TERSINI, MARK TERSINI, JENNIFER JODOIN, STREMMEL AUCTIONS LLC, STEVEN STREMMEL, HUDSON STREMMEL, AMY N. TIRRE and WAYNE A. SILVER ("Joinder Defendants") hereby join the Motion of Defendant JEFFREY HARTMAN to Dismiss Plaintiff's Complaint ("Hartman Motion") (Docket No. 24).

     Defendants STREMMEL AUCTIONS LLC, STEVEN STREMMEL, HUDSON STREMMEL, and AMY N. TIRRE join in Part C, p.8:1 – p.10:14 of the Hartman Motion regarding

Notice of Joinder and Joinder In Jeffrey Hartman's  Motion to Dismiss    Case No.: CV-19-1480 JSW
Complaint

1    improper venue.

2         All Joinder Defendants join in Part 5, p.10:15 – p.11:9 of the Hartman Motion regarding the

3    California Civil Code §47(b) litigation privilege, and call the Court's attention to the recently

4    decided case of *Pang Yen Chen v. Sharmad Berenjian* from the Fourth Appellate District, Division

5    Three of the California Court of Appeal, a copy of which is appended hereto.

6         All Joinder Defendants also join in the arguments set forth in the Hartman Motion and

7    Memorandum of Points and Authorities in support with respect to the failure of the Complaint to

8    state coherent claims and causes of action against the Joinder Defendants, and the Joinder

9    Defendants hereby adopt and join the Hartman Motion, as well as all documents and evidence filed,

10   or that may be filed, in support thereof. Accordingly, for the reasons set forth in the Hartman Motion,

11   Joinder Defendants respectfully request that the Court dismiss the Complaint without leave to

12   amend.

13        Date: April 19, 2019

14                                                    */s/ Wayne A. Silver*_____
                                                      *Wayne A. Silver, defendant in pro se, and*
15                                                    *attorney for defendants STREMMEL*
                                                      *AUCTIONS LLC, STEVEN STREMMEL,*
16                                                    *HUDSON STREMMEL, AMY N. TIRRE,*
                                                      *KENMARK VENTURES, LLC, KEN TERSINI,*
17                                                    *MARK TERSINI, and JENNIFER JODOIN*

18

19

20

21

22

23

24

25

26

27

28

Notice of Joinder and Joinder In Jeffrey Hartman's   Motion to Dismiss   Case No.: CV-19-1480 JSW
Complaint

Filed 3/28/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PANG YEN CHEN, | |
| Plaintiff and Appellant, | G055496 |
| v. | (Super. Ct. No. 30-2016-00872443) |
| SHARMAD BERENJIAN, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, James Crandall, Judge.  Reversed and remanded.

Gary Hollingsworth for Plaintiff and Appellant.

Ostergar Law Group, Allen C. Ostergar III and Treg A. Julander for Defendant and Respondent.

\*          \*          \*

## INTRODUCTION

After obtaining money judgments against Shazad Berenjian, Pang Yen Chen sued him and his brother Sharmad Berenjian[1] for fraudulent transfer under the Uniform Voidable Transactions Act (UVTA), Civil Code section 3439 et seq., formerly known as the Uniform Fraudulent Transfer Act (see Stats. 2015, ch. 44, § 3).  Chen alleged Shazad and Sharmad had attempted to thwart Chen's attempts to execute on the judgments by colluding in a sham lawsuit, stipulating to a judgment, and allowing Sharmad to execute on the judgment.  The trial court sustained a demurrer with leave to amend, but Chen allowed dismissal to be entered against him and pursued this appeal.

The primary issue presented by this appeal is whether, on the face of Chen's complaint, the litigation privilege of Civil Code section 47, subdivision (b) (section 47(b)) barred the cause of action for fraudulent transfer under the UVTA.  Exercising de novo review (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415), we conclude the litigation privilege of section 47(b) does not bar the fraudulent transfer cause of action as alleged because the gravamen of that cause of action is the noncommunicative act of transferring assets by executing on a judgment.  We therefore reverse.

## ALLEGATIONS

We accept as true all of the material allegations of Chen's complaint and facts that reasonably can be inferred from those expressly pleaded.  (*King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1049, fn. 2; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

Chen alleged:

---

[1]  Shazad Berenjian is not a party to this appeal.  For clarity and concision we refer to Shazad Berenjian and Sharmad Berenjian by first names.

Shazad and Sharmad are brothers.  Shazad owns and operates a business called Digital Ear, Inc.  In September 2012, Chen paid Shazad $32,952.22 for goods which Shazad did not deliver.  Chen filed a lawsuit against Shazad and obtained a judgment against him for that amount.

In August 2014, Shazad became indebted to Chen for an additional $50,000 for goods that were never delivered.  In September 2015, Chen filed a second lawsuit against Shazad and obtained a judgment against him for $57,997.26.

In June 2015, after the judgment in the first lawsuit was entered and before the second lawsuit was filed, Shazad and Sharmad entered into an agreement by which Sharmad would file a lawsuit against Shazad and Shazad would allow a default judgment to be taken.  The agreement enabled Sharmad to obtain title to or a lien against all of Shazad's assets.  Sharmad and Shazad intended "to create a shield against claims of other creditors, including [Chen]."

Pursuant to this agreement, Sharmad filed a lawsuit against Shazad.  The allegations of Sharmad's complaint were false.  In October 2015, Sharmad and Shazad entered into a stipulated judgment against Shazad in the amount of $199,900.  There were no "genuine grounds" for that amount.

"The stipulated judgment was not followed by any effort to actually enforce the judgment or obtain assets from [Shazad] in satisfaction of the judgment.  Instead, [Shazad] continued to operate his business called Digital Ear, Inc., as he had done previously.  However, when an attempt was made to enforce the above mentioned claims and judgments by [Chen], or any other creditor, [Sharmad] would levy on the property subject to the claim, pursuant to the sham judgment mentioned above, solely in order to defeat the attempts by [Chen] to enforce his own judgments."

When Chen filed his second lawsuit against Shazad, Sharmad levied on two stereo speakers that were owned by Shazad through Digital Ear and which were being stored in a warehouse.  The speakers had been previously sold to Chen and were the basis

of his second lawsuit against Shazad. Sharmad levied on the speakers to defeat Chen's claims. Shazad has transferred other assets to Sharmad without reasonable consideration in order to conceal them from Chen.

PROCEDURAL HISTORY

Chen filed a complaint against Shazad, Sharmad, and others asserting two causes of action: (1) fraudulent transfer under the UVTA; and (2) common counts. The common counts are irrelevant to this appeal.

The trial court sustained Sharmad's demurrer to the first cause of action with leave to amend. The court concluded the fraudulent transfer cause of action was barred by the litigation privilege of section 47(b) and was uncertain because it alleged Shazad transferred assets other than the speakers but did not identify those assets.

Chen did not amend the complaint but allowed the first cause of action to be dismissed as to Sharmad. Chen filed a request for dismissal of the second cause of action. After Chen filed a notice of appeal, he obtained a signed order of dismissal of Sharmad.

DISCUSSION

I.

The Litigation Privilege Does Not Bar Chen's Cause of
Action for Fraudulent Transfer.

A. *The UVTA*

Claims for fraudulent transfer are governed by the UVTA. The purpose of the UVTA is to prevent debtors from placing, beyond the reach of creditors, property that should be made available to satisfy a debt. (*Lo v. Lee* (2018) 24 Cal.App.5th 1065, 1071.) A creditor may set aside a transfer as fraudulent under Civil Code section 3439.04 by showing actual fraud as defined in subdivision (a)(1) or by showing constructive fraud

4

as defined in subdivision (a)(2).[2]   (See *Lo v. Lee, supra,* 24 Cal.App.5th at p. 1071; *Optional Capital, Inc. v. DAS Corp.* (2014) 222 Cal.App.4th 1388, 1401-1402.)  As a remedy, the creditor may obtain avoidance of the transfer, an attachment or other provisional remedy, and, subject to applicable principles and rules, an injunction or a receiver.  (Civ. Code, § 3439.07, subd. (a).)

The UVTA applies on its face to all transfers.  (*Mejia v. Reed* (2003) 31 Cal.4th 657, 664.)  Civil Code section 3439.01, subdivision (m) broadly defines "transfer" to mean "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance."  (See *Sturm v. Moyer* (2019) 32 Cal.App.5th 299, 308 ["'transfer' under the UFTA has a broad meaning"].)  This definition is broad enough to include transfers of assets by means of executing on a judgment obtained by fraud or collusion.  (See *Miller v. Turner* (1932) 121 Cal.App. 365, 366 ["where a debtor has by fraud and collusion permitted a judgment to be obtained against him for the purpose of defrauding his creditors, the latter may obtain relief against it in equity"].)

B.  *The Litigation Privilege*

"The litigation privilege of [section 47(b)] 'applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no

---

[2] Civil Code section 3439.04, subdivision (a) states:  "A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:  [¶] (1) With actual intent to hinder, delay, or defraud any creditor of the debtor.  [¶] (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:  [¶] (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.  [¶] (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."

function of the court or its officers is involved.' [Citation.] '[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action.' [Citation.]  Section 47[(b)], is intended to 'afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, [and] to give finality to judgments.' [Citation.]  The privilege is broadly applied to promote effective judicial proceedings by encouraging full communication, and applies to civil actions based upon perjury." (*Optional Capital, Inc. v. DAS Corp., supra*, 222 Cal.App.4th at p. 1404.)

As Chen posits, if Shazad had simply transferred his assets and those of Digital Ear, Inc. to Sharmad, there would be little question the transfer could be voided as fraudulent.  But because the assets were transferred by means of execution of a stipulated judgment in a sham lawsuit, the litigation privilege potentially bars the fraudulent transfer claim.

In *Rusheen v. Cohen* (2006) 37 Cal.4th 1048 (*Rusheen*), the California Supreme Court, in reviewing a judgment arising from an order granting an anti-SLAPP motion, addressed the issue whether actions taken to collect a judgment, such as obtaining a writ of execution and levying on the judgment debtor's property, are protected by the litigation privilege of section 47(b).  (*Rusheen, supra*, at p. 1052.)  The case has a somewhat complicated fact pattern and procedural history.  Attorney Barry Cohen represented Niki Han and Marice Abikzer (clients) in litigation against Terry Rusheen.  (*Id.* at pp. 1052-1053.)  The clients had purchased a house from Rusheen's father; Rusheen, who lived in the house, refused to move out after escrow closed; Rusheen filed actions against the clients; Cohen obtained an order requiring Rusheen to

6

move out; and the trial court denied Rusheen's application for a restraining order, and granted motions to declare Rusheen a vexatious litigant.  (*Id.* at p. 1053.)

        Cohen, as the clients' attorney, filed a lawsuit against Rusheen for property damage and other torts.  Cohen filed a declaration of service signed by a process server who declared under penalty of perjury that he personally served Rusheen with the summons, complaint, and orders declaring Rusheen a vexatious litigant.  (*Rusheen, supra*, 37 Cal.4th at p. 1053.)  Cohen used the process server's declaration to obtain Rusheen's default.  (*Ibid.*)  Rusheen failed to post the cash bond ordered by the trial court as a precondition to filing any pleadings, and Cohen obtained a default judgment against him.  (*Id.* at pp. 1053-1054.)  The clients, through a Nevada attorney, filed a notice of foreign judgment in Nevada, where Rusheen had moved, applied for a writ of execution, and levied on the judgment.  (*Id.* at p. 1054.)

        Meanwhile, Rusheen moved to vacate the default judgment and the vexatious litigant orders on the ground of lack of service.  (*Rusheen, supra*, 37 Cal.4th at p. 1054.)  In opposition, Cohen submitted the process server's declaration that Rusheen had been personally served with summons, the complaint, and the vexatious litigant orders.  The trial court denied Rusheen's motion, but the Court of Appeal reversed on the ground there was insufficient evidence that Rusheen was a vexatious litigant and the trial court had no authority to order the posting of a bond.  (*Ibid.*)  The Court of Appeal reversed with directions to vacate the default judgment and the vexatious litigant orders. (*Ibid.*)

        On remand, Rusheen filed a cross-complaint against Cohen for abuse of process arising from his legal representation of the clients.  (*Rusheen, supra*, 37 Cal.4th at p. 1054.)  Rusheen alleged Cohen had made an illegal vexatious litigant motion, failed to properly serve the complaint, obtained an improper default without proper notice, permitted the clients to execute on the judgment in Nevada, and filed a false declaration on the issue of service.  (*Ibid.*)  Cohen responded with an anti-SLAPP motion asserting

there was no reasonable probability that Rusheen would prevail because Cohen's conduct was protected by the litigation privilege of section 47(b).  The trial court granted the motion and struck Rusheen's cross-complaint.  (*Ibid.*)  The Court of Appeal reversed however and concluded Cohen could be liable for abuse of process in enforcing a default judgment through the filing of allegedly false proofs of service.  (*Id.* at pp. 1054-1055.)

The Supreme Court addressed two issues:  "(1) whether action taken to collect a judgment, such as obtaining a writ of execution and levying on the judgment debtor's property, are protected by the litigation privilege as communications in the course of a judicial proceeding; and (2) whether a claim for abuse of process based on the filing of an allegedly false declaration of service is barred by the litigation privilege on the ground the claim is necessarily founded on a communicative act."  (*Rusheen, supra*, 37 Cal.4th at p. 1055, fn. omitted.)

The court explained the litigation privilege protects only acts that are communicative, and, therefore, the threshold issue in determining whether the litigation privilege applies is whether the defendant's alleged conduct is communicative or noncommunicative.  (*Rusheen, supra*, 37 Cal.4th at p. 1058.)  Pleadings and process, as well as filing false or perjurious testimony or declarations, are considered privileged.  (*Ibid.*)  If the challenged conduct was a noncommunicative physical act, a court must look to whether the gravamen of the abuse of process cause of action was communicative or noncommunicative conduct.  (*Id*. at p. 1061.)  "The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action. [Citations.] That is, the key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." (*Id.* at p. 1058.)

The gravamen of Rusheen's abuse of process cause of action was not the act of levying on the judgment, "but the procurement of the judgment based on the use of allegedly perjured declarations of service." (*Rusheen, supra*, 37 Cal.4th at p. 1062.)  The

noncommunicative conduct of levying on the judgment was necessarily related to the communicative act serving as the gravamen of the complaint and therefore was subject to the litigation privilege. "[B]ecause the execution of the judgment did not provide an independent basis for liability separate and apart from the filing of the false declarations of service, the gravamen of the action was the procurement of the judgment, not its enforcement. Thus, the enforcement of the judgment in reliance on the filing of privileged declarations of service was itself privileged." (*Id.* at p. 1065.)

The Supreme Court held: "[I]f the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct, which in this case included acts necessary to enforce the judgment and carry out the directive of the writ. [Citations.] Stated another way, unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies." (*Rusheen, supra*, 37 Cal.4th at p. 1065.)

C.  *The Gravamen of the Fraudulent Transfer Cause of Action Is Noncommunicative Conduct.*

As *Rusheen* instructs, we first determine whether the gravamen of Chen's fraudulent transfer cause of action is communicative or noncommunicative conduct. The term gravamen has been defined as "the 'material part of a grievance, charge, etc.'" (*Lindros v. Governing Bd. of the Torrance Unified School Dist.* (1973) 9 Cal.3d 524, 540, fn. 13; *Williamson v. Pacific Greyhound Lines* (1944) 67 Cal.App.2d 250, 252.) "The gravamen, or essential nature . . . of a cause of action is determined by the primary right alleged to have been violated, not by the remedy sought." (*McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1159.) For purposes of the litigation privilege, the gravamen is the act or acts allegedly producing the injury. (*Rusheen, supra*, 37 Cal.4th at p. 1058.)

In *Rusheen,* the California Supreme Court concluded the communicative conduct of procuring a judgment based on the use of allegedly fraudulent declarations of

9

service, and not the noncommunicative act of executing on the judgment, was the gravamen of the abuse of process cause of action. (*Rusheen, supra*, 37 Cal.4th at p. 1062.) But here, in contrast, Chen sued for fraudulent conveyance. Under the UVTA, it is the *transfer* made or the obligation incurred by the debtor which, when made with the requisite intent or without sufficient consideration, is wrongful and, therefore, voidable. (Civ. Code, § 3439.04, subd. (a).) Thus, the acts causing injury to Chen were the agreement to defraud him and the transfer of the speakers from Shazad to Sharmad by means of executing on the judgment. The acts of filing the sham complaint and agreeing to the stipulated judgment, though communicative in nature, were not the gravamen of Chen's fraudulent transfer cause of action. Chen's complaint alleged, "when an attempt was made to enforce the . . . claims and judgments by [Chen] . . . Sharmad would levy on the property subject to the claim." The levy was the allegedly voidable transfer producing the injury and was, therefore, the gravamen of the cause of action for fraudulent conveyance.

Levying on property is essentially a taking, a physical act that is not communicative. (*Drum v. Bleau, Fox & Associates* (2003) 107 Cal.App.4th 1009, 1026, disapproved on another ground in *Rusheen, supra*, 37 Cal.4th at p. 1065.) In *Rusheen,* the court assumed levying on property is a noncommunicative act but noted "the execution and levying process may also involve communications such as the delivery of the writ and statements or representations made to the levying officer or other party." (*Rusheen, supra*, 37 Cal.4th at p. 1061 and fn. 3.) Chen's complaint did not allege that levying on the property involved any communications that might make the fraudulent conveyance cause of action subject to the litigation privilege.

Sharmad argues that permitting a creditor, such as Chen, to "circumvent the litigation privilege" by alleging a sham lawsuit and conspiracy "would frustrate the purposes of the litigation privilege." We disagree. The litigation privilege's purposes are "to encourage open channels of communication and zealous advocacy, to promote

complete and truthful testimony," and "to promote effective judicial proceedings by encouraging full communication." (*Optional Capital, Inc. v. DAS Corp., supra*, 222 Cal.App.4th at p. 1404.) Thus, the privilege does not extend to noncommunicative conduct that is not of necessity related to communicative conduct. Levying on property as part of a scheme to defeat a creditor's rights in violation of the UVTA is not communicative conduct; therefore, extending the litigation privilege to such conduct advances none of the privilege's purposes.

The UVTA serves the valuable purpose of protecting creditors from schemes to place assets beyond their reach. (*Lo v. Lee, supra*, 24 Cal.App.5th at p. 1071.) Were we to extend the litigation privilege to the facts alleged by Chen, we would be providing a road map to circumventing the UVTA and defeating the rights of creditors.

## II.

### The Trial Court Erred by Sustaining the Demurrer for Uncertainty.

We also conclude the trial court erred by sustaining Sharmad's demurrer for uncertainty to the first cause of action. Demurrers for uncertainty under Code of Civil Procedure section 430.10, subdivision (e) are disfavored. (*Lickless v. Financial Industry Regulatory Authority* (2012) 208 Cal.App.4th 1125, 1135.) "A demurrer for uncertainty is strictly construed, even where a complaint is in some respects uncertain, because ambiguities can be clarified under modern discovery procedures." (*Khoury v. Maly's of California, Inc*. (1993) 14 Cal.App.4th 612, 616.) A demurrer for uncertainty should be overruled when the facts as to which the complaint is uncertain are presumptively within the defendant's knowledge. (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 976, p. 389.)

Sharmad argues the first cause of action was uncertain because it alleged the stereo speakers that were the object of Chen's levy were the property of Digital Ear,

Inc., which is not a party to this lawsuit.  Chen's complaint alleged that Sharmad "levied upon property *owned by Shazad* Berenjian under the title to his company named Digital Ear, Inc., namely two Focal Maestro Utopia Speakers."  (Italics added, some capitalization omitted.)  This allegation sufficiently alleges the stereo speakers belonged to Shazad.  Any ambiguity can be clarified through discovery, and the owner of the speakers is presumptively within Sharmad's knowledge.

**DISPOSITION**

The judgment is reversed and the matter is remanded.  Appellant shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

## CERTIFICATE OF SERVICE

I, Wayne A. Silver, the undersigned, hereby declare:

I am an attorney duly licensed to practice in the State of California and before this Court, with offices at 643 Bair Island Road, Suite 403 Redwood City, CA 94063. I am a defendant in the above-captioned civil action ("Action"), and the attorney for Defendants' STREMMEL AUCTIONS LLC, STEVEN STREMMEL, HUDSON STREMMEL, AMY N. TIRRE, KENMARK VENTURES, LLC, KEN TERSINI, MARK TERSINI, and JENNIFER JODOIN.

On April 19, 2019 I electronically filed the foregoing NOTICE OF JOINDER AND JOINDER IN JEFFREY HARTMAN'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6) with the U.S. District Court for the Northern District of California by using the CM/ECF system. All participants in the Action that are registered as CM/ECF users will be served by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 19, 2019 at Redwood City, California.

/s/ *Wayne A. Silver*
Wayne A. Silver