1  Anthony G. Thomas
   7725 Peavine Peak Court
2  Reno, NV 89523
   Tel:    (408) 640-2795
3  E-mail: atemerald2@gmail.com

4  Plaintiff In Propria Persona

5              **UNITED STATES DISTRICT COURT**

6       **NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION**

7  Anthony G. Thomas, individually, and on      ) **Case No. CV-19-1480-JSW**
   behalf of the General Public acting as       )
8  a Private Attorney General,                  )
                                                ) **MOTION TO DISQUALIFY WAYNE SILVER**
9          Plaintiff,                           ) **FOR MULTIPLE CONFLICTS OF INTEREST,**
                                                ) **VIOLATION OF WITNESS-ADVOCATE RULE**
10             v.                                )
                                                )
11 Bruce T. Beesley, Mrs. Beesley, Jeffrey L.   )
   Hartman, Mrs. Hartman, Jeri Coppa-           )
12 Knudson, Ken Tersini, Mrs. K. Tersini, Mark  )
   Tersini, Mrs. M. Tersini, Jennifer Jodoin, Mr.)
13 Jodoin, Wayne Silver, Mrs. Silver, Kenmark   )
   Ventures, LLC, Stremmel Auctions LLC,        )
14 Steven Stremmel, Mrs. S. Stremmel,           )
   Hudson Stremmel, Amy Tierre and              )
15 DOES 1-1000, inclusive.                      )
                                                )
16         Defendants.                          )
                                                )
17 _____)

18        Plaintiff Anthony G. Thomas individually and on behalf of the General Public,

19 acting as a Private Attorney General hereby files this motion to disqualify Attorney

20 Wayne Silver from representing any parties in this case other than representing himself

21 pro se due to, inter alia multiple non-waivable conflicts of interests, and violation of the

22 witness-advocate rule as well as for other violations of the California Rules of

23 Professional Conduct and the ABA Model Rules of Professional Responsibility.

24        Attorney Wayne Silver is not only representing himself pro se in these

25 proceedings, but is also representing the Defendants Attorney Amy Tirre in Reno, NV,

26 Hudson Stremmel, Steve Stremmel, Stremmel Auctions LLC, Ken Tersini, Mark Tersini,

27 Jennifer Jodoin, Kenmark Ventures, LLC and other named Defendants in this case.

28        The United States District Court for the Northern District of California  in <u>Felarca</u>

v. Birgeneau (2016) Case No. 11-cv-05719-YGR adopted the holding of the California

Court of Appeals in Kennedy v. Eldridge (2011) 201 Cal.App. 4th 1197 including the

holding regarding the advocate-witness rule prohibiting an attorney from acting both as

advocate and witness in the same case and other legal principles involved in the

disqualification of an attorney.

      Here, although the initial complaint filed by the Plaintiff does not contain all of the

allegations of illegal conduct as well as conduct consisting unfair & deceptive business

practices under Section 17200 of California's Business & Professions Code, due to the

initial complaint being filed on an emergency basis due to the imminent illegal sale of

the Thomas Emerald by the U.S. Bankruptcy Court in Reno in violation of the Notice

rules mandated by Section 363(b) of the Bankruptcy Code and Rules 6004 and Rule

2002(a)(2) of the Bankruptcy Rules requiring 21 days notice to be mailed by the clerk of

the Court prior to any proposed use sale or lease of Estate property.

      Plaintiff will be seeking leave to amend the Complaint to include allegations that

Wayne Silver:

1.    Committed Bankruptcy Fraud by falsely alleging in the adversary complaint filed by Wayne Silver that Kenmark Ventures LLC loaned money to Plaintiff Thomas and Electronic Plastics LLC despite the overwhelming evidence to the contrary. (Including wire transfers from Kenmark Ventures LLC to Electronic Plastics LLC noting investments or left blank, e-mails from Tersini referring to his investment, 10 drafts of the LLC Agreements[1] all referring to Kenmark's 12% equity position as well as contractual references in the LLC agreements to IRS and Treasury Department definitions of equity investment into the LLC).

2.    Illegally placing a lien on the Thomas emerald in a Replevin action in Sarasota Florida court[2] (intentionally designed to prevent plaintiff from responding by serving him at the wrong address), as well as recently placing an illegal lien on the Thomas parents Portola property after the Judge refused to take Judicial Notice of the law and facts regarding the illegal turnover motion of the Portola Property, and despite the fact that

---

[1]   All drafts of the LLC agreements had full participation by Tersini's attorneys. There was zero evidence that Thomas received any proceeds from Tersini or any Tersini affiliated company. (What evidence was there to determine a loan?)

[2]   The Replevin action claimed the Thomas Emerald was worth $500 million, then Judge Beesley determined that Thomas committed fraud even though Tersini put on zero evidence of any contrary value of the Thomas Emerald.

Wayne Silver was present at the 12-4-2014 Section 341 meeting of creditors, and was fully aware of the fact of the transfer of the Portola property by deed in 2008 to the Thomas parents and was fully aware of the California law that holds that a conveyance of real estate by deed does not need to be notarized or recorded in order to be valid under California law.

3.   Wayne Silver's role in interfering with the Overstock.com contract to sell the Thomas Emerald as evidenced by Attorney Hartman's billing statements, and Wayne Silver's collusion in the fraudulent auction process where Silver and Tersini were the only persons notified of the auction sale as "Emerald experts" in the declaration of Hudson Stremmel as submitted in support of the fraudulent Motion to Confirm sale of the Thomas Emerald, filed in the BK Court on 11-29-2018, some 14 days after the sale by auction to Tersini's private notary and defendant Jennifer Jodoin and executive in the Tersini group of companies.

## PLAINTIFF INTENDS TO CALL WAYNE SILVER AS A WITNESS REGARDING THE ABOVE FRAUDULENT AND ILLEGAL ACTIVITY

### 1.   INHERENT POWER OF COURT TO DISQUALIFY ATTORNEY

The California Supreme Court in 1999 discussed a trial court's inherent power of a Court to disqualify an attorney, before discussing the mandatory disqualification rule that arises in this case, where there are multiple non-waivable conflicts of interest here between Wayne Silver as a defendant involved inter alia with the illegal attempt to sell the Thomas Emerald, without complying with the mandatory notice rules of the Bankruptcy Code and Rules.  Plaintiff alleges, and has already cited evidence from U.S. Trustee Attorney Hartman's billing statements showing interference with Overstock.com's contract to sell the emerald that was ditched in favor of a local unknown auctioneer that the evidence shows was involved in fraud and collusion in the sale of the Emerald, as documented in the 83 page transcript of the proceedings of the hearing in Reno on Friday March 22nd 2019, held one day after the instant civil rights lawsuit was filed.

A recent decision from the U.S. District Court for the Northern District of California adopted the holdings from the California Courts regarding automatic disqualification for violation of the Attorney-Witness rule, as is the case here.

The Court in <u>Felarca v. Birgeneau</u> Case No. 11-cv-05719-YGR in an order dated

1 | 2-3-2016 stated:

2     "Local Rule 11-4 requires every member of the bar of this Court and any
attorney admitted to practice pro hac vice to be familiar and comply with
3     the standards of professional conduct required of members of the State
Bar of California. N.D. Civ. L.R. 11-4(a)(1). Rule 5-210, provides that a
4     member of the bar:

5         shall not act as an advocate before a jury which will hear
testimony from the member unless:
6

        (A)    The testimony relates to an uncontested matter; or
7
        (B)    The testimony relates to the nature and value of legal
8                 services rendered in the case; or

9         ( c)    The member has the informed, written consent of the
client.
10

    The comments to Rule 5-210 indicate that it is
11

12         "intended to apply to situations in which the member knows
or should know that he or she ought to be called as a
13         witness in litigation in which there is a jury."

14     This rule, referred to as the advocate-witness rule,

15         "has long been a tenet of ethics in the American legal
system, and traces its roots back to Roman Law."
16

        <u>Kennedy v. Eldridge</u>, 201 Cal. App. 4th 1197, 1208 (2011)
17         (internal citation omitted).

18     The American Bar Association Model Rules of Professional Conduct also
address the advocate-witness rule, requiring disqualification of an attorney
19     as an advocate at trial where the attorney is

20         "likely to be a necessary witness"

21     unless such disqualification

22         "would work a substantial hardship on the client."

23         Id. at 1209 (citing 2007 amendment of ABA Model Rule 3.7).

24     As explained by the California Court of Appeals in <u>People v. Donaldson</u>,
93 Cal.App.4th 916, 927-28 (2001), the advocate-witness rule is
25     necessary, in part, because:

26         "If a lawyer is both counsel and witness, he becomes more
easily impeachable for interest and thus may be a less
effective witness. Conversely, the opposing counsel may be
27         handicapped in challenging the credibility of the lawyer when
the lawyer also appears as an advocate in the case. An
28         advocate who becomes a witness is in the unseemly and

- 4 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ineffective position of arguing his own credibility. The roles of
an advocate and of a witness are inconsistent; the function
of an advocate is to advance or argue the cause of another,
while that of a witness is to state facts objectively."

Id. at 927-928 (internal citation omitted).

The Comments to ABA Model Rule 3.7 note that the rule is necessary
because

"[i]t may not be clear whether a statement by an
advocate-witness should be taken as proof or as an analysis
of the proof."

ABA Model Rule 3.7 [Comment 2].[1]

Further, and as noted by the court in Kennedy, supra, the interconnected
entanglements inherent in being both advocate and potential witness may
create an

"appearance of impropriety and undermine the integrity of
the judicial system."

Kennedy, 201 Cal.App.4th at 1211.

"The very fact of a lawyer taking on both roles will affect the
way in which a jury evaluates the lawyer's testimony, the
lawyer's advocacy, and the proceedings themselves."

Donaldson, 93 Cal.App.4th at 928.

The Ninth Circuit has held that the advocate-witness rule is

"a necessary corollary to the more fundamental tenet of our
adversarial system that juries are to ground their decisions
on the facts of a case and not on the integrity or credibility of
the advocates."

United States v. Prantil, 764 F.2d 548, 553 (9th Cir. 1985).

"[A]dherence to this time-honored rule is more than just an
ethical obligation of individual counsel; enforcement of the
rule is a matter of institutional concern implicating the basic
foundations of our system of justice."

Id.

**Thus, courts have applied CRC 5-210 and ABA Model Rule 3.7 to find
that an attorney who takes on the role of a percipient witness should
be disqualified. [Emphasis added]**

See Kennedy v. Eldridge, 201 Cal. App. 4th 1197, 1210 (2011)
(disqualifying counsel in custody proceeding before the court);

Donaldson, 93 Cal. App.4th at 928 (disqualifying prosecutor in criminal

- 5 -

1    case of child endangerment).[2]

2    Further,

3        "the court has an independent interest in ensuring trials are
         conducted within ethical standards of the profession and that
4        legal proceedings appear fair to all that observe them."

5        In re A.C., 80 Cal.App.4th 994, 1001 (2000).

6    Felarca v. Birgeneau (2016) Dist. Court, N.D. California (Order of 2-3-2016).

7    in California

8        "where the ethical breach is '"manifest and glaring"' and so
         `infects the litigation in which disqualification is sought that it
9        impacts the moving party's interest in a just and lawful
         determination of [his or] her claims' [citation], a nonclient
10       might meet the standing requirements to bring a motion to
         disqualify based upon a third party conflict of interest or
11       other ethical violation."

12       (Burman, supra, 186 Cal.App.4th at p. 1357, quoting Colyer
         v. Smith (C.D.Cal. 1999) 50 F.Supp.2d 966, 971-972.)
13
     Case law abounds with examples of orders disqualifying counsel that
14   have not been the product of motions by present or former clients.

15   (See, e.g., Meza v. H. Muehlstein & Co., Inc. (2009) 176 Cal.App.4th 969,
     980-981 (Meza)
16
         [law firm disqualified after hiring attorney who was privy to
17       adversary's privileged work product information];

18   People v. Peoples (1997) 51 Cal.App.4th 1592, 1599 (Peoples)

19       [defense attorney with direct familial connections to victim,
         witnesses and the defendant disqualified on court's own
20       motion];

21   Woods v. Superior Court (1983) 149 Cal.App.3d 931, 937

22       [in a divorce action, court properly granted wife's motion to
         disqualify counsel for husband who had formerly
23       represented the family business];

24   see also DCH Health Services Corp. v. Waite (2002) 95 Cal.App.4th 829,
     832
25
         ["Standing arises from a breach of the duty of confidentiality
26       owed to the complaining party, regardless of whether a
         lawyer-client relationship existed."].)
27   //

28   //

- 6 -

As one court put it,

> "Protection of the attorney-client privilege is not the only
> ground for a motion to disqualify an attorney."

(Meza, supra, 176 Cal.App.4th at p. 980.) "

Another Court noted:

> "[T]he court has an independent interest in ensuring trials
> are conducted within ethical standards of the profession and
> that legal proceedings appear fair to all that observe them."

(In re A.C. (2000) 80 Cal.App.4th 994, 1001.

Accordingly, we conclude that where an attorney's continued
representation threatens an opposing litigant with cognizable injury or
would undermine the integrity of the judicial process, the trial court may
grant a motion for disqualification, regardless of whether a motion is
brought by a present or former client of recused counsel.

Kennedy v. Eldridge (2011) 201 Cal.App.4th 1197, 1204-1205

The Court in Kennedy continued:

**"V. The Advocate-witness Rule**

Another reason for supporting affirmance of the order below is the conflict
posed by the almost inevitable prospect that Richard will act both as a
percipient witness and an advocate in a dispute over Calvin's care and
custody.

...The

> "advocate-witness rule," which prohibits an attorney from
> acting both as an advocate and a witness in the same
> proceeding, has long been a tenet of ethics in the American
> legal system, and traces its roots back to Roman Law.

(Luna, Avoiding a "Carnival Atmosphere": Trial Court
Discretion and the Advocate-witness Rule (1997) 18 Whittier
L.Rev. 447, 452-453 (hereafter Luna).)

Luna quotes a 1980 version of rule 3.7 of the Model Rules of Professional
Conduct of the American Bar Association (ABA Model Rules). As
amended in 2007, rule 3.7 now provides, in relevant part:[5]

> "(a)    A lawyer shall not act as advocate at a trial in which
>         the lawyer is likely to be a necessary witness unless:
>
>         "(1)    the testimony relates to an uncontested
>                 issue;
>
>         "(2)    the testimony relates to the nature and
>                 value of legal services rendered in the

- 7 -

case; or

"(3)   disqualification of the lawyer would work substantial hardship on the client."[6]

As explained in People v. Donaldson (2001) 93 Cal.App.4th 916, 927-928 (Donaldson),

"'Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.'"

(Id. at pp. 927-928, quoting former ABA Model Code of Prof. Responsibility, rule EC 5-9.)

This danger looms large in the present case. Richard is the head of a household that is the subject of controversy and conflicting averments. Thus, it is a virtual certainty that his testimony as a witness in this custody/visitation dispute will be necessary. As a witness, it is Richard's responsibility to tell the truth. As an advocate, it is his job to obtain the best result for his client. These duties may not necessarily be coextensive and where they are not, Richard may not be permitted to choose between them. The likelihood of conflict inherent in Richard's dual status is indisputable.

Indeed, problems in this regard had surfaced already before the court rendered its disqualification order. As Judge Mize noted,

"[I]n the past hearing, [A]ttorney Richard Eldridge stated to the court that he (Richard) does not smoke pot and that he 'hates' cigarette smoke so much that he asks anyone smoking to leave the house and go into the back yard. At that point, is [A]ttorney Eldridge arguing as an attorney, testifying as a witness, making an offer of proof for his client, or maybe for himself as a witness? The confusion and 'untenable' nature of the conflict is not just prospective or likely: it already has been manifested in this case in a preliminary law and motion matter well before the much more problematic prospect of confusion and conflict likely in a full blown custody trial."

(6)

We acknowledge, as Tyler points out, that California's version of the advocate-witness prohibition (rule 5-210) is limited to jury trials.[7] However, rule 1-100 states that the prohibitions therein are "not

exclusive," and it expressly permits consideration of ethical rules of other jurisdictions and bar associations. (Rule 1-100(A); see Donaldson, supra, 93 Cal.App.4th at p. 928.) Thus,

> "[e]specially where there is no conflict with the public policy of California, the [ABA] Model Rules serve as a collateral source for guidance on proper professional conduct in California."

> (Donaldson, at p. 928.)

Most of the difficulties inherent in an attorney's taking on the role of both advocate and witness are present regardless of whether the attorney's testimony will be given in front of a jury or a judge.

> "[T]he disorder to the judicial system does not result solely from the confusion caused by one person serving in multiple capacities at trial. Rather, the roles of advocate and witness are entirely irreconcilable and should not be undertaken by a single individual.... [T]he advocate-witness dilemma `puts counsel in the position of both advocate and witness, one of which requires the lawyer to be partisan and the other of which requires him to be factual. It thus robs the trial of that appearance of fairness which should characterize every court hearing.'"

> (Luna, supra, at p. 481, fns. omitted, quoting Rushton v. First National Bank (1968) 244 Ark. 503.)

Moreover, we perceive no California-based policy reason not to apply rule 3.7 of the ABA Model Rules to this case. Decades ago, the California Supreme Court firmly embraced the ethical prohibition against an attorney taking on the dual roles of advocate and witness:

> "An attorney who attempts to be both advocate and witness impairs his credibility as witness and diminishes his effectiveness as advocate."

> (Comden v. Superior Court (1978) 20 Cal.3d 906, 912.)

More recently, our Supreme Court declared that where it becomes likely that an attorney will testify as a material witness, he should

> "`resolve any doubt in favor of preserving the integrity of his testimony and against his continued participation as trial counsel.'"

> (People v. Dunkle (2005) 36 Cal.4th 861, 915, disapproved on other grounds in People v. Doolin (2009) 45 Cal.4th 390, 421.)

The wisdom of the advocate-witness prohibition is vividly exemplified in this family law dispute, where it is probable that Richard may not only provide important testimony affecting the outcome, but actually represent his son in an adversarial role against the mother of his grandson. Under

no judicially tolerable circumstance can Richard effectively perform such multiple, awkward and conflicting duties.

Kennedy at 1210-1211

The same principles discussed above, apply to the instant case with respect to the disqualification of Attorney Wayne Silver.  The multiple non-waivable conflicts of interests that are apparent in this case on the face of the record with respect to the attempt by Wayne Silver to represent multiple parties with conflicts of interest combined with the fact that Wayne Silver is defending himself pro se, if permitted to stand would bring the integrity of the bar into disrepute if allowed by this Court.  Furthermore, all of the public policy interests raised above with respect to the violation of the advocate-witness rule are clearly at play here, and the motion to disqualify attorney Silver from this case should be granted on this doctrine alone, in addition to the other arguments raised in this brief.

1. **INHERENT POWER OF THE COURT TO DISQUALIFY**
2. **DUTY OF LOYALTY IS BREACHED BY SILVER**
3. **DUTY TO MAINTAIN CLIENT CONFIDENCES IS BREACHED BY SILVER'S REPRESENTATION OF ADVERSE INTERESTS**

The California Supreme Court in Speedee Oil Change (1999) 20 Cal.4th 1135 at 1145 states:

"A trial court's authority to disqualify an attorney derives from the power inherent in every court

"[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto."

(Code Civ. Proc, § 128, subd. (a)(5); People ex rel. Clancy v. Superior Court (1985) 39 Cal.3d 740, 745; Comden v. Superior Court, supra, 20 Cal.3d at p. 916, fn. 4,; In re Complex Asbestos Litigation, supra, 232 Cal.App.3d at p. 585,.)

Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility.

(Comden v. Superior Court, supra, 20 Cal.3d at p. 915,.)

MOTION TO DISQUALIFY ATTORNEY WAYNE SILVER

1
2
3

**The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar.** The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process. (Emphasis added)

4
5
6

(Ibid.; In re Complex Asbestos Litigation, supra, 232 Cal.App.3d at p. 586,; River West, Inc. v. Nickel, supra, 188 Cal.App.3d at pp. 1306-1308,; see 1 Hazard & Hodes, The Law of Lawyering, supra, § 1.7:101, pp. 223-225 [discussing the assumed function of automatic disqualification rules in maintaining public confidence in the legal system].)

7
8

Protecting the confidentiality of communications between attorney and client is fundamental to our legal system. The attorney-client privilege is a hallmark of our jurisprudence that furthers the public policy of ensuring

9
10
11

"'the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense.'

12

[Citation.]" (Mitchell v. Superior Court (1984) 37 Cal.3d 591, 599.)

13

To this end, a basic obligation of every attorney is

14
15

"[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client."

16

(Bus. & Prof.Code, § 6068, subd. (e).)

17
18

To protect the confidentiality of the attorney-client relationship, the State Bar Rules of Professional Conduct, rule 3-310 (rule 3-310) prohibits attorneys from accepting, without the client's informed written consent,

19
20
21

"employment adverse to the client or former client where, by reason of the representation of the client or former client, the [attorney] has obtained confidential information material to the employment."

22
23

(Rule 3-310(E); Flatt, supra, 9 Cal.4th at pp. 283-284; Western Continental Operating Co. v. Natural Gas Corp. (1989) 212 Cal.App.3d 752, 759.)

24
25

Where an attorney successively represents clients with adverse interests, and where the subjects of the two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second representation.

26

(Flatt, supra, 9 Cal.4th at p. 283.)

27
28

For the same reason, a presumption that an attorney has access to privileged and confidential matters relevant to a subsequent representation extends the attorney's disqualification vicariously to the

- 11 -

1    attorney's entire firm.

2    (Ibid.)

3    A related but distinct fundamental value of our legal system is the
      attorney's obligation of loyalty. Attorneys have a duty to maintain

4    undivided loyalty to their clients to avoid undermining public confidence in
      the legal profession and the judicial process.

5

6    (See Santa Clara County Counsel Attys. Assn. v. Woodside (1994) 7
      Cal.4th 525, 547-548, fn. 6, and accompanying text.)

7    The effective functioning of the fiduciary relationship between attorney
      and client depends on the client's trust and confidence in counsel.

8

9    (Flatt, supra, 9 Cal.4th at pp. 282, 285.)

10    The courts will protect clients' legitimate expectations of loyalty to
      preserve this essential basis for trust and security in the attorney-client
      relationship.

11

12    (Ibid.)

13    Therefore, if an attorney—or more likely a law firm—simultaneously
      represents clients who have conflicting interests, a more stringent per se
      rule of disqualification applies. With few exceptions, disqualification

14    follows automatically, regardless of whether the simultaneous
      representations have anything in common or present any risk that

15    confidences obtained in one matter would be used in the other.

16    (Id. at p. 284, 36 Cal.Rptr.2d 537, 885 P.2d 950.)

17    The most egregious conflict of interest is representation of clients whose
      interests are directly adverse in the same litigation.

18

19    (Flatt, supra, 9 Cal.4th at p. 284, fn. 3.)

20    Such patently improper dual representation suggests to the clients—and
      to the public at large—that the attorney is completely indifferent to the
      duty of loyalty and the duty to preserve confidences. However, the

21    attorney's actual intention and motives are immaterial, and the rule of
      automatic disqualification applies.

22

23       "The rule is designed not alone to prevent the dishonest
         practitioner from fraudulent conduct,"

24    but also to keep honest attorneys from having to choose between
      conflicting duties, or being tempted to reconcile conflicting interests, rather

25    than fully pursuing their clients' rights.

26    (Anderson v. Eaton (1930) 211 Cal. 113.)

27    The loyalty the attorney owes one client cannot be allowed to compromise
      the duty owed another.

28

1

(Ishmael v. Millington (1966) 241 Cal.App.2d 520, 526-527.)

2

[T]he concern for client confidences, like the attorney's duty to preserve those confidences, continues after the attorney's services end.

3

(Cf. Flatt, supra, 9 Cal.4th at p. 283.)

4

5    Under the above law, it is clear that automatic disqualification should be the rule

6    followed in disqualifying Wayne Silver from representing anyone other than himself pro

7    se in these proceedings.  Wayne Silver is a party to the lawsuit and will be called as a

8    witness in violation of the witness advocate rule, the multiple conflicts of interest go to

9    the heart of the integrity of the judicial process and will bring it into disrepute if Silver is

10   allowed to represent such conflicting interests in this case, and the duty of maintaining

11   client confidences, the bedrock principle behind the attorney-client relationship is clearly

12   violated by Wayne Silver acting as legal counsel while a witness, as well as an

13   advocate as well as representing multiple adverse parties including the Tersini brothers

14   whose interests would seem to be adverse to that of Hudson Stremmel, Steve

15   Stremmel and Stremmel Auctions, LLC as evidenced by the 83 page transcript of the

16   hearing in Reno on 3-22-2019, excerpts of which the Plaintiff shall seek the court to

17   take judicial notice of by augmenting the Judicial Motion currently on calendar for 5-24-

18   2019.

     Dated: April 29th 2019.                    Respectfully submitted,

19

20

21                                              Anthony G. Thomas
                                                Plaintiff In Propria Persona
22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I, Anthony G. Thomas, the undersigned Plaintiff In Propria Persona declare:

1. I am the Plaintiff in the above-captioned lawsuit In Propria Persona. On April 17th 2019, Judge Jeffrey S. White signed an order approving my application to electronically file cases through the Court's ECF Filing system. On Friday April 26th 2019, I filed an application for PRO SE ECF login and password, that was granted to me on the same afternoon.

2. My physical address is 7725 Peavine Peak Court - Reno, NV 89523. My e-mail address is: atemerald2@gmail.com

3. On Monday April 29th, 2019, I electronically filed the following initial documents:

    1. Oppositions to Motion to Dismiss
    2. Motion to Disqualify Wayne Silver

4. I do not intend to oppose Wayne Silver's Motion for Judicial Notice, but rather intend to supplement Mr. Silver's Motion with additional documents, including but not limited to the Transcripts attached to the Complaint, along with the law review article on Judicial Immunity, along with a detailed Proposed Order for the Court to take Judicial Notice of Law & Facts under Federal Rule of Evidence 201 as well as the Law of Judicial Notice under California law and the common law of England.

5. I am requesting that this Court keep on calendar the 5-24-2019 date for this Court to rule on the augmented Motion for Judicial Notice of Law and Facts, consisting of the Silver Judicial Notice Motion as augmented by myself.

6. Since I have not formally calendared the Motion to Disqualify Wayne Silver, I am respectfully requesting that it be calendared either on 5-24-2019, or soon thereafter, and am therefore requesting that the Motions Opposing the 12(b)(6) Motions to Dismiss be re-calendared to a date after the 5-24-2019 hearing on the Motion for Judicial Notice and the Motion to Disqualify Attorney Wayne Silver.

7. All participants in this lawsuit so far are registered with the CM/ECF system with the exception of Defendants Judge Beesley, Mrs. Beesley[3] and the U.S. Trustee Jeri-Coppa-Knudson. I will be serving both the U.S. Trustee and the U.S. Attorney's office by mail with a copy of these papers for Judge Beesley upon whom service is not fully complete according to a letter I received from the San Francisco U.S. Attorney's Office.

8. I declare under penalty of perjury of the laws of the State of California and the laws of the United States that the foregoing is true and correct.

Executed at: San Jose, CA on 4-29-2019.

_Tony Thomas_
Anthony G. Thomas Plaintiff In Pro Per

---

[3] who I will be dismissing from this lawsuit.

MOTION TO DISQUALIFY ATTORNEY WAYNE SILVER